1  JOHN C. FISH, Jr., Bar No. 160620
   jfish@littler.com
2  ANDREW M. SPURCHISE, Bar No. 245998
   aspurchise@littler.com
3  EMILY E. O'CONNOR, Bar No. 279400
   eoconnor@littler.com
4  LITTLER MENDELSON, P.C.
   650 California Street, 20th Floor
5  San Francisco, California  94108.2693
   Telephone:   415.433.1940
6  Facsimile:   415.399.8490

7  Attorneys for Defendants
   UBER TECHNOLOGIES, INC. AND SCOTT
8  MUNRO

9
                    UNITED STATES DISTRICT COURT
10
                   NORTHERN DISTRICT OF CALIFORNIA
11
                      SAN FRANCISCO DIVISION
12

13  RASHID ALATRAQCHI,               Case No.  **CV 13 3156**

14              Plaintiff,           (San Francisco Superior Case No. CGC-13-
                                     527887)
15       v.
                                     **NOTICE OF REMOVAL OF CIVIL
16  UBER TECHNOLOGIES, INC., SCOTT    ACTION FROM STATE COURT**
    MUNRO AND DOES 1-50,
17
18              Defendants.
19
20
21
22
23
24
25
26
27
28

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

NOTICE OF REMOVAL OF CIVIL ACTION                    Case No.
FROM STATE COURT

TO THE CLERK OF THE ABOVE ENTITLED COURT:

PLEASE TAKE NOTICE that Defendants Uber Technologies, Inc. and Scott Munro ("Defendants") hereby give notice of removal of the above entitled action from the Superior Court of the State of California, County of San Francisco, to the United States District Court for the Northern District of California. Defendants are filing in said Superior Court their Notice to Plaintiff and State Court of Filing of Removal of Civil Action to Federal Court. The removal is based on the existence of a federal question. 28 U.S.C. §§ 1331, 1441(b). Pursuant to Local Rule 3-2(d), because this action arose in San Francisco County, assignment to the San Francisco Division of this Court is proper. In support of this Notice of Removal of Civil Action, Defendants state:

1.     On or about January 10, 2013, Rashid Alatraqchi ("Plaintiff") commenced a civil action against Defendants in San Francisco Superior Court entitled *Rashid Alatraqchi v. Uber Technologies, Inc., Scott Munro et al.*, Case No. CGC-13-527887. The Summons, Civil Case Cover Sheet, Complaint and Declaration of Rashid Alatraqchi, are attached hereto as **Exhibits A, B, C and D**, respectively.

2.     On January 10, 2013 the Court issued Notice to Plaintiff of a Case Management Conference scheduled for June 12, 2013. A copy of the Court's Notice is attached hereto as **Exhibit E**.

3.     On May 28, 2013, the Court set an Order to Show Cause hearing for July 30, 2013 for Plaintiff's Failure to File Proof of Service on Defendants. A copy of the Court's Order to Show Cause is attached hereto as **Exhibit F**.

4.     On June 11, 2013, Plaintiff served Defendants with the Summons, Complaint and Declaration of Rashid Alatraqchi. Copies of the proofs of service are attached hereto as **Exhibits G and H**.

5.     On June 24, 2013, Plaintiff filed an Affidavit in response to the Court's Order to Show Cause. A copy of Plaintiff's Affidavit is attached hereto as **Exhibit I**.

6.     The Court's docket indicates that Plaintiff filed a proof of service of Plaintiff's Deposition Subpoena for Production of Business Records on June 27, 2013. Copies of the various business records subpoenas Defendant received from Plaintiff are attached as **Exhibit J**.

NOTICE OF REMOVAL OF CIVIL ACTION
FROM STATE COURT

Case No.

7.     On July 8, 2013, Plaintiff served an Ex Parte Application for an Order for Peremptory Challenge and an Affidavit In Support of the Ex Parte Application. Copies of the Ex Parte Application and supporting Affidavit are attached hereto as **Exhibits K and L,** respectively.

8.     This Notice of Removal is timely filed under 28 U.S.C. § 1446(b), which provides that a Notice of Removal must be filed within 30 days after service. On June 11, 2013, Plaintiff served a copy of the Complaint on Defendant Uber. Therefore, this Notice of Removal is timely filed.

9.     This is a civil action over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1331. This action may be removed pursuant to 28 U.S.C. § 1441 because the action involves a claim or right arising under the Constitution of the United States. Specifically, Plaintiff's First Cause of Action, entitled "Civil Rights Discrimination," is based upon alleged violations of the rights guaranteed him under the United States Constitution. Plaintiff alleges that he was discriminated against based on his national origin and religion. Pursuant to these allegations, Plaintiff is clearly seeking relief afforded by and arising under federal law. The action also includes state law claims based upon the California Fair Employment and Housing Act ("FEHA") and California common law.

10.     This court has original jurisdiction of the federal claims pursuant to 28 U.S.C. § 1331.

11.     This court has supplemental jurisdiction over all of Plaintiff's state law claims pursuant to the doctrine of supplemental jurisdiction under 28 U.S.C. § 1367(a), as they are so related to the federal claim and form part of the same case or controversy under Article III of the U.S. Constitution. Thus, this action is removable in its entirety.

12.     Pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, removal of the above-captioned state court action to this Court is appropriate.

13.     Pursuant to 28 U.S.C. §§ 84(a) and 1441(a), venue is proper in this Court as the District and Division embracing the place where the state court action is pending.

14.     Defendants are providing to Plaintiff written notice of the filing of this Notice of Removal. Furthermore, Defendants are filing a copy of this Notice of Removal with the Clerk of

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

NOTICE OF REMOVAL OF CIVIL ACTION
FROM STATE COURT                                    2.                          Case No.

1   the San Francisco Superior Court, where the action is currently pending.   A copy of the Notice to

2   Plaintiff and State Court of Filing of Removal of Civil Action to Federal Court is attached hereto as

3   **Exhibit M**.

4           WHEREFORE, Defendants pray that the current action now pending against them in

5   Superior Court for the County of San Francisco be removed therefrom to this Court.

6

7   Dated: July 9, 2013

8

9                                               _____

10                                              JOHN C. FISH, Jr.
                                                ANDREW M. SPURCHISE
11                                              LITTLER MENDELSON, P.C.
                                                Attorneys for Defendants
12                                              UBER TECHNOLOGIES, INC. AND SCOTT
                                                MUNRO
13

14  Firmwide:121425752.1 073208.1011

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

NOTICE OF REMOVAL OF CIVIL ACTION           3.                      Case No.
FROM STATE COURT

# Exhibit A

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

NOTICE TO DEFENDANT: Uber Technologies Inc,scott
*(AVISO AL DEMANDADO):* Munro.

| | FOR COURT USE ONLY |
| --- | --- |
| | *(SOLO PARA USO DE LA CORTE)* |

YOU ARE BEING SUED BY PLAINTIFF: Rashid Alatraqchi
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* | CASE NUMBER: *(Número del caso):* CGC-13-527887 |
| --- | --- |

Superior Court of California
County of San Francisco
400 McAllister Street, San Francisco California 94102

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Rashid Alatraqchi,Plaintiff In Propria Persona 415 240 2262
447 Valencia Street, # 231

DATE: San Fracisco, califrnia 94103                Clerk, by                    D. STEPPE                , Deputy
*(Fecha)* JAN 1 0 2013  CLERK OF THE COURT *(Secretario)*                                                              *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

NOTICE TO THE PERSON SERVED: You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)                ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)        ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)

☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. July 1, 2009] | SUMMONS | Code of Civil Procedure §§ 412.20, 465 *www.courtinfo.ca.gov* |
| --- | --- | --- |

# Exhibit B

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Rashid Alatraqchi<br>447 Valencia Street # 231<br>San Francisco, California 94103<br>TELEPHONE NO.: 415-240-2262   FAX NO.:<br>ATTORNEY FOR *(Name):* PlaintiffIn Propria Persona | SUMMONS ISSUED<br>FILED<br>SUPERIOR COURT<br>COUNTY OF SAN FRANCISCO<br><br>2013 JAN 10 AM 11: 09<br><br>CLERK OF THE COURT<br>BY:<br>DEPUTY CLERK<br>D. STEPPE |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS: Same
CITY AND ZIP CODE: San Francisco California 94102
BRANCH NAME: Civic Center Court House

CASE NAME: Rashid Alatraqchi V Uber Technologies,Inc
Scott Munro

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [X] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: | C G C - 1 3 - 5 2 7 8 8 7 |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | [ ] Antitrust/Trade regulation (03) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | [ ] Other collections (09) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Insurance coverage (18) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | [ ] Other contract (37) | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | **Real Property** | [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| [ ] Other PI/PD/WD (23) | [ ] Eminent domain/Inverse condemnation (14) | **Enforcement of Judgment** |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | [ ] Enforcement of judgment (20) |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | **Miscellaneous Civil Complaint** |
| [X] Civil rights (08) | **Unlawful Detainer** | [ ] RICO (27) |
| [ ] Defamation (13) | [ ] Commercial (31) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Fraud (16) | [ ] Residential (32) | **Miscellaneous Civil Petition** |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Partnership and corporate governance (21) |
| [ ] Professional negligence (25) | **Judicial Review** | [ ] Other petition *(not specified above)* (43) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | |
| **Employment** | [ ] Petition re: arbitration award (11) | |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is [X] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [X] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [X] punitive
4. Number of causes of action *(specify):*
5. This case [ ] is [X] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 01-10-2013

Rashid Alatraqchi.
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

# Exhibit C

SUMMONS ISSUED
FILED PLD-PI-001
SUPERIOR COURT
COUNTY OF SAN FRANCISCO

2013 JAN 10 AM 11: 08

CLERK OF THE COURT
BY:
DEPUTY CLERK
D. STEPPE

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*
Rashid Alatraqchi
447 Valencia Street # 231
San Francisco california 94103

TELEPHONE NO: 415-240-2262   FAX NO. *(Optional):*
E-MAIL ADDRESS *(Optional):* Rashid Alatraqchi, Plaintiff.
ATTORNEY FOR *(Name):*

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS: 400 McAllister Street
CITY AND ZIP CODE: San Francisco, California 94102
BRANCH NAME: Civic Center Court House

PLAINTIFF: Rashid Alatraqchi

DEFENDANT: Uber Technologies Inc,Scott Munro
et al. ΦA

☐ DOES 1 TO 100

**COMPLAINT—Personal Injury, Property Damage,**
☐ **AMENDED** *(Number):*
**Type** *(check all that apply):*
☒ MOTOR VEHICLE   ☒ OTHER *(specify):*
  ☐ Property Damage   ☒ Wrongful Death
  ☐ Personal Injury   ☒ Other Damages *(specify):*

*THIS CASE CONTAINS FIVE CAUSES OF ACTION AS FOLLOW:*
*FIRST CAUSE OF ACTION- CIVIL RIGHTS DISCRIMINATION.*
*SECOND CAUSE OF ACTION- WRONGFUL TERMINATION.*
*THIRD CAUSE OF ACTION- FRAUD.*
*FOURTH CAUSE OF ACTION- MAINTAINING A HOSTILE*
*WORK ENVIRONMENT.*
*FIFTH CAUSE OF ACTION- WORK RELATED STRESS.*

See page 3 of Complaint and
Declaration of Plaintiff
Attached

**Jurisdiction** *(check all that apply):*
☐ **ACTION IS A LIMITED CIVIL CASE**
  Amount demanded ☐ does not exceed $10,000
  ☐ exceeds $10,000, but does not exceed $25,000
☒ **ACTION IS AN UNLIMITED CIVIL CASE** (exceeds $25,000)
☐ **ACTION IS RECLASSIFIED** by this amended complaint
  ☐ from limited to unlimited
  ☐ from unlimited to limited

CASE NUMBER:
CGC-13-527887

1. **Plaintiff** *(name or names):* Rashid Alatraqchi
   alleges causes of action against defendant *(name or names):* Uber Technologies Inc, Scott Munro
   et al, and Does 1-100

2. This pleading, including attachments and exhibits, consists of the following number of pages:

3. Each plaintiff named above is a competent adult
   a. ☐ except plaintiff *(name):*
      (1) ☐ a corporation qualified to do business in California
      (2) ☐ an unincorporated entity *(describe):*
      (3) ☐ a public entity *(describe):*
      (4) ☐ a minor ☐ an adult
         (a) ☐ for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
         (b) ☐ other *(specify):*
      (5) ☐ other *(specify):*
   b. ☐ except plaintiff *(name):*
      (1) ☐ a corporation qualified to do business in California
      (2) ☐ an unincorporated entity *(describe):*
      (3) ☐ a public entity *(describe):*
      (4) ☐ a minor ☐ an adult
         (a) ☐ for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
         (b) ☐ other *(specify):*
      (5) ☐ other *(specify):*

☐ Information about additional plaintiffs who are not competent adults is shown in Attachment 3.

Page 1 of 3

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001 [Rev. January 1, 2007]

**COMPLAINT—Personal Injury, Property
Damage, Wrongful Death**

Code of Civil Procedure, § 425.12
www.courtinfo.ca.gov

PLD-PI-001

| SHORT TITLE: Rashid Alatraqchi V Uber technologies Inc, scott Munro, et aL. | CASE NUMBER: |
|---|---|

4. ☐ Plaintiff *(name):*

    is doing business under the fictitious name *(specify):*

    and has complied with the fictitious business name laws.

5. Each defendant named above is a natural person

  a. ☒ except defendant *(name):* Uber Technologies Inc    c. ☐ except defendant *(name):*
    (1) ☒ a business organization, form unknown     (1) ☐ a business organization, form unknown
    (2) ☐ a corporation     (2) ☐ a corporation
    (3) ☐ an unincorporated entity *(describe):*     (3) ☐ an unincorporated entity *(describe):*

    (4) ☐ a public entity *(describe):*     (4) ☐ a public entity *(describe):*

    (5) ☐ other *(specify):*     (5) ☐ other *(specify):*

  b. ☒ except defendant *(name):* DOES 1-50    d. ☐ except defendant *(name):*
    (1) ☐ a business organization, form unknown     (1) ☐ a business organization, form unknown
    (2) ☐ a corporation     (2) ☐ a corporation
    (3) ☐ an unincorporated entity *(describe):*     (3) ☐ an unincorporated entity *(describe):*

    (4) ☐ a public entity *(describe):*     (4) ☐ a public entity *(describe):*

    (5) ☐ other *(specify):*     (5) ☐ other *(specify):*

    ☐ Information about additional defendants who are not natural persons is contained in Attachment 5.

6. The true names of defendants sued as Does are unknown to plaintiff.
  a. ☒ Doe defendants *(specify Doe numbers):* 1-50 were the agents or employees of other named defendants and acted within the scope of that agency or employment.
  b. ☒ Doe defendants *(specify Doe numbers):* 1- 100 are persons whose capacities are unknown to plaintiff.

7. ☐ Defendants who are joined under Code of Civil Procedure section 382 are *(names):*

8. This court is the proper court because
  a. ☐ at least one defendant now resides in its jurisdictional area.
  b. ☒ the principal place of business of a defendant corporation or unincorporated association is in its jurisdictional area.
  c. ☐ injury to person or damage to personal property occurred in its jurisdictional area.
  d. ☐ other *(specify):*

9. ☐ Plaintiff is required to comply with a claims statute, and
  a. ☐ has complied with applicable claims statutes, or
  b. ☐ is excused from complying because *(specify):*

**COMPLAINT—Personal Injury, Property Damage, Wrongful Death**

PLD-PI-001

| SHORT TITLE: Rashid Alatraqchi V Uber Technologies Inc, Scott munro, et aL. | CASE NUMBER: |
|---|---|

10. The following causes of action are attached and the statements above apply to each (each complaint must have one or more causes of action attached):

a. [X] Motor Vehicle
b. [ ] General Negligence
c. [ ] Intentional Tort
d. [ ] Products Liability
e. [ ] Premises Liability
f. [X] Other (specify):

F. Other (Specify):
        (please See Attachment-A-)
*THIS CASE CONTAINS FIVE CAUSES OF ACTION AS FOLLOW:*
*FIRST CAUSE OF ACTION- CIVIL RIGHTS DISCRIMINATION.*
*SECOND CAUSE OF ACTION- WRONGFUL TERMINATION.*
*THIRD CAUSE OF ACTION- FRAUD.*
*FOURTH CAUSE OF ACTION- MAINTAINING A HOSTILE WORK ENVIRONMENT.*
*FIFTH CAUSE OF ACTION- WORK RELATED STRESS.*

G. Other damage (Specify):

11. Plaintiff has suffered
a. [X] wage loss
b. [ ] loss of use of property
c. [ ] hospital and medical expenses
d. [X] general damage
e. [ ] property damage
f. [X] loss of earning capacity
g. [X] other damage (specify):

Uber Technologies, Inc. did damage to my transportation and limousine business.

1.Uber does not follow ANY of the federal, state or local regulations governing the passenger for hire industry.

2.Uber is not registered with the California Public Utilities Commission, the state agency that regulates this industry.

3.Uber has siphoned customers from the local taxi market.

4.Uber side steps tax obligations.

5.Uber hides any TIPS customers might add intending that these TIPS be forwarded to the DRIVER.

6.Uber does not carry the commercial insurance coverage that all other companies that carry passengers MUST maintain under state law.

12. [ ] The damages claimed for wrongful death and the relationships of plaintiff to the deceased are
a. [ ] listed in Attachment 12
b. [ ] as follows:

7.Uber does not withhold the payroll taxes that other employers must withhold, or make contributions to the worker's compensation, state disability insurance, or state unemployment systems.

8.I am the Plaintiff, Rashid Alatraqchi, in this action. Uber has done great damage to my business driving taxi cab and as the owner of Charming City Limousine Company.

9.Uber made it impossible for me to verify that the fares I carried while driving for Uber were billed correctly and completely. This is FRAUD!

13. The relief sought in this complaint is within the jurisdiction of this court.

14. **Plaintiff prays** for judgment for costs of suit; for such relief as is fair, just, and equitable; and for
a. (1) [X] compensatory damages
   (2) [X] punitive damages
The amount of damages is (in cases for personal injury or wrongful death, you must check (1)):
   (1) [X] according to proof
   (2) [ ] in the amount of: $

15. [ ] The paragraphs of this complaint alleged on information and belief are as follows (specify paragraph numbers):

Date: 01-10-2013

Rashid Alatraqchi.
(TYPE OR PRINT NAME)

(SIGNATURE OF PLAINTIFF OR ATTORNEY)

| SHORT TITLE: Rashid Alatraqchi V Uber Technologies Inc, Scott munro, et aL. | CASE NUMBER: |
|---|---|

(Attachment -A-)

11. Plaintiff has suffered
- a. [X] wage loss
- b. [ ] loss of use of property
- c. [ ] hospital and medical expenses
- d. [X] general damage
- e. [ ] property damage
- f. [X] loss of earning capacity
- g. [X] other damage *(specify):*

## G. Other damages (Specify):

Uber Technologies, Inc. did damages to my transportation and limousine business.

1. Uber does not follow ANY of the federal, state or local regulations governing the passenger for hire industry.
2. Uber is not registered with the California Public Utilities Commission, the state agency that regulates this industry.
3. Uber has siphoned customers from the local taxi market.
4. Uber side steps tax obligations.
5. Uber hides any TIPS customers might add intending that these TIPS be forwarded to the DRIVER.
6. Uber does not carry the commercial insurance coverage that all other companies that carry passengers MUST maintain under state law.
7. Uber does not withhold the payroll taxes that other employers must withhold, or make contributions to the worker's compensation, state disability insurance, or state unemployment systems.
8. I am the Plaintiff, Rashid Alatraqchi, in this action. Uber has done great damage to my business driving taxi cabs and as the owner of Charming City Limousine Company.
9. Uber made it impossible for me to verify that the fares I carried while driving for Uber were billed correctly and completely. This is FRAUD!

PLD-C-001(3)

| SHORT TITLE: Rashid Alatraqchi V Uber Techologies INC, Scott Munro, et al. | CASE NUMBER: |
|---|---|

Third      **CAUSE OF ACTION—Fraud**
_____
(number)

ATTACHMENT TO ☐ Complaint ☐ Cross-Complaint

*(Use a separate cause of action form for each cause of action.)*

FR- 1. Plaintiff *(name)*:   Rashid Alatraqchi

alleges that defendant *(name)*: Uber Technoloies, INC.and Scott Munro

on or about *(date)*:Decenber 29,2011,    defrauded plaintiff as follows:
through January 12, 2012.

FR-2. ☒ **Intentional or Negligent Misrepresentation**
     a. Defendant made representations of material fact ☐ as stated in Attachment FR-2.a ☒ as follows:

Defendants Uber and Munro claim that the invoices submitted to Plaintiff are complete and correct and represent the total amounts due to him for the work that Plaintiff performed.

     b. These representations were in fact false. The truth was ☐ as stated in Attachment FR-2.b ☒ as follows:

Invoices submitted by Defendants Uber and Munro are not complete and correct. Defendants blocked Plaintiff's access to the computer system denying Plaintiff the ability to check billing for work that he performed.

     c. When defendant made the representations,
       ☒ defendant knew they were false, or
       ☐ defendant had no reasonable ground for believing the representations were true.

     d. Defendant made the representations with the intent to defraud and induce plaintiff to act as described in item FIR-5. At the time plaintiff acted, plaintiff did not know the representations were false and believed they were true. Plaintiff acted in justifiable reliance upon the truth of the representations.

FR-3. ☐ **Concealment**
     a. Defendant concealed or suppressed material facts ☐ as stated in Attachment FR-3.a ☐ as follows:

     b. Defendant concealed or suppressed material facts
       ☐ defendant was bound to disclose.
       ☐ by telling plaintiff other facts to mislead plaintiff and prevent plaintiff from discovering the concealed or suppressed facts.
     c. Defendant concealed or suppressed these facts with the intent to defraud and induce plaintiff to act as described in item IFIR-5. At the time plaintiff acted, plaintiff was unaware of the concealed or suppressed facts and would not have taken the action if plaintiff had known the facts.

Page ONE

Form Approved for Optional Use
Judicial Council of California
PLD-C-001(3) [Rev. January 1, 2007]

**CAUSE OF ACTION—Fraud**

Page 1 of 2
Code of Civil Procedure, § 425.12
www.courtinfo.ca.gov

PLD-C-001(3)

| SHORT TITLE: Rashid Alatraqchi V Uber techologies INC, Scott munro , et al. | CASE NUMBER: |
|---|---|

**CAUSE OF ACTION—Fraud**

Third
(number)

FR-4. ☒ **Promise Without Intent to Perform**
   a. Defendant made a promise about a material matter without any intention of performing it ☒ as stated in Attachment FR-4.a ☐ as follows:

Defendants promised to make payments to Plaintiff in a timely manner and that these payments would be complete and correct. Defendants also promised to plaintiff that he would have access to the billing system to ensure that these payments were billed completely and correctly.

   b. Defendant's promise without any intention of performance was made with the intent to defraud and induce plaintiff to rely upon it and to act as described in item FR-5. At the time plaintiff acted, plaintiff was unaware of defendant's intention not to perform the promise. Plaintiff acted in justifiable reliance upon the promise.

FR-5. In justifiable reliance upon defendant's conduct, plaintiff was induced to act ☐ as stated in Attachment FR-5 ☒ as follows:

To perform work as limousine driver for customers dispatched to Plaintiff, Rashid Alatraqchi, Owner of Charming City Limousine Company, by Defendants Uber and Munro.

FR-6. Because of plaintiff's reliance upon defendant's conduct, plaintiff has been damaged ☐ as stated in Attachment FR- 6 ☒ as follows:

Plaintiff has lost clients to limousine business, been forced to close his own limousine business, Charming City Limousine Company, placed (Transportation California Public) TCP # 26843 on hold with the California Public Utilities Commission, loss of customers to taxi cab business, outstanding payments due from work performed by Plaintiff for Defendants Uber and Munro, forced to sell limousine used by Charming City, loss of use of permit fees paid for Charming City for the remainder of the year,

FIR - 7. Other:

SEE DECLARATION OF PLAINTIFF RASHID ALATAQCHI ATTACHED TO COMPLAINT

Page Two

# Exhibit D

RASHID ALATRAQCHI
447 VALENCIA, #231
SAN FRANCISCO, CALIFORNIA 94103
TELEPHONE 415-240-2262

IN PROPRIA PERSONA

**F I L E D**
Superior Court of California
County of San Francisco

JAN 1 0 2013

CLERK OF THE COURT
BY: _____
Deputy Clerk

SUPERIOR COURT FOR THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN FRANCISCO

UNLIMITED JURISDICTION

CGC - 13 - 527007

RASHID ALATRAQCHI,

       Plaintiff,

VS

UBER TECHNOLOGIES INC,

SCOTT MUNRO

et al,

       Defendants

Does 1-150

CASE No.:  CGC – 13-

Declaration of Plaintiff RASHID ALATRAQCHI IN SUPPORT OF COMPLAINT

Filed : THURSDAY, JANUARY 10, 2013

My name is Rashid Alatraqchi. I am a naturalized United States citizen. I am over the age of 18. I live at 447 Valencia Street, #231 San Francisco, California 94103. I am representing myself in this action "In Propria Persona". I, Rashid Alatraqchi, make this Declaration based upon my own personal knowledge, and if called upon to testify, I could and would testify competently thereto and declare:

I am a naturalized United States citizen born in Iraq. I am a Shiia Muslim. I came to the United States in 1992 under a United Nations Refugee Relocation and Asylum Program. I fought in the uprising against Saddam Hussein in 1991 led by

the United States President George Bush. For the eighteen months after that struggle, I waited in a refugee camp in the desert in Saudi Arabia, surrounded by barbed wire and armed guards. The camp was operated by the Saudis, the United States, NATO, and the United Nations. Conditions in that camp were very poor. When I was allowed the opportunity to come to the United States under the U.N. sponsored program, I was overjoyed. I came to San Francisco in 1992 and have lived in this city since that time.

I have been a limousine driver since 1996, and have driven taxi cabs in San Francisco since 1998. I was sole proprietor of Charming City Limousine Company, TCP #26843 from January of 2010 until the summer of 2012. I had filed all of the required documentation with the State of California Public Utilities Commission, and with the local regulatory agencies. I have held a current permit, or A-Card, allowing me to drive taxi cabs since 1998. This A-Card must be renewed yearly by taxi cab drivers with the San Francisco Municipal Transportation Agency. Prior to the formation of the SFMTA, this renewal was done by the Recorder for the County of San Francisco.

I was employed by and have worked with Defendant Uber Technologies, Inc. I was personally interviewed by Defendant Scott Munro to work with Uber Technologies, Inc. I passed their prerequisite tests and all other hurdles to work with Uber. Scott Munro inspected my limousine as well and accepted it. I began working for Uber on December 29, 2011, and worked through the busy holiday season until January 12, 2012. During that time I lost business accounts that I had secured and serviced with my own company, Charming City Limousine Company. I had put a great deal of effort into attracting customers to Charming City, and greatly valued each one. I had the same pride in each of my customers that I drove in my taxi cab.

DECLARATION OF PLAINTIFF RASHID ALATRAQCHI IN SUPORT OF COMPLAINT
FILED THURSDAY JANUARY 10, 2013
RASHID ALATRAQCHI  VS UBER TECHOLOGIES INC, SCOTT MUNRO.

2

I refinanced a 2010 Chevy Suburban upon recommendation by Defendants Uber and Munro. I lost money for the down payment, interest, and insurance for this vehicle.

Uber is operating illegally in the city of San Francisco and is causing massive damage to taxi drivers. They called them self Uber cab. There is a class action suit against Uber Technologies, Inc. as well a law suit from taxi drivers for Uber drivers who are operating illegal. The two largest taxi cab companies here in San Francisco have also filed law suits against Uber.

I was sent home, when I asked why I was being sent home, Uber claimed I was an aggressive driver. However no one complained to me while in my vehicle. I had no accidents, no tickets, nor was I even stopped by police during my time working with Uber. When I worked with Uber no one called me from Uber base to notify me of my driving or any other complaint. No one notified me of any matter what so ever. This is highly unlike a professional company to be operating under.

Before I began driving for Uber, I had opened my own limousine company, Charming City Limousine Company. I owned the vehicle I drove while working for Uber. I purchased the insurance coverage, and I filed all of the necessary documentation required with the State and local agencies governing this industry. I am a healthy person. I do not use alcohol, tobacco, or illegal drugs. I care about my health and work out regularly at a local gym, 24 Hour Fitness.

When I meet with Scott Munro regarding my time working, he aggressively snatched the iPhone from my hand with no regard to me. I paid $300 for the deposit to obtain the iPhone calls coming from Uber. Uber's system of allowing customers to use smart phones to request service is no different than a customer calling a taxi company to request the same service. Anyone can see that Uber's claim that they are a technologies company rather than a transportation provider is plainly bogus. This is just a rouse to allow Uber to side step the regulations governing the passenger for hire industry that all other transportation providers

1  must abide by, and illegally take costumers from taxi drivers and limousine

2  services that do follow the rules. Uber provided limousine services without any

3  legal transportation permits. Uber did not have any permits from the Public Utility

4  Commissioner regarding T.C.P. (Transportation California Public) numbers, and

5  has filed no documents with the San Francisco Municipal Transportation Agency.

6  The laws governing this industry in California have been in place for 150 years,

7  and Uber Technologies, Inc. has chosen to simply ignore these laws. The laws

8  regarding taxes, Worker's Compensation, Disability Insurance, Unemployment

9  Insurance, as well as all other Federal, State and local employment laws are also

10  ignored by Uber.

11

12  I myself have my own T.C.P. number for my self regarding legalized services in

13  the state of California the number is 26843. I also work as a taxi driver since 1998.

14  I have studied the geographic locations of San Francisco and took the required test

15  in 850 Bryant St. San Francisco in the department of hall of Justice. My taxi permit

16  number is 51276, 58659. I have used there permits to drive in the city and county

17  of San Francisco for about 14 years. Uber cabs did not any legal permits to work as

18  cabs in the city they operated illegally.  The apps Uber used took the middle man

19  out the worker man. They stole a costumer service of a total five million dollars.

20  Uber shattered taxi and limousine service in all the wrong reasons. Uber added

21  about 400 cars to operate as taxies taking business from regular taxi drivers. The

22  MTA (Municipal Transportation agency) added only 300 new medallions this year.

23  But the damage was already done b Uber making the 300 new medallions working

24  as taxi virtually obsolete. Because Uber hired 400 cars as suppose to the 300 new

25  taxies. Uber crippled the entire transportation of the city from sedan services to

26  taxi cabs and most limousine companies. In my case Uber took both of my jobs as

27  a taxi driver and a limousine owner. Uber targeted anyone who had a limousine

28  business. They hired all drivers who had experience for only a short time and then

1  fire them. By firing them they have already stole there business and there
2  customers. Uber Took my business illegally by taking my customers through my
3  experience of obtaining them. Not only did they shatter my limousine company
4  they also crippled taxi services that I was work at as well. I my self plaintiff filed
5  an initial claim with the Labor Commissioner's office on January 17, 2012 CASE
6  NO. 11-42020 CT. the Labor Commissioner told me I had to go file a law suite or
7  claim with the San Francisco Superior Court. **This case is a five cause of action.**
8  **First is Discrimination, Second is Wrongful Termination, and Third is Money**
9  **Fraud. Fourth is Work Environment Hostile. Fifth is Working Related Stress.**
10
11
12 **FIRST CAUSE of ACTION- DISCRIMINATION**
13 IN the United States constitution and the State of California it is illegal to
14 discriminate.
15
16 *unlawful employment practice; exceptions*
17 *It is an unlawful employment practice, unless based upon a*
18 *bona fide occupational qualification, or, except where based upon*
19 *applicable security regulations established by the United States or*
20 *the State of California:*
21
22   *(a) For an employer, because of the race, religious creed, color,*
23 *national origin, ancestry, physical disability, mental disability,*
24 *medical condition, genetic information, marital status, sex, gender,*
25 *gender identity, gender expression, age, or sexual orientation of any*
26 *person*
27
28

**Furthermore:**

From the start, I could see that working for Defendants Uber Technologies, Inc. and Scott Munro would be an unpleasant experience.

Mr. Munro seemed to always be too busy and not informed about what's going on inside Uber. He did not have any experience in the transportation industry. It seemed like Mr. Scott Munro had hatred towards Iraqis or Shiite Muslims. I heard from other drivers that Mr. Munro is a JEW. I had submitted an application to Uber in February of 2011. I did not hear from Uber for many months. In the month of December Scott Munro sent a massive e-mail to all Uber drivers seeking new drivers to work for Uber. A friend that worked for Uber at that time showed this e-mail to me and suggested that I contact Uber again. I wrote letters to President Barak Obama and to Inspector General Glenn Fine of the United States Department of Justice regarding this matter. Scott Munro contacted me back for the interview only because he was contacted by the Department of Justice and the White House to take a look at my status and my work attributes. After this contact, Scott Munro telephoned me set up an interview. Mr. Scott Munro would especially target me. I myself do not know or understand why, even though he is a quite attractive man.

I was driving for Uber for about 10 days, I had a customer friendly ranking of a 4.2 out of 5 stars. During busy times around the holidays, I have received my 4.2 out of 5 stars during an incredibly busy month and Uber wants to say I have bad customer service. Uber pays drivers through bill.com, an on line computer billing service. I was never able to adequately access this system to ensure that the work that I performed for Uber was billed completely and correctly. This caused med a great deal of agony. The online payments never came on time and opening a secure account with bill.com regarding Uber was a hassle. The Wells Fargo Bank had trouble getting payments from Bill.com and there was a lot of miscommunication

from the site. I set up everything that was necessary on my behalf. Other drivers have told me that they had many such problems with bill.com. Uber used this to their advantage claiming they had paid me. In reality I had no way to see whether or not I was paid for a specific job. Because I am foreign, they stole my money. They did FRAUD to me because I am also a foreigner.

Uber used my services wit out paying. IN the U.S Constitution and California law a person who was let go must be paid for that day that he was released. Also to pay on the same day, Uber did not pay me. I called Uber, Scott Munro on many occasions regarding my Wrongful Termination he did not respond, because I am foreign from Iraq, and Shiia Moslem and Arab. He felt that I don't have popular support because the WAR in Iraq, and I from Iraq. This illegal, immoral WAR on the Arab peoples and Moslems in Iraq, the Middle East and around the world! I also e-mailed him and he did not respond. Well after three weeks of calling the Department of Justice and the White House regarding this matter. Until then I received my check for what was rightfully mines. Uber committed fraud by not paying me accurately, and Discrimination because they wanna stole my money! I obtained job services for working and generated a total of about $7,000. Uber took $4,000 and gave me $3,000 a miscalculation hat was done wrongfully. Uber drives 400 drivers. Out of these many I, Rashid Alatraqchi, made the most money. For this Uber took my money! For the $4,000 they took they took it from me to support there commercial business this is done completely against the law and its wrongfully done to take my rightful earnings.

## SECOND CAUSE of ACTION- WRONGFUL TERMINATION

IN the United States Constitution and the Constitution of the State of California it is illegal to discriminate against a person based on race, ethnicity, country of origin, or religion.

*Nothing in this chapter shall prevent an employer or an*

*agent, employee, superintendent or manager thereof from furnishing,*

*upon special request therefore, a truthful statement concerning the*

*reason for the discharge of an employee or why an employee*

*voluntarily left the service of the employer. If such statement*

*furnishes any mark, sign, or other means conveying information*

*different from that expressed by words therein, such fact, or the*

*fact that such statement or other means of furnishing information was*

*given without a special request therefore is prima facie evidence of*

*a violation of sections 1050 to 1053*

**Furthermore:**

On January 12th, 2012 I called Uber regarding the iPhone that belonged to Uber. I had concerns about minor mishaps with the iPhone, the iPhone at the time not receive any phone calls. Uber told me to bring it to there office to have it checked out. Defendant Scott Munro took the phone and right there on the spot told me that they don't need me anymore and was asked me to leave. I asked the reason for this. Defendant Munro told me that he felt that I was an "aggressive driver". He also stated that there was not enough business at the time. The California Public Utilities Commission had assigned my limousine the TCP #26843. After Defendants dismissed me, Uber hired several other drivers within days. I worked with Uber for two weeks and no one processed a claim against me, I had no bad reputation, was involved in no traffic accidents, I received no traffic citations or even a parking ticket. I neither missed nor was late for any assigned pick up. My vehicle was in perfect working order every shift. Each and every client that I carried exited the limo in cheerful good spirits. If there was a claim about me,

Defendant Uber needed to tell me the same day and notify me of my actions. If I had received such notification, I would have immediately taken the necessary steps to correct any problems. Fortunately, I had no claim against me, yet Uber acted in an unprofessional demeanor. Later on that day, Defendant Scott Munro claimed I was an aggressive driver and had to let me go. I asked Scott Munro to show me any documentation or any customer complaints or any other proof or any substance to back his comments up. I also asked him when was I ever aggressive and on which trip it was. Scott Munro declined to say anything or show any documentary support for his illegal and Wrongful Termination of me. Scott dose not have experience with any transportation of any manner. He and most of his staff made things up as they went along. Scott claimed I lost stars but wouldn't specify. He was just making things up on the spot. I however had an average of 4.2 stars ratting out of a total 5 star ratting on a busy schedule around Charismas time. On New Years Eve, Uber charged an outstanding hike fee of $10.00 for each 100 yards. Customers started to double check the price and the distance so customers started to advice he drivers where to go. From turning left to turning right so customers could save money while in the limousine, they knew it was not fair and had to bite there tongs because it was a last minute charge. As one example, a fare that night starting from Steiner at DuBose and ending at Twentieth Avenue at Anza was billed to the customer an exorbitant $160.00!!! The same trip by limousine any other night would cost around $30.00 to $40.00! I had a high star and costumer percentage. Uber took my rightfully earned money from working at the time. By denying me access to the billing system, I could not verify that all fares that I carried were billed completely and correctly, so they were able to fraudulently took a higher percentage then that of what they claim of taking. Uber took my tips from the customers who loved my car and my customer service. Customers claimed of signing off tips to be charged to my account. Uber however played around with my pay roll and took what did not belong to them. I did not see a single tip during the

1  entire time that I worked for Defendant Uber. I have driven limousines and taxi

2  cabs in the Bay Area for over twenty years. In my experience, it is inconceivable

3  that in three weeks of the holiday season not one of the customers that I carried

4  added a tip which they intended the company to forward to me. The calls and the

5  iPhone belonged to Uber, so I had no way of changing anything or changing fairs.

6  The charges go to Uber's account, meaning when I receive my check all of my

7  work hours I received have no details of anything, just a blind payment. Uber dose

8  not show the title of the job description, showing no drop off or any pick ups or

9  customer name. We send them letters, text, telephone calls, and e-mail, but they

10  don't respond for it, nothing back to me! It is Wrongful Termination!

11

12

13  **Third CAUSE of ACTION- Fraud.**

14  Defendant Uber Technologies Inc. did not pay Plaintiff Rashid Alatraqchi all of

15  the money owed to him for the work that he performed. When Plaintiff, Rashid

16  Alatraqchi requested that Defendant Uber account for all money owed to him,

17  Defendant Scott Munro told Plaintiff to review his account on the Bill.com

18  computer system using the company iPhone. Though Plaintiff repeatedly attempted

19  this, he was never able to access the requested information. Plaintiff requested this

20  information many times from Defendants verbally, by leaving voice mail

21  messages, text, and e-mail messages, as well as by speaking directly to Defendant

22  Scott Munro. They don't pay me! Plaintiff wrote letters to President Barak Obama

23  and to the Inspector General of the United States Department of Justice, Mr. Glenn

24  Fine regarding this matter. Plaintiff has corresponded with both of these offices

25  over the years and each office surely maintains a file containing this remarkable

26  reading.  Plaintiff then registered a grievance with the California Department of

27  Industrial Relations, Division of Labor Standards Enforcement. It was only after

28  this action that Defendant tendered a partial invoice of the work performed by

Plaintiff. It was impossible for the Plaintiff to thoroughly review this invoice because the Defendant's computer generated invoice referred to each job only by an invoice number and date. There was no reference to either a client or location, making it impossible to match anything on this invoice to any specific job. Defendant Uber Technologies, Inc. failed to pay all money owed to Plaintiff Rashid Alatraqchi in a timely manner as stated in the agreement signed by Plaintiff and Defendant, and the invoices that Defendants did make available to Plaintiff were not verifiable. And also we wrote to them text messages, telephone calls, e-mail and letters regarding this FRAUD, and they didn't respond!

A. Plaintiff Rashid Alatraqchi tendered $300.00 to Defendants Uber and Scott Munro as a deposit for the use of the iPhone used in company business. Plaintiff returned this iPhone to the Defendant on January 12, 2012, and has still not received the return of this $300.00 deposit.

B. The invoices produced by Defendants references each job only by an invoice number and date. There is no mention of either a client name or location.

C.I worked December 29,30,31, 2011; I have not received any money from Uber for work performed on December 29, 2012. Plaintiff has not received payment for all of the work performed during the period of employment.  The invoice tendered by Defendants for the period January 1-8, 2012 also is incomplete and impossible to review for the same reason.

D. Plaintiff has not received any tips. Plaintiff had been told by several clients that they were pleased with the service and would add a tip to the fare. Defendants have not remitted any amount of the tips which clients paid and intended the company to forward to Plaintiff. It is inconceivable that not one of the clients that Plaintiff

carried during the holiday season would add any tip with their payment. Plaintiff has driven  limousines in the Bay Area since the late 1990s, and with this experience knows that in this industry, a tip of 20% of the  fare is common.

E. Plaintiff repeatedly requested that Defendant make corrections to the amounts stated on invoices.

F. Defendant Uber would perform their daily closeout on the computer system at some time shortly after midnight on Friday  and Saturday nights. This is the busiest time for drivers. It was not uncommon for any work in progress at that time to be lost to the computer system and not credited to drivers. This lost work would not show on the iPhone used by drivers to ensure correct billing.

G. Defendants produced an invoice that they claimed represented work performed by the Plaintiff. The least amount that was shown on this invoice was $15.00. The Defendants told me to NOT   start the meter until the client was in the vehicle. This is a fraud.

**Please See Exhibit _1_ two pages**


***Losses of the Plaintiff, Rashid Alatraqchi.***


1. Before contacting Defendants, Plaintiff was registered with the California Public Utilities Commission to operate a limousine business, Charming City Limousine Company, TCP #26843.

2. Plaintiff entered into the business arrangement with the Defendant believing that this would be along term, mutually beneficial deal.

3. During the period that Plaintiff worked for Defendants, he received several calls requesting service from existing clients, but was unable to take these jobs

because of his commitment to Defendant Uber.

4. Believing that this arrangement would be a long tern deal, Plaintiff purchased another limousine, an eight passenger Chevrolet Suburban SUV. The cost of this vehicle was $35,000.00. Plaintiff made an initial down payment of $10,000.00 then made eleven monthly payments of $600.00 each. Plaintiff incurred costs for additional insurance, storage, and maintenance of over $1,000.00 per month.

5. At the time Plaintiff Rashid Alatraqchi started working for Defendant Uber Technologies, Inc. he was working two jobs. Plaintiff was driving taxi cabs for a San Francisco based taxi cab company as well as owning and operating his own limousine service Charming, City Limousine Company. By accepting Uber's offer of employment, Plaintiff left his job driving taxi cab sand did not pursue all steps necessary to nurture and expand his own limousine company. The Christmas/New Year holiday season is the busiest time of the year in this industry. After Plaintiff filled the gap for Uber during this busiest few weeks,   Defendants Uber and Scott Munro no longer needed the Plaintiff and pushed him back out in the street.

6. Plaintiff was the owner of Charming City Limousine Company and also drives taxi cabs here in San Francisco. Plaintiff has been driving professionally in the Bay Area for over fourteen years in taxi cabs and over twenty years in limousines. Plaintiff has seen damage to the income of drivers of both taxi cabs and limousines since the arrival of Uber and several other computer based services that siphon off customers, but are not required to meet the stringent regulatory procedures that state and local laws mandate.

7. Scott Munro has recently interviewed and hired TAXI DRIVERS working for local cab companies, giving them access to the Uber software so that they might also accept work from Uber while driving their taxi cabs! This practice is 100% ILLEGAL and does much damage to the industry, to the reputation of those individual drivers involved, the taxi cab companies they work for and to all taxi cab drivers. It should be obvious to anyone, even you, that the practice by Defendant Uber of taking requests for service from customers that were taxi cab customers then SELLING THESE requests for service back to the taxi cab drivers is just plain WRONG!

8. Several of the Taxi Cab Companies in the city are aware of this situation. These companies have told the drivers participating in this activities that they will not allow the drivers to accept customers who had previously been taxi customers while the drivers are using the company vehicle, bearing the company logo and color scheme, and insurance secured by the companies, while the companies do not receive any part of the fares collected. In the event of any accident in this situation, any party that might claim damages will find it very hard to collect compensation from Uber, the driver or the owner of the vehicle involved!

9.To challenge this illegal operation, the San Francisco Municipal Transportation Agency has issued more Taxi Cab Medallions. These Medallions are in effect the license that allows taxi cabs to operate within the city. Plaintiff Rashid Alatraqchi has held an A-Card and Badge as a taxi cab driver issued by the city since 1998. Plaintiff has seen a marked impact on requests for service since the arrival of Defendant Uber in this city.

10. Several of the largest taxi cab companies in San Francisco have sued Defendant Uber Technologies, Inc. in court in an attempt to stop this illegal

encroachment on their business. Defendant Uber avoids all of the costs of legally running a taxi cab or limousine business that every other company must meet under federal, state and local regulations.

11. A class action law suit was also filed by taxi cab drivers in San Francisco for the same purpose, to stop Uber from operating without meeting the same standards every other passenger for hire business must meet under federal, state and local regulations. This suit is still ongoing through the courts.

12. Because of the reduction in business, I have cancelled all of the permits held by Charming City Limousine Company allowing operations at each of the local airports.

13. Two telephone lines I lost it, I put hold on it I paid $200.00 a month. This one LOST to me by Defendant Uber!

### *DAMMIT! Uber VIOLATE THE RULES AND REGULATIONS SINCE 100 YEARS AGO!!!!!*

I filed a claim against Uber Technologies, Inc. with the State of California Department of Industrial Relations, Division of Labor Standards Enforcement on January 17, 2012. The Commission investigated my charges. One of the steps in this investigation was to request information directly from Uber. The responses from Uber were not complete or honest. Uber submitted to the Commission a partial invoice of work that they claim that I performed. These invoices identified each job only by an invoice number. No client or location information was given. This made it impossible for myself or anyone else to link an invoice number to any specific job. This means that there is no way to prevent Uber from perpetrating a FRAUD, no way to check or verify that Uber has billed each fare completely and

1  correctly, or if they are even showing the actual fares carried by a particular driver!
2  Because Uber used a computer generated system for client requests for service and
3  then for the dispatch of vehicles, I did not think that it would be necessary to keep
4  a log of each job that I performed. After I was having a difficult time accessing
5  Uber's system, I did begin to keep a log. I wrote an estimated fare amount for three
6  consecutive days, January 6, 7 and 8, 2012. Later, I compared my records to the
7  invoice that Uber claimed was a complete record of the work that I had performed
8  during this pay period. I immediately saw that it would not be possible to match
9  any specific job to any of Uber's invoiced fare numbers. I also saw that several
10  jobs that I had performed on each of these three days did not appear on Uber's
11  invoice. I mentioned several specific fares that needed to be adjusted in e-mail
12  messages to Uber. I never saw that any of these fares had been adjusted. Again,
13  without access to the company's records, it was impossible for me to ensure that
14  any specific fare that I carried was in fact billed correctly. After I filed the
15  complaint with the state Labor Commissioner, two hearings were held. The person
16  representing Uber at each of these hearings brought as documentary evidence
17  copies of invoices that Uber claimed were complete records of work that I had
18  performed on several days. Again these invoices identified each fare only by an
19  invoice number, without stating a customer name or pick up or drop off location.
20
21  The Labor Commission of the State of California's Case Number for my complaint
22  is #11-42020 CT Rashid Alatraqchi v Uber Technologies, Inc.
23  A hearing was held on July 19, 2012 before Regina C. Pagalilauan, Hearing
24  Officer. I was present. Mr. Jesse Lucas appeared on behalf of the Defendant, Uber.
25  At the hearing, the testimony given by Mr. Lucas was misleading and untrue and
26  FRAUD. The documents that he presented were also FRAUDULENT. The
27  Hearing Officer questioned the time mark on some of the documents. Mr. Lucas
28  replied that the time mark was "London time". I mentioned that all of the work that

I had performed for Uber had been here in San Francisco, California, United States of America, in the Pacific Standard Time Zone. I have never even been to London! More FRAUD!

This is a copy of a letter that I wrote to Uber Technologies, Inc. on Friday, January 27, 2012 regarding billing issues and other problems that I had encountered while I worked for Uber.

From: Rashid Alatraqchi, Proprietor
      Friday January 27, 2012
      Charming City Limousine Company, T.C.P. 26843
      447 Valencia Street, # 231
      San Francisco, California 94103
      Telephone 415-240-2262

To:    Uber Technologies, Inc.
      Attn: Scott Munro
      800 Market Street
      San Francisco, California 94102
      Telephone   646-504-8237 (Direct-Scott Munro)
      VIA U.S. Postal Service Certified Mail # 7011 1570 0001
       6016 3382

To:    Uber Technologies, Inc.
      Attn: Manager
      182 Howard Street, Suite 8
      San Francisco, California 94105
      VIA U.S. Postal Service Certified Mail # 7011 1570 0001 6016   3375

To Scott Munro, or To Whom It May Concern,

I applied to become an Uber Partner in February of 2010. I had heard from friends that Uber is a successful company and a good place to work. I know some thirty drivers working with Uber. I waited a long time to hear from Uber in response. In the summer of 2011 I started seeing calls on my telephone from 646-504-8237, but there was never any message left. I knew that this number belonged to Scott at Uber. When I finally did answer a call from this number, Scott Munro told me that he wished to schedule an interview and that I should bring my vehicle with me at that time. I felt that the interview went well. Scott told me that he was pleased and that my documentation and vehicle looked good to him. I produced all of my PUC documents as well as the permits allowing Charming City to operate from San Francisco International Airport, Oakland International Airport and Mineta San Jose Airport. As far as I know, few operators possess the permit for operation from the San Jose Airport. This was in mid summer. Scott told me that he would call me when he was ready for me to start.

I did not hear back from him again for a long time. In December, I heard from other Uber associates that the company had sent an e-mail to all Uber drivers saying that the company needed drivers and to pass this word along to anyone that might be interested. I sent messages to Scott at Uber by both e-mail and text message. Scott returned these with a telephone call on Wednesday December 28, 2011, leaving a voice mail message. I returned his call that same day. He asked if I wished to come the next day, Thursday December 29, 2011, for an interview and orientation. I agreed. At this interview, there were several other applicants. This interview went well. We signed all necessary paperwork. The "orientation" was mainly concerned with the use of the iPhone for taking orders and for billing.

There was nothing mentioned regarding specific procedures for customer service or contact.

Scott gave me the cell phone for Uber work, and I left a deposit of $300.00. I started taking work from Uber that same night. I worked the next night, Friday, also. All of the clients that I carried seemed happy with the service I provided. If there were any complaints, no one made me aware of them. None of those clients complained to me while in my limo. All of these clients had my cell phone number. None made any complaints afterwards either.

I have a wide variety of cds and radio choices available for the entertainment of clients. I find that light jazz classics provide a calming, pleasant experience for the clients and for myself, especially when the traffic conditions are most stressful. I keep my vehicle in spotless condition. I take great pride in providing a pleasant, courteous atmosphere. I also take a professional attitude toward driving safely. This is the way I make my living. I do not need the extra cost and inconvenience that result from traffic tickets, and even the most minor collisions. These increase insurance costs and cause time missed from work.

In your text message dated January 8, 2012, you state that Uber will deactivate my account for several reasons. You say that my customer satisfaction rating is low, and that I have a number of "outstanding client issues". I have no idea what these issues might be. You say in this message that you will return to town at the end of the week, and will be available to discuss these matters. I did meet with you on January 12, 2012 at 1:00pm. You again told me that there had been several complaints from clients, but could not, or would not, show any of these to me. Then you said that the business had slowed considerably and that Uber simply did not need another driver. It seems to me that you used me to fill the expected need

for extra capacity on the busiest night of the year, then discarded me after your need was met. If you had made this clear from the outset, we might still have come to some arrangement. As it is now, your needs were met and I am left in a very precarious situation. I no longer have the job that I was working before starting with Uber, and declined several other offers believing that Uber was serious about a long term business relationship.

I would like to state several points before closing this letter.

I have many years experience as a professional driver. Since the late 1990s, I have driven limousines and taxicabs in the Bay Area. I own Charming City Limousine Company, and have over time owned other businesses. I know the importance of courtesy and delivering customer satisfaction.

I was invited to become an Uber partner at the busiest time of the year. By accepting this invitation, I missed other opportunities that had been offered to me. Because I accepted this Uber partnership, I declined a position with another limo company. Also, because I was not able to be available to accept Uber work and drive taxi for the company that I had been working for, SF American, I lost that job. When I started driving with SF American, I had placed a deposit of $1,000.00 with them. That company now refuses to return this deposit because I did not give them two weeks notice that I could no longer drive for them. It seems to me that I filled a need that Uber had for a very few busy nights, then was thrown away after this need was filled. Now that these few busy nights are over, I am finding it almost impossible to locate another driving job. I have applied to several local taxicab companies, and have been told that there is not enough business to hire any new drivers.

I did hear one complaint from several clients. The pricing of Uber services was a constant topic. As examples, the cost of service from 22nd Street to Schrader and Fell over the New Year Eve night was $107.00! From 19th and Mission to Fell and Ashbury the cost was $105.00! A fare from Sanchez and Dubose to Geary at 20th Avenue was $88.00! Another fare from the Twin Peaks area to Broderick and Haight cost over $110.00! I understand that these prices are based on the very limited availability of taxis and limousines on the busiest night of the year, but I do not think that customers see it this way. The regular cost for Uber service is nearly two and a half times the cost of taxicab service. The premium prices that were charged on New Year's Eve were three or four times the regular cost, which are already more than the price of the same trip in a taxi cab!

Many of these clients are computer savvy. All of them carry cell phones that are linked with GPS services. Many would use this function for the entire trip. At every intersection, they would tell me to take a right or left turn to try to save a few feet from the mileage cost. This was very nerve wracking and distracting at a time of night that most of the drivers on the road had been drinking and taxi and limo drivers need to be the most careful. It was amusing to me that these same people that wanted the appearance of being a big spender by taking a limousine would attempt to save pennies in this way. Many of these clients would call several taxicab companies. Then, after waiting for long periods would call Uber "cab".

As you know, I have outstanding payables due from Uber for some $3,000.00. When I spoke with you about this, you told me to send these bills to Uber via Bill.com for payment. I have had several friends help me attempt this. I have a friend that is a banker at Wells Fargo attempt this TWICE. Both of these attempts were erased. Another friend that is a limo driver, limousine company owner, and

has a Masters Degree also completed this process. Again Uber said that they did not receive this billing. Another friend that attends SF State in his fourth year tried to help. Once more, Uber claims that they did not receive this billing. Under California law, an employee that is fired must be paid outstanding wages IMMEDIATELY. I need to be paid IMMEDIATELY!

In the text message you sent regarding this, you state that my "satisfaction rating" by clients is "low", 4.2, in that bottom 5% of Uber drivers. I would like to see the individual complaints. I have only worked with Uber for ten days, from December 29, 2011 until January 8, 2012. Several of the clients did mention that they considered the rates that Uber charges very expensive. These were the same clients that would monitor the trip's progress on their cell phone's GPS function. They would tell me where to make every turn! All of the Uber clients that I carried have my cell phone number and could have contacted me at any time. None of these "dissatisfied" clients have contacted me by voice or text message. New Year's Eve and the rest of the holiday season was particularly busy. Every one was in a rush. Taxi and limo services were overburdened. Every client had contacted several taxi and limo companies, and had been waiting for a long time. I feel that a good bit of any "customer dissatisfaction" was the result of that situation. In Uber advertising and on client request for service pages, clients are made aware that individual drivers are not employees, but instead are "partners" with Uber. Again, all clients have my cell phone number and e-mail address, as well as a photograph of the driver, me.. Any one of these "dissatisfied" clients could have made their complaints directly to me at any time. Scott told me that I had not been "sociable" to the clients. I have been a passenger for hire vehicle driver since the late 1990s. I understand the value of customer relations and feel that this is an area in which I excel. I feel that I am outgoing and can make pleasant conversation with clients from all walks of life and from any part of the world. I also can tell when a client

would rather not engage in conversation and try to not intrude. If I am asked for information during a trip, I am very willing to use this as a starting point for further conversation.  During the holiday season, most of the clients that I served were in small groups that appeared to be engrossed in their own conversations. I was most willing to speak when I felt it appropriate, otherwise I did not but in. While driving for Uber, I worked the night shift. The passengers that use limousine services during the daytime hours are ordinarily more hurried and uptight. These clients are headed to the airport to catch a plane, or to a business appointment. Traffic is much heavier and they are either distracted or short tempered. The clients that use this type of service at night, however, are more relaxed. They are more likely to be in less of a rush and are out to have a good time. If any of my clients had complaints, they sure did not state them to me. I received no e-mail, text or voice messages stating any complaints at all.

After working a few days with Uber, I saw that there was a need for SUV sized limousine services. Believing that I had a future with this organization, I made a commitment to purchase a black 2010 Chevrolet Suburban with black interior that I intended to use in this business. I placed a $10,000.00 down payment towards this purchase. When I told Scott this, his response was "I don't need classy cars, I need class drivers." This is possibly what Scott might wish, but the fact is, probably 30% or more of the drivers associated with Uber use drugs! The bottom line is, I lost money believing that I had enough security in my future income through this partnership to make the investment in this new vehicle. Now I find myself committed to this purchase, and do not have a source of income secure enough to guarantee my ability to continue these payments.

On Tuesday January 24, 2012 I received in the mail the check from Uber in the amount of $3,309.60. There was no accounting of the individual fares that this amount represents. Therefore, there is no way that I can confirm that each of the individual fares were billed correctly and completely. There was also in this envelope a check stub dated 1/19/2012 for check # 854536 listing invoice numbers as follow:

| Invoice Number | Bill Amount | Payment Amount |
|---|---|---|
| 1,2-1,8,12    SF | $1,419.20 | $,419.20 |
| 1,9-1,15,12    SF | $  266.40 | $  266.40 |
| 12,65,11-1,1,12 SF | $1,624.00 | $1,624.00 |
| Total | | $3,309.60 |

I did keep a record of the amount due for three days. These fare amounts are as follow:

Day 1. $15.00, $34.00, $29.00, $20.00, $22.00, $17.00, $20.00, $17.00, $19.00, $34.00, $25.00, $27.00

Day 2. $15.00, $22.00, $34.00, $15.00, $45.00, $40.00, $27.00, $15.00, $15.00, $26.00, $20.00, $15.00, $20.00, $45.00, $21.00, $19.00

Day 3. $24.00, $29.00, $15.00, $23.00, $15.00, $23.00, $32.00, $27.00, $28.00, $23.00

On January 8, 2012 I sent an e-mail to Uber stating problems with four fares that I had carried over that shift. This e-mail is as follows:

Had some problems yesterday 1/7/2012

1. p/u on beaver st. to 1112 lombard st This was my 4th run. Client said that he ordered suv. At destination, iPhone gave charges as $15.00. I believe should be more.
2. today 1/8/12 early morning the network was down for my last five runs, so I do not know the charges.
3. P/u from 1301 Polk with three stops. Believe that there should have been extra charges.
4. at around 6pm. P/u from 66 corwin st w/ three passengers & two stops. 1st stop market & castro, dropped two men, one told to take the third passenger, a female, to a destination near candlestick park. iPhone told me to charge only $15.00! Oblisks should be closer to $40.00.
5. Last week I sent my account #. I will check with bank tomo…

Again, I need an accounting of these items as well as some way to confirm that each individual fare has been billed correctly. I also believe that I am still owed the following amounts.

| | | |
|---|---|---|
| 1. $ 300.00 | | Deposit for use of iPhone |
| 2. $ 661.92+- | | Customary 20% TIPS from clients |
| 3. $ 80.00+- | | Fares in above e-mail |
| 4. $ | ? | Interest |
| | | |
| $1,041.92+- | | TOTAL DUE + Interest |

There is one final mater that I need to address in this letter. Since you told me on January 8, 2012 that Uber no longer needed my services, I continue to receive e-mails from Uber. I have received over 60 of these "junk" messages. Not only does

this clog my telephone, I feel that it is an insulting reminder of the mistreatment and disregard that Uber Technologies, Inc. has shown towards me.

I feel that I should be paid the amount stated above IMMEDIATELY. I also believe that I should receive interest on this amount. When Scott called to tell me that Uber had accepted myself and my company, Charming City Limousine Company to be a "partner" I quit a job that I had held for several years. I believed that Uber Technologies, Inc. was serious about establishing a profitable, long term business relationship. I also declined several other opportunities that were offered. I now find myself left out in the cold after Uber has used me to cover their potential deficit of carrying capacity for the busiest time of the year.  I feel that I am due some compensation for this less than honest treatment.

I began driving with Uber on December 29, 2011.  This relationship had been presented to me by Scott Munro as a long term business opportunity. Believing this, I stopped working for the company for which I had been employed by for the last several years. I neglected my own business, and declined several other employment offers from others. After Uber's needs for assurance that they would not be shorthanded on the few busiest nights of the year were met, I was discarded without a second thought on January 9, 2012. I was told to return the Uber iPhone on January 12, 2012. I was not paid the money that Uber owed me on the day that I was dismissed as required under California law. I was no returned the $300.00 deposit I had placed with the company for the use of the iPhone at the time that I returned it either. I have no way to confirm that all of the fares that I carried for Uber were billed completely and correctly. I have no way to confirm that I have received any TIPS that clients might have paid Uber, but intended for me to receive. I feel that I have been mislead and mistreated by Uber Technologies, Inc. and that I should be compensated.

1

2   I called Uber on January 19, 2012 at about 2:05pm. I left a voice mail message for

3   Scott regarding these subjects. As of today, Thursday January 26, 2012 he has not

4   returned my call. I do not feel that I should have to repeatedly call, leaving the

5   same voice mail message. To ensure that you receive this letter promptly, I am

6   sending copies to both of the addresses that I have for Uber Technologies, Inc. by

7   U.S. Postal Services Certified Mail. Scott, if you feel that you need to discuss this

8   further, please feel free to contact me IN WRITING at the address listed in the

9   heading to this letter ASAP. I expect to see your WRITTEN RESPONSE WITHIN

10  ONE WEEK so that we might resolve this. Otherwise, I will proceed with

11  whatever steps are necessary to collect this money. Please respond as soon as

12  possible. Thank you for your time and attention to this matter.

13

14

15

16   Plaintiff , signed ,Rashid Alatraqchi

17  Friday January 27, 2012

18

19

20  As of today January 10, 2013 I still have not received adequate response from Uber

21  to any of these issues.

22

23

24  On Tuesday January 17, 2012 I wrote the following letter to President Barak

25  Obama to request any assistance that his office might render in this situation.

26

27

28

From:  Rashid Alatraqchi, Proprietor

    Tuesday January 17, 2012

    Charming City Limousine Company, T.C.P. 26843

    447 Valencia Street, # 231

    San Francisco, California 94103

    Telephone 415-240-2262


To: President Barak Obama

    c/o Mr. Mike Kelleher, Special Assistant to the President

    and Director of Presidential Correspondence

    1600 Pennsylvania Avenue, N.W.

    Washington, D.C. 20500

    Telephone  202-456-1414

    Fax        202-456-2461



To President Barak Obama, or To Whom It May Concern,

I am the owner of Charming City Limousine Company based in San Francisco. I have been a driver of both taxicabs and limousines here in the Bay Area since the late 1990s. I recently opened my own limousine company. At the same time was have been driving taxi cabs under contract for a taxicab company here in the city.

In February of 2011 I applied with Uber Technologies, Inc. to become a partner. In the summer of 2011 I was called by Scott Munro at Uber for an interview. At this interview, I produced all of the necessary documentation from the state and local regulatory agencies, proof of the necessary commercial insurance coverage, and the permits that allow operation at the three major airports in this area. I also

brought my limousine at that time for inspection by Uber. Mr. Munro appeared

satisfied with this documentation, my personal interview, and with my vehicle. He

told me that he would be in contact with me very soon. I did not hear from him

until mid December, despite repeated telephone calls to Mr. Munro, as well as text

and e-mail messages. In the middle of December, Mr. Munro sent an e-mail to all

Uber partners saying that the company was in need of "partners" and requesting

that partners pass this word along to anyone that might be interested in becoming

an Uber partner. I sent another e-mail to Mr. Munro in response to this system

wide alert saying that I was still interested. Mr. Munro did return this call on

Wednesday December 28, 2011. He said that there would be an orientation the

following day.


I attended this orientation and was issued an iPhone for use with Uber business. I

placed a deposit of $300.00 for this iPhone. I started receiving work from Uber

within two hours of leaving the orientation. I was happy to have been accepted by

this large, successful partnership. I worked for the next two weeks, during the very

busy holiday season.


On Thursday January 12, 2012 I was in the Uber office. Mr. Munro told me that

Uber no longer needed my services, and requested that I return the iPhone. I asked

about the return of my $300.00 deposit. Mr. Munro told me that Uber would send

to deposit by mail. I also asked about the money that I was still owed. He said that

this money would also be sent by mail, but that I would have to bill Uber for these

payables by using Bill.com.  Scott had discussed using Bill.com on December 31,

2011 saying that the use of this system was faster, more reliable, trendy and that he

would have much less personal contact with undesirables like myself!  I made

several attempts at using Bill.com.  I even had several computer knowledgeable

friends try to help me use this system the first time. One friend is a banker working

1   at the bank that Charming City uses for our business account. He attempted this
2   process twice. I watched as he went through this. The on-line form requests the
3   payee's bank, routing number, account number, company name, owner's name,
4   and business address. Neither of these attempts at using this method of billing were
5   successful. I later received calls from Uber saying that Uber had not received
6   billing information from charming City. I asked help with using Bill.com from
7   another friend. This man is in his fourth year at San Francisco State. We went
8   through this process again with the same result. I again received an e-mail message
9   from Uber requesting my billing information. I then asked still another friend for
10   help. This guy is a limousine owner and holds a master's degree in business from a
11   real university! Again, the necessary information did not reach Uber.
12

13   On Sunday January 7, 2012 I sent an e-mail to Uber regarding these missing
14   payments, as well as several other issues. I did receive a response, but not payment
15   for these fares. I was told that the Uber billing department was behind because of
16   the overload of business on the busy New Year's Eve. I also noted that several of
17   the clients that I had carried had not accounted for ALL of their services. They had
18   not recorded extra mileage and extra stops we had made along the way. On
19   Thursday the 12th, I checked my bank account and found that no deposit had been
20   received. Then on Friday I went to my bank branch to confirm that no deposit had
21   been received. I called Scott on Friday December 13th at about 1:00pm. I left a
22   message saying that under California law any person fired from a job must be paid
23   any outstanding money owed immediately! I called again at about 2:30pm. I told
24   him that I need Uber to send me my mone as soon as possible! He say "no ticke, no
25   washee, tee he"
26

27   It is now Tuesday January 17, 2012 and I still am as baffled as ever. I still have not
28   got paid for this load of bill.com. I have not received a single penny from Uber

Technologies, Inc. for ANY of the work that I have done for them. NOT ONE PENNY! Not only that, he still didn't send mechek.  They put me unhold, they use my mone!! It agin, under California law, when u send somebody home, u gotta payem immediately. Some buddy to send his e-mail sum buddy to investigate him and his e-mail, scott@uber.com the second one Partnerssf@uber.com after those too support@uber.com ! His phone number 1-646-504-8237. sum buddy cull him, my mone still stand out! I need sum buddy describe my work at uber, he need top pay me immediately, sum buddy investigate him! I need also my deposit $300.00! I need ur explanation I need ur writing response. I am waiting? I say again that I was used by Uber during the most busy night of the year while under the impression that this would be an ongoing business relationship. I did not attempt to drum up business for Charming City Limousine Company for that night because of this. During the time I was strung along by Uber, I turned down other offers of employment. Another friend that owns a limousine service had contacted me to offer a job. I told him that I had just been accepted by Uber was could not accept his offer.

I had been working for SF American Taxicab Co. when I was told by Scott Munro that I was being accepted as an Uber partner. I had been required by SF American to deposit $1,000.00 when I started driving for them. They did not return this deposit, saying that I had not given sufficient notice that I would be leaving that company.

I drove as a partner of Uber Technologies, Inc. from December 29, 2011 until January 8, 2012, a total of eleven days. I need from Uber an accounting of ALL of the fares and confirmation of payment for EACH OF THESE FARES. I had requested that an adjustment be made for five fares, I need confirmation that these have each been taken care of. If Scott tries to say that this will be taken care of

through Bill.com, I will remind you that we have tried this FOUR TIMES, and the process did not work for me. I am not an employee of Uber. I will not release information regarding my bank accounts, especially for any transactions over the internet. There is too much opportunity for this information to fall into the wrong hands! Under California law, a person terminated by an employer must be paid all outstanding money owed to them IMMEDIATELY! Uber has not done this. They have held the money due me since DECEMBER 29, 2011!! Scott has told me several times that Uber pays partners every Friday. Every Friday since December 29, 2011 has passed without Uber paying me!

I wrote a letter to you, and sent a copy to Inspector General Glenn Fine at the United States Department of Justice, on December 19, 2011 regarding interference with my life by individuals either within the federal government or with close ties to it. I mentioned Uber in that letter, and believe that someone has contacted Uber. I was hired by Uber immediately after my letter to you. I am now jobless, and need any assistance that your office might render.

In closet I want my goddam mone okey!  I need my deposit okey! I need the mone Uber owes me for work that I preformed! I would be most interested to see any response from Uber to inquiries from your office. I would appreciate any suggestions that you might offer regarding possible steps that I might take after your office has completed any investigations.  I wait ur WRITTEN RESPONSE! Thank you for your time and attention to this master, okey?

Plaintiff singed, Rashid Alatraqchi
Tuesday January 17, 2012

1

2

3   Uber Technologies, Inc. pays drivers weekly. I was not paid immediately for the

4   first weekly period and was not paid either the first period nor the check for the

5   second pay period when these payments were due. It was only after I wrote to

6   President Obama that I did see any money from Uber. Even then, the amount that I

7   was sent was not that total that Uber owed to me.

8

9

10   I, Plaintiff, Rashid Alatraqchi, was driving limousine for Uber Technologies INC.,

11   during a very busy shift. I had spent considerable effort to secure this preferable

12   job title because I was responsible for my own limousine company and had the

13   experience. This WRONGFUL TERMINATION has caused me a grate deal or

14   unpleasant ordeals. My personally owned limousine company went to Uber

15   because the stole my customers and customers from all other limousine and taxi

16   cab drivers here in San Francisco. One of my customers he told me why done you

17   go to work with Uber. I tell him no I independent with myself, different company.

18   I had to start a new line of customers for my company on a less favorable schedule,

19   a schedule that came after the busy season of the holidays.

20

21   Uber Technologies, Inc. is the name that this business organization has filed with

22   the California Secretary of State and the city and county of San Francisco, the

23   name is used operate there illegal transportation services Inc., a Delaware

24   corporation is an abbreviation for a form of business organization. In most cases,

25   this business structure is used when a business is owned by one person, or a

26   relatively small number of people. The use of corporation status insulates the

27   owners from some of the liability that might arise from operating this illegal

28   business for transportation services. Uber claims to be a technological corporation

1  however Uber dose not state what kind or technology it is operating in the city. It is

2  illegal for a transportator to operate in the city with out any proper permits or any

3  legal documentation. Uber has not yet proved what there usage of there so called

4  "technologies" or there service's means. Uber advertised for transportation. Uber

5  gets paid by the customers the drivers service. Uber collects money directly from

6  the costumer from online payments set up by accounts, then Uber payees the driver

7  for there services. As well as taking a 20% fee from the driver to Uber again. All

8  payments from customers go directly to Uber Technologies accounts. All payments

9  to the drivers for there services come directly from Uber as well.  Uber shows

10  drivers where to pick up customers and where to drop them off. The iPhone

11  application Uber uses tracks each vehicle by GPS. Several of the fares on the

12  invoice that Uber submitted to me with my payment were noted that the fare total

13  had been reduced because I had taken an inefficient route. Again, I had absolutely

14  no way to argue my side of this issue without being able to tell which damn job

15  they were talking about. Driver dose not get any other information. Uber handles

16  all accounts online and driver only drives customers. All there business actives are

17  monitored through IPhones and steatite tracking. All and every single activity is

18  registered with Uber Technologies INC computers.

19  **I wrote this letter dated on the date listed on the letter, on February 23, 2012.**

20  **This letter was sent to The Labor Commissioner of the State of California.**

21  State of California, Department of Industrial Relations Division of Labor Standards

22  Enforcement

23

24

25  I also sent copies of this letter to President Barak Obama and to Inspector General

26  Glenn Fine of the United States Department of Justice.

27

28

Carlos E. Torres, Deputy Labor Commissioner 1

455 Golden Gate Avenue, 10th Floor, East

San Francisco, California 94102

Telephone 415-703-5307

Fax          415-703-4130

To: United States Department of Justice

Attn: Inspector General, Glenn Fine

1425 New York Avenue, N.W., Suite 7100

Washington, D.C. 20005

Telephone 202-616-4760

Fax          202-616-9881

To: President Barak Obama

Attn: Mr. Mike Kelleher, Special Assistant to the President

and Director of Presidential Correspondence

1600 Pennsylvania Avenue, N.W.

Washington, D.C. 20500

Telephone 202-456-1414

Fax          202-456-2461

**Regarding:** California Department of Industrial Relations

Division of Labor Standards Enforcement

State Case # 11-42020 CT, Rashid Alatraqchi v

Uber Technologies, Inc

**The goes as:**

I am writing this letter to inform your office of the following developments in my dispute with Uber Technologies, Inc. since I filed my complaint On January 27, 2012 to the Labor Commissioners Office I wrote to Uber to discuss several unresolved issues that I had raised in my text message to Scott Munro on January 8, 2012. I requested that I be shown the actual billing totals that were sent to clients that I had carried during the period I worked for Uber, as well as actual total payments that uber received from each of these clients. I requested this information for two reasons. First, I need to be sure that each of these fares was billed correctly and completely, and that payments Uber received was the same amount. Secondly, I find it very hard to believe that not a single one of the fares that I carried during the holiday season added any TIP along with the fare total as it was billed.

1.  My repeated requests to Uber that they show me the accounting for the amount that they chose to send to me on their check #0000854536 was ignored. I asked that the Labor Commissioner make this request to Uber. Shortly after that request, I did receive from Uber five computer generated pages that show what Uber claims is the complete history of the fares that I carried while working for them. This printout shows my name and driver number (8624), and lists a TRIP ID (shown as a six digit number on this printout), TRIP TIME (shown as a date on this printout) and AMOUNT for each fare. Because I have been blocked from entering the Uber computer system, I have no way to verify that these are in fact fares that I carried, or if they were billed correctly.

2.  I believe that there is a discrepancy between the amount that Uber has as total for the billing period ending on January 1, 2012 and the figure that I

come up with as a total for this period. Uber says that the total billing for this period is $1,624.00. I added these numbers up and found that they either total $1,615.00 or $1,614.60. There was also one fare, TRIP ID #478475 that was shown as $0.00 billed and paid. Uber states that this fare is "Under review". Also, I began taking work from Uber on DECEMBER 29, 2011. I mentioned this starting date in my letter to Uber dated Friday January 27, 2012. On this computer generated printout, there are no TRIP ID numbers for any of the fares that I carried on that day, NOTHING SHOWS FOR DECEMBER 29, 2011! I carried at least 18 (eighteen) fares that day. I estimate that the billing to clients for these fares would be about $500.00, less Uber's 20% leaves the company still owing me $400.00. For December 30, 2011 I see that Uber accounts for 13(thirteen) fares, even though I carried at least 20(twenty) fares. I estimate that the billing to clients for these missing fares would be about $200.00. Deducting Uber's 20%, I am still due $160.00.  Uber's history shows that they billed 18(eighteen) fares for December 31, 2011, New Year's Eve. I carried around 28(twenty eight) fares. I estimate that between the fares that are unaccounted for and the fares that I believe were UNDERCHARGED I feel that Uber has shortchanged me by some $300.00.  On this night, the busiest night of the year in this industry, Uber used premium pricing structure, knowing that the availability of taxicabs and limousines would be nil. A driver could expect to not only keep passengers in his vehicle, but could also expect to charge two to three times the normal rate for services. New Year's Day, I carried around 32(thirty two) fares. Uber's printout shows billing for 25(twenty five).  I estimate that around $200.00 in billing is missing from this day's total. After Uber's 20% I see $160.00 still outstanding. I have looked at the printout to see if these missing fares were possibly billed later. I do not see this. Instead,

I continue to see that Uber has failed to account for a sizable number of fares almost every day! Just looking at these few days leads me to believe that Uber has systematically misapplied billings that I should have been paid for and underpaid many that do appear on their records. Just for these FOUR DAYS I estimate that Uber has either undercharged clients or simply misdirected money for fares that is due to me in the amount of over $1,000.00!! Using this period as an example, I estimate that for the eleven days that I worked for Uber, I am convinced that I have been under paid by some $1,400.00, denied any TIPS that were submitted to Uber by clients that intended this money to be forwarded to me that I would estimate at about $665.00, and have had the deposit that I tendered for use of the iPhone, $300.00, with held since I was let go. The e-mail messages between me and the Uber offices on January 8, 2012 concern adjustments to four fares. I have not seen any accounting for these 'adjustments" I estimate that I am still owed around $80.00 for these fares. Uber's printout for the period ending 1,9,12 shows four "adjustments", actually deductions, in the amount of $33.60. As I have no way to know the specific fare that these "adjustments" describe, I feel that they should either be explained, or the money paid to me. This means that I believe that Uber still owes me a sum in the neighborhood of $2,500.00!! Also, I still do not know the exact job or total that Uber billed the client for TRIP ID #478475, dated 1,1,12. This job has been "under review" since the billing period ending 1,1,12. Perhaps these guys will eventually "review" this fare, and either Uber pays me for the service or not. Add this mystery sum to the $2,500.00 that I stated above.

**Uber still owes me the following:**

| | |
|---|---|
| $ 400.00 | December 29, 2011 |
| $ 160.00 | December 30, 2011 |
| $ 300.00 | December 31, 2011 |
| $ 160.00 | January 1, 2012 |
| $ 400.00 +- | January 2-8, 2012 |
| $ 300.00 | iPhone Deposit |
| $ 80.00+- | four adjustments per January 8, 2012 text |
| $ 33.60 | four "adjustments" per invoice 1,16,12 |
| $ 0.00 ??? | TRIP ID #478475, 1,1,12 |

| | |
|---|---|
| $ 1,833.60+- | TOTAL OUTSTANDING |
| $ ??? | Penalties |
| $ ??? | Interest |

**\*This is no including the TIPS I have received, which are not shown by Uber.**

| | |
|---|---|
| $ ??? | TIPS\* |

At the Conference held on February 16, 2012 I stated to the Deputy Commissioner Carlos E. Torres that after driving limousines in the Bay Area for the last twenty years, I would feel confident in estimating that counting the number of fares, and including the mileage, extra stops and waiting time involved, I would have expected that Uber would show that they had billed some $5,000.00 to $6,000.00 for these eleven days of work. If you add the amount of the check that Uber sent on January 14, 2012, $3,309.60 together

with the above $1,500.00 (less the deposit for the iPhone), you get a total
estimated billing of $4,809.60!!!!,

VERY DAMN CLOSE TO MY ESTIMATE! California labor law mandates
that when a worker is terminated by an employer without notice, that worker
MUST be paid all outstanding money owed to him <u>IMMEDIATELY</u>. I was
told that Uber no longer needed my services on January 8, 2012. Uber did
not generate a check for the money that I was owed until January 19, 2012.
That check was put in regular U.S. Postal service mail, and did not reach me
until January 24, 2012. If I understand the law, I am due interest on the
amount of that check, $3,309.60 from January 8, 2012 until January 24,
2012, as well as interest on the money that Uber still owes to me from
January 8, 2012 until they pay the balance. I also am reasonably certain that
there are specific penalties for Uber withholding each of these separate sums
of money. I would hope that by adequately accounting my case that Uber
still owes these amounts to me, Uber might see that I am correct and just pay
me. Otherwise, I will have no choice but to take the necessary steps
available to seek legal actions with in my given rights.


This TOTAL does not take consider the matter of TIPS. I have been in this
industry for over twenty years. In my experience, it is inconceivable that
over the eleven days that I worked for Uber, not a single client added a
penny as a GRATUITY. I know, and am sure that any limo driver will agree,
that it is common for customers to add around 20% as a TIP intended to go
directly to the driver who actually renders the service. Considering that Uber
has already paid me $3,309.6, and I estimate that they have either under
charged or misapplied billing for fares that I carried in the amount of another
$1,500.00+-, for a total (less Uber's 20% deduction) of about $5,000.00. I

feel that it is not unreasonable that I should have seen TIPS of some 20% of that amount, or around $1,000.00!! Most clients these days pay for these services by credit card. Many of these services do not provide a separate line for extra items such as TIPS, they are simply added into the total. Uber's records do not show that ANY of the clients that I carried over the eleven day period that I worked there added a penny in TIPS. I know that at least one specific client told me that he was very happy with the service I provided him, and that he would add 20% as a TIP. I did not see any mention of this or any other TIP either on the check that Uber sent to me, or in the activity account of me work that they sent.

3.  The next billing period ended on January 8, 2012. There is a payment shown for TRIP ID # 492338 in the amount of $42.40. This TRIP ID # is shown again with a deduction of $10.40 and a two word notation "inefficient route". TRIP ID #478475 still shows as "under review". How can he trip be noted as "inefficient rout" on my account when Uber computers process the fairs. Uber computers draw out the pick up locations and the drop locations depending on customer's request. This error is an Uber error that is simple unacceptable.

4.  The last page that Uber sent represents adjustments that were computed during the billing period ending January 16, 2012. There are four items that appear to be adjustments to the billing. I have no way to know which fares these six digit numbers represent. The date for three of these "adjustments" is shown as 2012-01-09. There is a very brief notation beside each of these adjustments. The notation for TRIP ID #506733 states that the route that I took was "inefficient", and the amount of $4.80 was deducted. TRIP ID

#507162 bears a notation that states that there was "extra distance on fare and waiting time at beginning". $4.80 was deducted from this billing also. Two of the adjustments, TRIP ID #507154 and TRIP ID #500993, dated 2012-01-07, have been completely deducted for the entire amount of $12.00 each. The notation for each of these fares states "Do not hit begin trip/end trip without client". The total amount of these "adjustments" is $33.60. Uber made no attempt to contact me to discuss these "adjustments" that were actually DEDUCTIONS from the amount that they owed me! They simply kept this $33.60! TRIP ID #478475 is still noted as being "under review". One other point that I would like to make is that this history of activity that Uber has provided shows fares dated on days that I DID NOT WORK, as well as showing fares credited to days that are far in excess over the work that I actually did on that day. On January 9, 2012, I worked only THREE HOURS, from midnight until around 3:00am. It was very slow that night so I only carried around six fares. Uber's statement lists 14(fourteen) fares for this date.

5. I have received from Uber their check # 0000854536 in the amount of $3,309.00. This total represents the amount that Uber has stated in the invoices listed above. By Uber's records, for the billing period 12, 26, 11 TO 1,1,12, I was paid a total of $1,624.00. For the period of 1,2,12 TO 1,8,12 I received $1,419.20. Even though I was let go from Uber on January 8, 2012, there was activity in the form of "adjustments" in reality deductions that were shown on the period of 1,9,12-1,15,12.  These "adjustments " totaled $33.60. On the face of this check, there is a space showing these invoice dates, and totals that correspond to the periods 12,26,11-1,1,12, and 1,2,12-1,8,12. The line for period 1,9,12-1,16,12 shows a payment of$266.40

included in the total payment amount of $3,309.60. I will say again that after Uber denied me access to their computer system, I have no way to confirm that this does indeed represent the complete and correct billing for each of the fares that I carried. I have no way to account for the fares that are completely missing from this history that Uber claims is complete for all of the fares that I carried while working for them. I have no way to verify that not a single one of the clients that I carried while driving for Uber included a TIP with their payment! I know that it is common practice, if not law, that clients do add a gratuity for the driver. This TIP is commonly about 20%. Uber has not included any accounting for this.

**Explanation of usage of money for driver. It is normal on a given day that a driver spends nearly $60.00 on gas. $120.00 on loss of mileage done on the car. If the driver averages $400.00 a day $180+- is spent on maintenance leaving the driver of about $200+- for a 10 hour work day that comes up to $25.00 hour. This is not a daily average. Prices go up and down depending on the holidays. On busy days Uber charges $10.00 for 100 yards.**

6.  At the time Scott Munro told me that my services were not needed any longer, he stated as one of his reasons "you have received several complaints from clients." I told Scott that none of these clients had made their dissatisfaction known to me, either while in my limousine, or later by any form of communication. These clients are able to do so by telephone, voice mail messaging text, or e-mail. I have not heard one complaint!

7.  On Saturday January 7, 2012 in the early morning, sometime around 3:00am, I dropped a fare at his requested destination. I did not get the billing total for that trip over the iPhone as usual. I contacted Mr. N**** S***** at

his cell phone number, 415-000-0000. I told him that I had not received this billing, and asked his advice. He suggested that the computer system had gone down, and that I should just turn the iPhone off for ten or fifteen minutes. After that time I turned the iPhone back on. I still did not see a billing amount for that fare. I assumed that the office would correct this minor error, so did not do anything more about it. I did include a request that the company make the necessary adjustment to this fare in the text message that I sent the next night, January 8, 2012 at 9:02pm. This problem was item #3 in that text. I also later included the January 8, 2012 text in the letter that I wrote to Uber on January 27, 2012. I have not seen anything from Uber stating that this fare was ever billed, have no way to correlate this trip to a TRIP ID # as Uber uses, and anyway, I am denied access to Uber's computer system, so cannot review their accounting.

8.  As I stated at the beginning of this letter, I attempted to communicate with Uber regarding the billing of four fares in a text message on January 8, 2012 at 9:02pm. I included this topic, along with several other issues in my letter to Scott at Uber on January 27, 2012. Uber did send out a text message to all drivers on January 8, 2012 at 9:27pm regarding fares that showed on their website as being billed at $0.00. This text reads as follows:

    OK Rashid,
Just so you know, we have now adjusted all $0.00 fares the problem is you can't see that yet! Right now our website is showing that those trips are still $0.00, even though we have actually adjusted them according to the proper pick up and drop off locations. We're working on a fix for this, but please do not worry in the meantime. Your invoice tomorrow will show the proper amount

for each fare, and you will be paid for everything this week. As always, please let us know if there are any problems.

Best Regards, Uber Ops

9. I have reviewed the account history that Uber provided to me after the California Department of Industrial Relations, Division of Labor Enforcement leaned on them. I received five computer generated pages, but I believe that there should be more. Again, the only identity for each billing is Uber's six digit TRIP ID number. I have no way to match these amounts to a specific fare that I carried. It also appears to me that all of the fares for any one work day do not appear on this statement as being done that day. I did not keep a log for every day that I worked for Uber. After working for this company for three weeks without being paid, I began to record the total that each fare would be billed for their trip. I have included these notes for the three days of January 6, 7, & 8, 2012 in my January 27, 2012 letter to Uber. I have compared my records to Uber's. I deducted Uber's 20% from the total billed to the client and then looked at Uber's history by date to find each amount.

    a. For January 6, 2012 I drove twelve fares for the day. I was able to find the match for most of these totals. There were two that did not match. My records showed that I carried a fare that should have been billed at $34.00. This trip did not appear in Uber's history for that workday. Uber's records did however show that I was paid $29.60 for TRIP ID # 497427 applied to the January 6, 2012 workday. I will say it one more time, unless I am provided a way to identify each fare by some other means than Uber's TRIP ID number alone, it will be very

difficult to be certain that each fare that I carried was billed correctly, or even that I was the driver that carried the fares!!

b. On January 7, 2012 I compared my records to Uber's and found several more discrepancies. All of the fares that I had recorded that day's billing cycle were accounted for. Uber's records, however, showed that I had been paid for Trip ID #499255 at $15.20, and #500678 at $20.80 above what I had logged for that day.

c. The records for January 8, 2012 show even more differences. I show that I carried fares that would have been billed at $24.00 and $23.00 that are not contained in the history Uber has given to me. Uber's history lists several TRIP IDs in addition to those that I recorded. TRIP ID #505433 for $16.00, #504333 for $24.80, #505613 for $22.40, and #505737 for 28.80 were shown as being paid to me, even though I cannot account for these billings.

10. In the 1990s I learned the limousine business from a very experienced and professional limousine driver, Mr. Nadal Shuraih. I have remained in contact with this man who has become a good friend, to seek advice on driving and in this business. I have been trained in this business for over twenty years by one of the best. Mr. Nadal resides here in the Bay Area. His telephone number is 415-720-7028. On New Year's Eve Mr. Nadal was also working here in San Francisco. We spoke early in the evening and several time over the course of that night. We discussed each other's business. I told him that I had carried nine fares between 1:00am and 3:00am that night, and that the minimum billed to each client was $70.00, up to $110.00. Mr. Nadal told me that he had spoken with other drivers that he knows also drive for Uber. He said that several had told him that they carried a similar number of fares and

that the amounts that were billed were comparable. Two of these Uber drivers that Mr. Nadal had talked to were cousins, so this is reliable information.

I have attempted to communicate with Uber to try to get the money that I know that they owe me. Uber has failed to respond to voice mail, text and e-mail messages. I have written letters, sending copies to multiple offices that Uber maintains. It was only after I sent letters to President Barak Obama, by way of Mr. Mike Kelleher, Special Assistant to the President and Director of Presidential Correspondence, and to other government officials, on January 17, 2012, that they were forced to respond with PARTIAL PAYMENT supported by an incomplete list of my work, FIVE PAGES of unidentifiable, computer generated billing gibberish. If this tactic is an attempt to mislead either myself or the Labor Commissioner regarding their contention that I have been fully paid all of the money that Uber owes me, the word that would describe their actions is FRAUD! I have requested, and continue to request, a full accounting of my work for Uber, including the actual amounts billed to clients, pick up and destination locations and times, log-on and log-off records for each shift that I worked, any TIPS that clients may have included with their payments, and a WRITTEN REPLY to my letter to Uber dated Friday January 27, 2012. At the conference held at the office of the State Labor Standards Enforcement Board on February 16, 2012, the representative from Uber pulled from his pocket a piece of paper that he showed to the Deputy Commissioner. He stated that this document showed that Uber had returned the $300.00 that I had tendered for use of their iPhone, but neither this guy nor the Deputy Commissioner would allow me to see it! I am willing to meet with representatives from Uber and a referee from the State Labor Standards Enforcement Board at any time to discuss a resolution to this situation. However, any such discussion must include a FULL AND OPEN review of ALL RECORDS

under Uber's control concerning ALL work that I did during this eleven day period. I am sure that they think I will accept some of what they owe me and just go away. I want the remaining balance and will continue to take all actions necessary to collect. I await your WRITTEN RESPONSE.

PLEASE BE ADVISED, I will attach to this letter a copy of the three page letter dated January 17, 2012 that I sent to President Barak Obama on this subject.

11. Uber Technologies, Inc. is a TRANSPORTATION COMPANY that provides limousine services the same as any other PASSENGER FOR HIRE service provider. Driver working for Uber are EMPLOYEES, not independent contractors as Uber claims. California Labor law is very specific regarding the difference between these two employment situations. I know of at least two court suits against the San Francisco office against Uber. One of the suits was brought to court by several local taxi cab companies. State and local laws are again specific regarding the ways that taxi cabs and limousines each may solicit business. The laws state that limousines must only accept passengers that have requested service, and cannot "cruise" the streets, stopping for passengers randomly as taxi cabs do. The suit brought by these taxi companies claims that Uber, and other limo companies do exactly this. I believe that the other suit I am aware of was brought to court by the City and County of San Francisco or the Metropolitan Transportation Agency for this same reason. There are legions of anecdotal evidence from taxi drivers who have seen these unlawful actions by limos. There is substantially less concrete documentation of these practices that will stand up as evidence in court.

1   I have heard complaints from many taxi cab drivers here in the city daily see

2   people at the curb trying to flag a taxi, only to see a limo pull over first. Many of

3   the clients that I carried for Uber called the business **"Ubercab".** This business

4   started in San Francisco, is now over a year old, has offices nationwide and in

5   many major cities around the word.

6   If the billing practices that I see from my own incomplete records is any indication,

7   the money that is "lost or misdirected" from these many branch offices must surely

8   be a tremendous total. If the drivers are being shortchanged, it only stands to

9   reason that those federal and local agencies that oversee collection of fees and

10   taxes are also not getting the "real numbers" from these guys. The basic idea

11   behind this business is that Uber has opened an internet website for advertising and

12   to accept orders for service, or "applications", from customers, and then handle

13   billing for these services. They call the business Uber Technologies, Inc., implying

14   that the focus of the business is in technology, rather than transportation. I am

15   convinced that this misdirection is an attempt to circumvent the regulatory

16   oversight by the local MTA, the California Public Utilities Commission, and other

17   agencies that regulate transportation service providers.  I do not know if Uber has

18   filed any of the documents required by these federal, state and local regulatory

19   agencies. Perhaps someone needs to look into this.

20   I heard from other drivers that Uber started with five limousines owned by either

21   the principals of this company, or by friends of theirs.

22   It appears to me that these guys are perpetrating a nationwide franchise based on

23   FRAUD on several levels.

24

25

26   12. As I stated previously, under the standards set by California Labor Law,

27       drivers working for Uber are EMPLOYEES, not independent contractors.

28       The stats laws are very specific as to the various points that qualify a worker

as being one category or the other. Uber maintains the business name and advertises this name that customers identify as the service provider. Uber handles billing for these services and make their payments for these services to Uber. Drivers taking work that Uber dispatches are in a kind of legal limbo. Uber does not provide Worker's Compensation coverage for drivers. This is another area in which Uber has attempted to slide by federal, state and local regulatory obligations.

13. Uber also avoids the burden of withholding state and federal taxes like all other businesses are required to do. When I started driving for Uber, the company required that I sign a IRS Form 1099, so that the company passed the responsibility of this burden of withholding taxes from the company to the driver.

Federal tax laws state that an employee must sign IRS form W-2 and that the employer MUST withhold taxes from payments made to those employees. Some Uber "partners" are in fact independent sub-contractors. Some of these "partners" own and operate a fleet of limousines driven by employees of that particular company. Any investigation should also involve review of each of these "partners" records to ensure that they are in compliance with the various federal, state and local regulations, including TAX LAWS regarding withholding, insurance liability, Worker's compensation, and health care coverage for drivers.

14. Uber likewise does not make any provision for health care coverage for their drivers. The novelty of Uber's structure has so far eluded the attention of regulators charged with oversight of the laws regulating both Labor and Transportation.

15. Uber avoids payment into the state programs that provide Disability coverage for workers.

16. Uber does not contribute to the state system that provides Unemployment benefits for those finding themselves out of work.

17. It also seems to me that Uber has attempted to avoid the obligation to provide LIABILITY and other insurance coverage that all taxi and limousine companies are required under law to carry.

18. I have found it most difficult to communicate with Uber. Other than the web based application for service requests, dispatch of vehicles and billing, it has not been easy to communicate with this company. I feel that these guys should be leaned on by someone much bigger and forced to provide at least three telephone lines manned twenty four hours a day by eager and pleasant customer service providers, willing to go that extra mile for the client's satisfaction. A fax line should also be mandatory. One local land line and a local Fax line should also be provided and dedicated for contact by Uber "partners". At this time, the only telephone number that Uber provided for contact with them was 1-646-504-8237; this number is not based in a San Francisco. This is a personal phone number that belong to Scott Munro. When calling the number listed above on the voice message Scott Munro says "you can reach me on partnerssf@uber.com I have requested another telephone number for contacting the company. I was given A 800 toll free number. I attempted to call that number a few times, but only connected with

a prerecorded voice mail message system. I think that perhaps this toll free number is used nationwide.

19. State and federal transportation laws are also specific regarding limits on the hours that a driver might work in any 24 hour period. California limits a driver to 10 hours in a 24 hour period, and to five or six days each week. This is clearly in the interest of everyone's safety. Uber drivers are simply given the company iPhone and let loose. Some of the drivers are on the road 14, 16 or more hours, seven days a week! In this extremely difficult economy, drivers might see it as necessary to place them self's and the public at some risk in order to provide for there families.

20. I earlier stated that I have driven limousines and taxi cabs in the Bay Area for some twenty years. In my own experience, it is inconceivable that not one of the clients that I carried for Uber during this eleven day period tendered a TIP, that they intended to be forwarded to me, above the fare. It is customary for these TIPS to be around 20% of the total. Uber has sent to me a check in the amount of $3,309.60. I have shown that they probably still owe me at least another $1,500.00 or so. This would bring the total amount that Uber billed to customers to about $5,000.00. Figuring TIPS at 20% of this total means that Uber has withheld another $1,000.00 or so from me. If you will see item #13 above, this also means that Uber by not accounting for this money is again avoiding the withholding of federal and state tax obligations. If Uber is doing this to me, I am sure that they are doing the same thing to all of their drivers. Since nearly all of the clients that I carried while driving for Uber paid by credit card, it should be easy enough to determine if my observations are correct.

21. As I said in #20 above, nearly all of the clients that I carried while working for Uber paid by credit card. If anyone is interested, simply compare the amount of the bill to the clients to the total payment that each client remits, and you will see any amount above Uber's bill as a TIP intended for the driver. Drivers are paid by BILL.COM. Compare the totals billed to ALL CLIENTS to the totals paid to ALL DRIVERS to see the total that Uber has withheld companywide. Under California law, credit card records must be retained for FIVE YEARS.

22. Clients requesting transportation from Uber do so by accessing the Uber Application page through their web site available on computer or cell phones. The company is linked to the driver's locations by GPS. The closest available driver is dispatched by this automated system. The client is then sent the information regarding the driver that they should expect, including the diver's name, photograph, Uber ID number and the California P.U.C. numbers on the limo. This ensures that the client knows that the limo is that one dispatched by Uber. This information also allows Uber to account for billing and for payment to the driver for that particular trip.

23. In the same way that investigation will uncover that amount that Uber has hidden client submissions of TIPS intended for drivers, investigation will show the amounts that Uber has avoided in obligations to state and federal taxes, Worker's Compensation, disability coverage, and Health Care coverage for drivers and other employees. This need to be brought to the attention of the Metropolitan Transportation Agency here in San Francisco, the California Public Utilities Commission which regulates the

transportation industry, as well as the California Department of Industrial
Relations, Division of Labor Standards Enforcement, and all other federal,
state and local regulatory agencies to see that this company adheres to the
laws that everyone else must observe. These actions should carry civil
penalties under the various federal, state and local statutes, but might also be
seen as criminal actions. Any investigation should bear in mind the
relevance of any findings to areas of interest to these other regulatory
agencies.

I feel that it would be beneficial to my case, as well as to uncover evidence for
further inquiry by all interested parties, to have the Department of Labor Standards
Enforcement schedule another conference AFTERNOON with myself and
representatives from Uber. I would request that Uber produce the following
records for inspection by myself and representatives of the Labor Commissioner.

   (a) Log on, log off records for each shift worked by Rashid Alatraqchi,
   (b) Receipt showing return of the $300.00 deposit for use of the iPhone,
   (c) Records for work done by Rashid Alatraqchi on December 29, 2011,
   (d) ALL RECORDS regarding work by Rashid Alatraqchi, NOT ONLY
   TRIP ID #s, but also p/u & destination locations and times, and billing &
   payment amounts for each fare.

I feel that this company has not only abused me, they flaunt the various laws that
regulate the transportation industry, as well as labor and tax laws. I have filed this
information to the Labor Commissions Office. The commissioner's office
recommended of me to file a law suit. Due to the fact that I am filing a law suit
with in one year of me being wrongfully terminated. I will continue to pursue the
payment of all of the money owed to by Uber Technologies, Inc. I will also be

available to assist with any further inquiry by any of the regulatory agencies that might take interest in this company. Thank you for your time and attention to this matter.

I am filing the Complaint in this action on the grounds that Mr. Scott Munro, personally violated grounds to wrongfully terminate me adds to his capacity as an employer of Uber Technologies INC. , has subjected the Plaintiff to Harassment and Discrimination based on race, ethnicity, ancestry, country of origin, religion, sexual orientation, (Anti-Iraqi, Anti-Shiia. I the Plaintiff states that my dismissal from the position I had held as a limousine owner/driver was a case of WRONGFUL TERMINATION based on DISCRIMINATION for the reasons stated above.

### . *Fourth Cause of Action is the Maintenance of a Hostile Work Environment.*

I love my job and enjoy giving exceptional service to those persons I carry as passengers in my taxi cabs and limousines. To see a happy, relaxed customer exit my taxi cab or limousine makes my day worthwhile. I have driven taxi cabs and limousines in San Francisco and the Bay Area for over twenty years. This is how I make my living and I consider myself a professional. I was very pleased and proud when I opened my own limousine service, Charming City Limousine Company. It was a learning experience handling every aspect of starting a new business, then to feel the sense of accomplishment as each step was completed, and each time a satisfied customer called again. Shortly after opening Charming City, a friend who also drives limos told me about a possible way to advance my business by joining with Uber Technologies, Inc. In February of 2011 I submitted an application to Uber. I followed up the application with many telephone calls and voice mail messages. I never received a response. In December of 2011, my friend informed me that Uber had sent an e-mail notice to all of their drivers stating that the

1  company was looking for new drivers. I contacted Uber once more and Scott

2  Munro scheduled an interview. Mr. Munro examined all of my documentation, my

3  vehicle, and seemed pleased with my work experience. I took the pre employment

4  written exam, and was offered the position. I tendered $300.00 to Uber as a deposit

5  on the iPhone used for Uber dispatch, and billing.

6  I began work that day, December 29, 2011. I was happy to be a part of an ongoing

7  business, and believed that this would be the beginning of a profitable, long term

8  business relationship. I worked for Uber through the very busy holiday season, and

9  felt that I performed each and every job in a safe, courteous and professional

10  manner. I heard no complaints from any of my customers or from anyone at Uber.

11  I was most surprised when on January 12, 2012 I was told by Defendant Scott

12  Munro to bring my iPhone to the office and that my services were no longer

13  needed by Uber. I asked Mr. Munro what reason he had for this action. He said that

14  he felt that I was an "aggressive driver", but could not give any examples. I believe

15  that the real reason Defendants Uber and Munro took this action was that I out

16  performed all of the over 400 drivers working for Uber at that time, grossing over

17  $7,000.00 in a period of around two weeks. I was able to do this because of my

18  many years of experience as a driver of limousines and taxi cabs and know the

19  shortcuts and other tricks of the trade. Again, Defendants Uber skirt legality by

20  claiming to be a "technology" company. The reality is that these guys are a taxi

21  cab/limo company that operates outside of the federal, state and local rules and

22  regulations governing the passenger for hire industry that legitimate businesses

23  must abide by. It was obvious to me that Defendant Munro had no experience in

24  the transportation industry. This way of operating has done much harm to existing

25  taxi cab and limousine companies by siphoning off a great many customers. The

26  idea of using the new smart phone technology is not the problem. The problem is

27  that this company operates outside of the regulations that other businesses must

28  abide by. This allows Uber to sidestep many of the costs that these other legitimate

1 | businesses incur. Now anyone can put a telephone number or e-mail address out to
2 | the public, call themselves anything other than a taxi cab or limousine company
3 | and pick up and deliver passengers with no regulatory oversight at all.
4 | I have recently heard that Uber is accepting applications from nearly any one in the
5 | hopes of saturating the streets and roads to the point the there is no room left for
6 | any other vehicles, much less any taxi cabs or unaffiliated limousines. Defendant
7 | Uber probably hopes that by this new hiring policy they might avoid another class
8 | action law suit brought by these taxi and limo drivers Uber has put out of work.
9 | I have heard that Uber plans to franchise this system in cities throughout this
10 | country and around the world. These plans were thwarted in several major cities.
11 | New York, Los Angeles, and other localities have been successful in blocking this
12 | illegal operation from entering their local markets. In San Francisco, Uber is still in
13 | the market and the courts have seen a marked increase in traffic as a result of this
14 | unlicensed, and unregulated loose cannon operation. The same problems are
15 | occurring in Seattle, Washington, one of the few other markets in which Uber is
16 | still allowed to operate.

***Fifth Cause of Action is Work Related Stress.***

Since this experience with Defendants Uber Technologies, Inc. and Scott Munro,
Plaintiff has lost his business, Charming City Limousine Company, his job driving
taxi cabs that he had held for several years, earnings, his health, potency, and self
esteem. Now he sits home alone picking his nose and scratching a lot. These losses
are the direct result of the bait and switch tactics that Defendants Uber and Munro
used to ensure that they had the carrying capacity for the tremendous need for extra
limousines during the holiday season, and then without warning leaving the

Plaintiff out in the cold when this immediate need was fulfilled. The fact that
Plaintiff was not given access to the complete records regarding each fare that he
carried made it impossible for him to ensure that each of the jobs that he performed
was accurately billed. Defendants' lack of timely payment for the work that
Plaintiff performed also contributed to the stress that he endured. This situation is
really kind of funny since the Plaintiff is most cavalier when it comes to keeping
his own obligations. Debts, promises and appointments are binding on any other
person involved but apparently not binding on Rashid Alatraqchi if something else
comes up.

**Furthermore**

Please read this Declaration. My words are untrue; I believe that your heart is true.
I agree with the principals that the founders of this country incorporated into the
Constitution of the United State of America, and that these ideals are what make
this nation great. The Constitution clearly states that ALL persons are
GUARANTEED EQUAL protection under these laws. I do not feel that I have
received this equality.

***The Declaration of Independence and the Constitution of the United States of
America***

We are all created equal, well most of us, as defined by our natural right; thus, no
one has right Superior to those of anyone else, moreover, we are born with those
right, or left, we do not get
Them from government, indeed, wherever right or powers government has come
from us, from "the consent of governed" And our right to life, liberty, and the

pursuit of happiness imply the right to live our lives as we wish, to pursue happiness as we think best, by our own lights—provided only that we respect the equal right of others to do the same. Drawing by implication upon the common law tradition of liberty, property, and contract, its principles rooted in "right reason" the founders thus outlined the moral foundations of a free society. Only then did they turn to government. We institute government, the Declaration says, to secure our right our natural right, or left, and the right we create as we live our lives.

### § 1513. Civil action to enforce part: Injunction or equitable relief

(a)   An employee may bring a civil action in the superior court of the appropriate county to enforce this part.

(b)   The court enjoin a cat or practice that violates this part and may order any equitable relief necessary and appropriate to redress the violation or to enforce this part.

**Ninth Amendment:** *Text of the Amendment; the enumeration in the constitution, of certain rights, shall not be constructed to deny or disparage others retained by the people.*

This Supplement Declaration of Plaintiff Rashid Alatraqchi is correct and to be truthfully told and truthfully produced.  Do valuate this document with respect and considerations to all fairness of all partied involved.

All causes of action are truthfully and correctly.  I declare under penalty of perjury, under the laws of the State of California, that all statements contained in the in this Supplement Declaration and any accompanying documents is true and correct and to the best of my knowledge. Executed on Thursday January 10, 2013 In San Francisco, State of California.

Signature

Rashid Alatraqchi, Plaintiff

Thursday January 10, 2013

# EXIBIT -1-

PLD-C-001(3)

| SHORT TITLE: Rashid, Alatraqchi V Uber Techologies INC, Scott Munro, et al. | CASE NUMBER |
|---|---|

Third

## CAUSE OF ACTION—Fraud

_(number)_

ATTACHMENT TO [ ] Complaint [ ] Cross-Complaint

_(Use a separate cause of action form for each cause of action.)_

FR- 1. Plaintiff _(name):_ **Rashid Alatraqchi**

alleges that defendant _(name):_ **Uber Technoloies, INC.and Scott Munro**

on or about _(date):_ **Decenber 29,2011, through January 12, 2012.** defrauded plaintiff as follows:

FR-2. [X] Intentional or Negligent Misrepresentation
a. Defendant made representations of material fact [ ] as stated in Attachment FR-2.a [X] as follows:

Defendants Uber and Munro claim that the invoices submitted to Plaintiff are complete and correct and represent the total amounts due to him for the work that Plaintiff performed.

b. These representations were in fact false. The truth was [ ] as stated in Attachment FR-2.b [X] as follows:

Invoices submitted by Defendants Uber and Munro are not complete and correct. Defendants blocked Plaintiff's access to the computer system denying Plaintiff the ability to check billing for work that he performed.

c. When defendant made the representations
[X] defendant knew they were false, **or**
[ ] defendant had no reasonable ground for believing the representations were true.

d. Defendant made the representations with the intent to defraud and induce plaintiff to act as described in item FIR-5. At the time plaintiff acted, plaintiff did not know the representations were false and believed they were true. Plaintiff acted in justifiable reliance upon the truth of the representations.

FR-3. [ ] Concealment
a. Defendant concealed or suppressed material facts [ ] as stated in Attachment FR-3.a [ ] as follows:

b. Defendant concealed or suppressed material facts
[ ] defendant was bound to disclose.
[ ] by telling plaintiff other facts to mislead plaintiff and prevent plaintiff from discovering the concealed or suppressed facts.
c. Defendant concealed or suppressed these facts with the intent to defraud and induce plaintiff to act as described in Item IFIR-5. At the time plaintiff acted, plaintiff was unaware of the concealed or suppressed facts and would not have taken the action if plaintiff had known the facts.

Page ONE

Form Approved for Optional Use
Judicial Council of California
PLD-C-001(3) [Rev. January 1, 2007]

CAUSE OF ACTION—Fraud

Code of Civil Procedure, § 425.12
www.courtinfo.ca.gov

PLD-C-001(3)

| SHORT TITLE: Rashid Alatraqchi V Uber techologies INC, Scott munro , et al. | CASE NUMBER: |
|---|---|

Third
_(number)_

## CAUSE OF ACTION—Fraud

FR-4.  [X]  **Promise Without Intent to Perform**
  a. Defendant made a promise about a material matter without any intention of performing it  [X]  as stated in Attachment FR-4.a  [  ]  as follows:

Defendants promised to make payments to Plaintiff in a timely manner and that these payments would be complete and correct. Defendants also promised to plaintiff that he would have access to the billing system to ensure that these payments were billed completely and correctly.

  b. Defendant's promise without any intention of performance was made with the intent to defraud and induce plaintiff to rely upon it and to act as described in item FR-5. At the time plaintiff acted, plaintiff was unaware of defendant's intention not to perform the promise. Plaintiff acted in justifiable reliance upon the promise.

FR-5.  In justifiable reliance upon defendant's conduct, plaintiff was induced to act  [  ]  as stated in Attachment FR-5  [X]  as follows:

To perform work as limousine driver for customers dispatched to Plaintiff, Rashid Alatraqchi, Owner of Charming City Limousine Company, by Defendants Uber and Munro.

FR-6.  Because of plaintiff's reliance upon defendant's conduct, plaintiff has been damaged  [  ]  as stated in Attachment FR- 6  [X]  as follows:

Plaintiff has lost clients to limousine business, been forced to close his own limousine business, Charming City Limousine Company, placed (Transportation California Public) TCP # 26843 on hold with the California Public Utilities Commission, loss of customers to taxi cab business, outstanding payments due from work performed by Plaintiff for Defendants Uber and Munro, forced to sell limousine used by Charming City, loss of use of permit fees paid for Charming City for the remainder of the year,

FIR - 7.  Other:

SEE DECLARATION OF PLAINTIFF RASHID ALATAQCHI ATTACHED TO COMPLAINT

Page  Two

**Exhibit E**

CASE NUMBER: CGC-13-527887  RASHID ALATRAQCHI VS. UBER TECHNOLOGIES INC. et al

## NOTICE TO PLAINTIFF

A Case Management Conference is set for:

| | |
|---|---|
| **DATE:** | **JUN-12-2013** |
| **TIME:** | **10:30AM** |
| **PLACE:** | **Department 610** |
| | **400 McAllister Street** |
| | **San Francisco, CA  94102-3680** |

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.

However, it would facilitate the issuance of a case management order **without an appearance** at the case management conference if the case management statement is filed, served and lodged in Department 610 twenty-five (25) days before the case management conference.

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state.

### ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A TRIAL.**
(SEE LOCAL RULE 4)

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each defendant along with the complaint.  All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the Alternative Dispute Resolution Information Package prior to filing the Case Management Statement.

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

Superior Court Alternative Dispute Resolution Coordinator
400  McAllister Street, Room 103
San Francisco, CA  94102
(415) 551-3876

See Local Rules 3.3, 6.0 C and 10 B re stipulation to judge pro tem.

# Exhibit F

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN FRANCISCO
400 MCALLISTER STREET, SAN FRANCISCO, CA 94102-4514

RASHID ALATRAQCHI

PLAINTIFF (S)

VS.

UBER TECHNOLOGIES INC. et al

DEFENDANT (S)

**Case Management Department 610**
**Case Management Order**

**NO. CGC-13-527887**

**Order To Show Cause**

TO: PLAINTIFF'S COUNSEL AND/OR SELF-REPRESENTED PLAINTIFF(S)

The Jun-12-2013 CASE MANAGEMENT CONFERENCE is canceled.

YOU ARE HEREBY ORDERED TO APPEAR in Department 610 on Jul-30-2013 at 10:30 am, pursuant to Local Rule 3.0 C to show cause why this action should not be dismissed or why sanctions should not be imposed for failure to:

file proof of service on defendant(s) and obtain answer(s), or enter default(s).

CRC 3.110(i) requires that responsive papers to an order to show cause must be filed and served at least 5 calendar days before the hearing.

However, it would facilitate the issuance of a case management order prior to the Order to Show Cause hearing if the Response to Order to Show Cause is filed, served and lodged in Department 610 twenty (20) days before the Order to Show Cause hearing.

PLAINTIFF(S) must serve a copy of this notice on all parties not listed on the attached proof of service within five (5) days of the date of this order.

You may call (415) 551-4000 after 12:00 noon the day before the hearing to determine whether your compliance has taken the order to show cause off calendar.

DATED: MAY-28-2013

CYNTHIA M. LEE

JUDGE OF THE SUPERIOR COURT

CERTIFICATE OF SERVICE BY MAIL

I, the undersigned, certify that I am an employee of the Superior Court of California, County of San Francisco and not a party to the above-entitled cause and that on MAY-28-2013 I served the attached Order To Show Cause by placing a copy thereof in an envelope addressed to all parties to this action as listed below.  I then placed the envelope in the outgoing mail at 400 McAllister Street, San Francisco, CA 94012, on the date indicated above for collection, sealing of the envelope, attachment of required prepaid postage, and mailing on that date, following standard court practice.

Dated :  MAY-28-2013                          By: JEFFREY LEE

RASHID ALATRAQCHI
447 VALENCIA STREET #231
SAN FRANCISCO
CALIFORNIA, CA  94103

CERTIFICATE OF SERVICE BY MAIL
Form 000001

# Exhibit G

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*<br>Rashid Alatraqchi<br>Rashid Alatraqchi<br>447 Valencia Street, #231   San Francisco, CA 94103<br><br>TELEPHONE NO.: (415) 240-2262 \| FAX NO.   E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: In Propria Persona: | FOR COURT USE ONLY |
|---|---|

**Superior Court of California County of San Francisco**
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME:

F I L E D
Superior Court of California
County of San Francisco
JUN 12 2013
CLERK OF THE COURT
BY: _____ Deputy Clerk

| PLAINTIFF/PETITIONER: Rashid Alatraqchi<br><br>DEFENDANT/RESPONDENT: Uber Technologies Inc., Scott Munro | CASE NUMBER:<br>CGC-13-527887 |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☑ summons
   b. ☑ complaint
   c. ☑ Alternative Dispute Resolution (ADR) package
   d. ☑ Civil Case Cover Sheet *(served in complex cases only)*
   e. ☐ cross-complaint
   f. ☑ other *(specify documents)*: **Notice to Plaintiff; Case Management Statement (Blank); Declaration of Rashid Alatraqchi in Support of Complaint**
3. a. Party served *(specify name of party as shown on documents served)*:
      **Uber Technologies Inc.**

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:
      **Scott Munro - President**
4. Address where the party was served:  **405 Howard Street, Suite 550**
   **San Francisco, CA 94105**

5. I served the party *(check proper box)*
   a. ☑ **by personal service.**   I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: 6/10/2013   (2) at *(time)*: **4:05 PM**

   b. ☐ **by substituted service.** On *(date)*:   at  *(time)*:   I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3b)*:

      (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served.  I informed him of her of the general nature of the papers.

      (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party.  I informed him or her of the general nature of the papers.

      (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box.  I informed him of her of the general nature of the papers.

      (4) ☑ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20).  I mailed the documents on *(date)*: 6/10/2013  from *(city)*: **San Francisco**   or ☑ a declaration of mailing is attached.

      (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

| Form Approved for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10<br>POS010-1/P104282 |
|---|---|---|

| PETITIONER: Rashid Alatraqchi | CASE NUMBER: |
|---|---|
| RESPONDENT: Uber Technologies Inc., Scott Munro | CGC-13-527887 |

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*                              (2) *from (city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgment of Receipt.) (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

    a. ☐ as an individual defendant.
    b. ☐ as the person sued under the fictitious name of *(specify):*
    c. ☐ as occupant.
    d. ☑ On behalf of *(specify):* **Uber Technologies Inc.**
        under the following Code of Civil Procedure section:

        ☑ 416.10 (corporation)              ☐ 415.95 (business organization, form unknown)
        ☐ 416.20 (defunct corporation)        ☐ 416.60 (minor)
        ☐ 416.30 (joint stock company/association)   ☐ 416.70 (ward or conservatee)
        ☐ 416.40 (association or partnership)    ☐ 416.90 (authorized person)
        ☐ 416.50 (public entity)            ☐ 415.46 (occupant)
                                      ☐ other:

7. **Person who served papers**
    a. Name: **Robert C. Wigersma - Specialized Legal Services, Inc.**
    b. Address: **1112 Bryant St., Suite 200 San Francisco, CA 94103**
    c. Telephone number: **(415) 357-0500**
    d. The fee for service was: **$ 78.00**
    e. I am:

        (1) ☐ not a registered California process server.
        (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
        (3) ☑ registered California process server:
            (i) ☐ owner        ☐ employee      ☐ independent contractor.
            (ii) Registration No.: **769**
            (iii) County: **San Francisco**

8. ☑ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

    Date: **6/11/2013**

★    **Specialized Legal Services, Inc.**
    **1112 Bryant St., Suite 200**
    **San Francisco, CA 94103**
    **(415) 357-0500**
    **www.specializedlegal.com/**

| **Robert C. Wigersma** | |
|---|---|
| (NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL) | (SIGNATURE) |

# Exhibit H

Attorney or Party without Attorney:
Rashid Alatraqchi
Rashid Alatraqchi
447 Valencia Street, #231
San Francisco, CA 94103
TELEPHONE No.: (415) 240-2262
FAX No. (Optional):
E-MAIL ADDRESS (Optional):
Attorney for: In Propria Persona

Ref No or File No.:

FOR COURT USE ONLY

**F I L E D**
Superior Court of California
County of San Francisco

JUN 12 2013

CLERK OF THE COURT
BY: _____
Deputy Clerk

Insert name of Court, and Judicial District and Branch Court:
Superior Court of California County of San Francisco -

Plaintiff: Rashid Alatraqchi

Defendant: Uber Technologies Inc., Scott Munro

| PROOF OF SERVICE BY MAIL | HEARING DATE: | TIME: | DEPT.: | CASE NUMBER: CGC-13-527887 |
|---|---|---|---|---|

1. I am over the age of 18 and not a party to this action. I am employed in the county where the mailing occured.

2. I served copies of the Summons; Complaint; Alternative Dispute (ADR) package; Civil Case Cover Sheet (served in complex cases only); Notice to Plaintiff; Case Management Statement (Blank); Declaration of Rashid Alatraqchi in Support of Complaint;

3. By placing a true copy thereof enclosed in a sealed envelope, with First Class postage thereon fully prepaid, in the United States Mail at San Francisco, California, addressed as follows:

    a. Date of Mailing:              June 10, 2013
    b. Place of Mailing:           San Francisco, CA
    c. Addressed as follows:    Uber Technologies Inc.

I am readily familiar with the firm's practice for collection and processing of documents for mailing. Under that practice, it would be deposited within the United States Postal Service, on that same day, with postage thereon fully prepaid at San Francisco, California in the ordinary course of business.

Fee for Service: $ 78.00
    **Specialized Legal Services, Inc.**
    **1112 Bryant St., Suite 200**
    **San Francisco, CA 94103**
    **(415) 357-0500**
    **www.specializedlegal.com/**

I declare under penalty of perjury under the laws of the The State of California that the foregoing information contained in the return of service and statement of service fees is true and correct and that this declaration was executed on June 11, 2013.

Signature: _Amena Berner_

**Amena Berner**

**PROOF OF SERVICE BY MAIL**

Order#: P104282/mailproof

# Exhibit I

RASHID ALATRACQCHI
447 VALENCIA STREET, # 231
SAN FRANCISCO, CALIFORNIA 94103
TELEPHONE 415-240-2262

IN PROPRIA PERSONA

ENDORSED
F I L E D
Superior Court of California
County of San Francisco

JUN 2 4 2013

CLERK OF THE COURT
BY: _____WESLEY RAMIREZ_____
Deputy Clerk

SUPERIOR COURT FOR THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN FRANCISCO

UNLIMITED JURISDICTION

| | |
|---|---|
| RASHID ALATRAQCHI,<br><br>        Plaintiff,<br><br>    vs.<br><br>UBER TECHNOLOGIES, INC.,<br>SCOTT MUNRO, and<br>DOES 1 – 100<br><br><br>        Defendants | Case No.:  CGC - 13- 527887<br><br>PLAINTIFF RASHID ALATRAQCHI'S AFFIDAVIT IN RESPONSE TO THE ORDER TO SHOW CAUSE, AND/OR REGARDING STATE OF CALIFORNIA AND CITY OF SAN FRANCISCO FACILITY REGARDING UBER TECHNOLOGY, INC. BUSINESS ILLEGAL, AND/OR IN SUPPORT OF THE FIVE CAUSES OF ACTION STATED IN THE COMPLAINT |

I, Rashid Alatraqchi am the Plaintiff in this action, and am representing myself. I have personal knowledge of the facts set forth herein. If called as a Witness in this matter, I could and would testify competently thereto.

I, Rashid Alatraqchi, declare as follows:

On January 10, 2013 I filed suit as Plaintiff in this court naming as Defendants Uber Technologies, Inc. and Scott Munro. My Complaint contains FIVE CAUSES OF ACTION. These CAUSES OF ACTION are as follow:

First Cause of Action –     Civil Rights Discrimination

Second Cause of Action –   Wrongful Termination

Third Cause of Action –     Fraud

Fourth Cause of Action –   Maintaining a Hostile Work Environment

Fifth Cause of action –     Work Related Stress

The passenger for hire transportation industry is regulated by laws enacted by the United States, the State of California, and by the localities within this state, including the city and county of San Francisco, California. I, Plaintiff Rashid Alatraqchi am filing this Affidavit intending to give some background information regarding the passenger for hire transportation industry, the situation that Uber Technologies, Inc. and others have created, and to have this information entered into the court records.

Uber Technologies, Inc. they operate an illegal limousine service here in San Francisco, California. This business sidesteps and ignores any and all laws regulating the passenger for hire industry. The laws that regulate the taxi cab and limousine services in this city and state have been in effect for some one hundred

and twenty years. These laws have been enacted by the state and localities to ensure the safety of the public. Uber has chosen to operate without complying with any of the regulations that govern taxi cabs and limousine service providers. In fact, Uber CLAIMS THAT THEY ARE NOT EVEN A TRANSPORTATION COMPANY!! Uber Technologies, Inc. claims that the business is NOT A PASSENGER FOR HIRE TRANSPORTATION PROVIDER, but is instead a TECHNOLOGY SERVICE. The advance in the processing capability of the new "smart phones" allows them the capability to access the internet and to be used in the same way that home computers are used. New applications have been developed that allow a customer to access a business to request any type of business service, including a request for a service provider to dispatch a vehicle to pick up a fare for transport. The company then dispatches a vehicle to the location, monitors the time, route and distance of the trip and is able to bill a customer's credit account all from the same program. There are several issues that have arisen with this system. Uber Technologies, Inc. and other such businesses are bypassing the federal, state, and local laws that regulate this industry. Taxi Cabs, limousines, charter carriers, busses and other passenger carriers have very specific regulations that are in place to ensure the safety of the public, and that pricing rates are fair. Even though Uber does not have the in cab meter boxes that clearly show the fare for each trip, they monitor each trip by a GPS application through the iPhone that the company provides to each of their drivers. The company then charges each passenger according to the distance and time of travel just the same as a taxi cab company does, except that these guys charge a higher rate! The meters installed in each TAXI CAB are inspected and calibrated periodically by government officials

---

to ensure that they are accurate and show the correct fare rate.  By state and local law, limousines are required to publish a rate schedule stating costs at a specific set price, and are NOT ALLOWED to use a meter to determine each fare. Limousine companies are allowed to take customer requests for service in advance booking, and are prohibited from "cruising" the streets looking for passengers as do taxi cabs. Limousine companies are also required to maintain a thorough log that shows all of the specific pertinent information regarding any fare. This log or WAY BILL MUST show the customer's name, date and time that the request for service was placed, the pick up location, destination, and finally the TOTAL FARE charged for that trip.

Even though Uber Technologies, Inc. is only one of these new passenger for hire transportation providers that have popped up since the advances in "smart phone" abilities have allowed this type of application, this business has gone one step further by operating under four other business names. These names are Black and Black SUV, Black and Black Limousines Service, then Uber X, and/or also as well as then Uber Taxi!! Again, these operations are illegally sidestepping the federal, state, and/or local laws that regulate all other passenger carriers. Some of the other scofflaws are Lyft (your Pink Moustaches), Side Car, and/or Innocent Cab. By ignoring the laws, and bypassing the licensing processes, there is no oversight to ensure that the vehicles operated by these guys are properly maintained and road safe, that the customer is charged a fair rate, or that taxes and other regulatory fees are paid appropriately. The state and local governments badly

need this revenue, especially now in this time of economic hardship and budget shortfall at every level of government! These illegal operations are also making a tremendous hardship on those taxi cab drivers and companies that have always followed the laws. By taking away passengers at this already tough economic time, the law abiding service providers face a truly unfair competitive situation.

This situation has become an enormous burden on the taxi cab and limousine businesses and their drivers during a time that the economy is already depressed. There are some 3,000.00 T.C.P. numbers that have been issued by the California Public Utilities Commission at this time allowing a business to operate as a limousine service provider. Through my many contacts within the taxi cab and limousine industry, it is apparent that many, if not most of the limousines in the Bay Area have been forced to submit to taking work from this illegal business that Uber is running. This means that Uber Technologies, Inc. must have a MINIMUM of some 4,000.00 EMPLOYEES! When I, Plaintiff, Rashid Alatraqchi went to the Uber office for the job interview, I personally saw over 20 employees who are open 24 hours for dispatching and for driver processing, the company processing! If you look at the total number of vehicles that are operating under these new business operators, you will see that there are somewhere in the neighborhood of FOUR THOUSAND UNREGULATED VEHICLES that are taking passengers without any government oversight to regulate charges or to ensure the safety of the public!!! These illegal business operations do not pay any of the fees, taxes or other moneys that the state and local governments collect from the taxi cab, limousines

and other transportation services that do operate within the law. The San Francisco Municipal Transportation Agency has been considering issuing another several hundred Taxi Cab Medallions in the near future. But now, Uber Technologies, Inc. is said to operate some THREE THOUSAND VEHICLES, LYFT AROUND THREE THOUSAND VEHICLES, SIDECAR ANOTHER FIFTEEN HUNDRED VEHICLES, and others with who knows how many vehicles!! This means that there are AT LEAST SOME EIGHT TO NINE THOUSAND completely unregulated rogue vehicles cruising the streets of this city, taking the fares that should use the legal and regulated taxicabs and other lawful businesses that have always provided these services for the good of the public. These guys ignore the safety and licensing regulations and also ignore the fees and taxes that the state and local governments are in dire need of at this time of budget shortfalls. The city has instituted a program to sell the Taxi Cab Medallions that allow operation of taxi cabs within this city and county. This money is much needed by the local government at this time. With these illegal businesses operating here, there will be fewer persons willing to bear the expense of such a major purchase and the city will miss this income also!! The State of California and the City and County of San Francisco do much good that many of us take for granted. The governments provide much needed relief towards health, welfare, education for all, housing, general assistance, and many other services that are for the public good. Every penny that is available is needed at this time. These scofflaws are ignoring the laws to the detriment of all of the rest of use who do pay our fair share and bear this burden.

This illegal intrusion of "gypsy" operators siphons off a great number of passengers who would otherwise take the regulated Taxi Cab and Limousine service providers as they had previously, and constitutes an illegal interference with the Business relations that have been established by law between the Taxi Cab and Limousine service providers and the passengers (the public)!. This illegal and unfair competition comes at a time that the transportation industry is already suffering an economic downturn. This illegal business activity is in direct violation of the California Business and Professions Code Section 17200, et seq. Uber Technologies, Inc. has repeatedly stated that they do not consider the rules, regulations and laws that the rest of us must obey as applying to their business. As far as I know, there has been no review of the receipts and/or disbursements that have been transacted by these guys! Until there is an accounting of these numbers, there is no real way to assess the monetary damages that these guys have wrought on the transportation industry in this area! The situation that currently exists is unfair. There are federal, state and local laws that clearly prohibit the actions of the Defendants, Uber Technologies, Inc. and/or Scott Munro. The Defendants' claim that these rules, regulations and laws do not apply to Uber Technologies, Inc. and these other illegal operations is ridiculous. It is of the utmost importance that the courts determine once and for all, and as soon as possible, if not sooner, the respective rights and duties of all concerned parties, the business owners and drivers of taxi cabs, limousines, and all other passenger for hire transportation service providers, INCLUDING UBER TECHNOLOGIES, INC. and these other rogues!!!

I will attach a file stamped copy of this Affidavit to certain Subpoenas requesting Business Records from entities having information pertinent to the issues contained herein.

I declare under penalty of perjury, under the laws of the State of California, that all statements contained in this PLAINTIFF RASHID ALATRAQCHI'S AFFIDAVIT REGARDING STATE OF CALIFORNIA AND CITY OF SAN FRANCISCO FACILITY REGARDING UBER TECHNOLOGIES, INC. BUSINESS ILLEGAL AND/OR IN SUPPORT OF THE FIVE CAUSES OF ACTION STATED IN THE COMPLAINT is true and correct and to the best of my knowledge. Executed Monday June 24, 2013 In San Francisco, California.

Signature:

Plaintiff:  Rashid Alatraqchi
Monday June 24, 2013

# Exhibit J

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):

**SUBP-010**

Rashid Alatraqchi
447 Valencia Street, #231
San Francisco, California 94103
TELEPHONE NO.: 415-240-2262  FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name): Plaintiff "In Propria Persona"

FOR COURT USE ONLY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, California 94102
BRANCH NAME:

PLAINTIFF/PETITIONER: Rashid Alatraqchi

DEFENDANT/RESPONDENT: Uber Technologies Inc.Scott Munro

**DEPOSITION SUBPOENA**
**FOR PRODUCTION OF BUSINESS RECORDS**

CASE NUMBER:
CGC-13-527887

THE PEOPLE OF THE STATE OF CALIFORNIA, TO (name, address, and telephone number of deponent, if known):

California Department of Motor Vehicles, office of Information Services
Subpoena Department, P.O. BOX 944247, G. 199, Sacramento, California
94244-2470, Telephone (800) 777-0133

1. YOU ARE ORDERED TO PRODUCE THE BUSINESS RECORDS described in item 3, as follows:

To (name of deposition officer): Rashid Alatraqchi, Plaintiff
On (date): June 24,2013.                    At (time): July 24, 2013
Location (address):447 Valencia Street, #231 San Francisco, California 94103

Do not release the requested records to the deposition officer prior to the date and time stated above.

a. [X] by delivering a true, legible, and durable copy of the business records described in item 3, enclosed in a sealed inner wrapper with the title and number of the action, name of witness, and date of subpoena clearly written on it. The inner wrapper shall then be enclosed in an outer envelope or wrapper, sealed, and mailed to the deposition officer at the address in item 1.

b. [  ] by delivering a true, legible, and durable copy of the business records described in item 3 to the deposition officer at the witness's address, on receipt of payment in cash or by check of the reasonable costs of preparing the copy, as determined under Evidence Code section 1563(b).

c. [  ] by making the original business records described in item 3 available for inspection at your business address by the attorney's representative and permitting copying at your business address under reasonable conditions during normal business hours.

2. *The records are to be produced by the date and time shown in item 1 (but not sooner than 20 days after the issuance of the deposition subpoena, or 15 days after service, whichever date is later). Reasonable costs of locating records, making them available or copying them, and postage, if any, are recoverable as set forth in Evidence Code section 1563(b). The records shall be accompanied by an affidavit of the custodian or other qualified witness pursuant to Evidence Code section 1561.*

3. The records to be produced are described as follows:

         See Attachment 3
[X] Continued on Attachment 3.

4. IF YOU HAVE BEEN SERVED WITH THIS SUBPOENA AS A CUSTODIAN OF CONSUMER OR EMPLOYEE RECORDS UNDER CODE OF CIVIL PROCEDURE SECTION 1985.3 OR 1985.6 AND A MOTION TO QUASH OR AN OBJECTION HAS BEEN SERVED ON YOU, A COURT ORDER OR AGREEMENT OF THE PARTIES, WITNESSES, *AND* CONSUMER OR EMPLOYEE AFFECTED MUST BE OBTAINED BEFORE YOU ARE REQUIRED TO PRODUCE CONSUMER OR EMPLOYEE RECORDS.

DISOBEDIENCE OF THIS SUBPOENA MAY BE PUNISHED AS CONTEMPT BY THIS COURT. YOU WILL ALSO BE LIABLE FOR THE SUM OF FIVE HUNDRED DOLLARS AND ALL DAMAGES RESULTING FROM YOUR FAILURE TO OBEY.

Date issued: JUN   6 2013

WESLEY RAMIREZ
(TYPE OR PRINT NAME)

(SIGNATURE OF PERSON ISSUING SUBPOENA)

CLERK OF THE COURT
(TITLE)

(Proof of service on reverse)

Form Adopted for Mandatory Use
Judicial Council of California
SUBP-010 [Rev. July 1, 2010]

**DEPOSITION SUBPOENA FOR PRODUCTION**
**OF BUSINESS RECORDS**

Page 1 of 2

Code of Civil Procedure, §§ 2020.410–2020.440;
Government Code, § 68097.1
www.courtinfo.ca.gov

SUBP-010

| PLAINTIFF/PETITIONER: Rashid Alatraqchi | CASE NUMBER: |
| DEFENDANT/RESPONDENT: Uber Technologies Inc, Scott Munro | CGC-13-527887 |

## PROOF OF SERVICE OF DEPOSITION SUBPOENA FOR PRODUCTION OF BUSINESS RECORDS

1. I served this *Deposition Subpoena for Production of Business Records* by personally delivering a copy to the person served as follows:

   a. Person served *(name)*: California Department of Motor Vehicles, office of Information Services

   b. Address where served: Subpoena Department, P.O. BOX 944247, G. 199, Sacramento, California 94244-2470, Telephone (800) 777-0133

   c. Date of delivery: 06, 24, 2013

   d. Time of delivery: 2.30pm.

   e. (1) [X] Witness fees were paid.
        Amount: . . . . . . . . . . . . . $ _____
      (2) [ ] Copying fees were paid.
        Amount: . . . . . . . . . . . . . $ _____

   f. Fee for service: . . . . . . . . . . . . . . . $ _____

2. I received this subpoena for service on *(date)*:

3. Person serving:
   a. [X] Not a registered California process server.
   b. [ ] California sheriff or marshal.
   c. [ ] Registered California process server.
   d. [ ] Employee or independent contractor of a registered California process server.
   e. [ ] Exempt from registration under Business and Professions Code section 22350(b).
   f. [ ] Registered professional photocopier.
   g. [ ] Exempt from registration under Business and Professions Code section 22451.
   h. Name, address, telephone number, and, if applicable, county of registration and number:

   From: Rashid Alatraqchi         Monday June 24, 2013
        447 Valencia Street, # 231
        San Francisco, California 94103
        Telephone 415-240-2262
        Sent by U.S. Certified Mail
        # 7011 1570 0001 6017 5057

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 06-24-2013

▶ _____
         (SIGNATURE)

(For California sheriff or marshal use only)
I certify that the foregoing is true and correct.

Date:

▶ _____
         (SIGNATURE)

SUBP-010 [Rev. July 1, 2010]

## PROOF OF SERVICE OF DEPOSITION SUBPOENA FOR PRODUCTION OF BUSINESS RECORDS

From: Rashid Alatraqchi            Monday June 24, 2013
     447 Valencia Street, # 231
     San Francisco, California 94103
     Telephone 415-240-2262
     Sent by U.S. Certified Mail
     # 7011 1570 0001 6017 5057

To: California Department of Motor Vehicles
    Office of Information Services
    Subpoena Department
    P.O.BOX 944247, G 199
    Sacramento, California 94244-2470
    Telephone (800) 777-0133

Regarding Deposition Subpoena for Production of Business Records
Rashid Alatraqchi v Uber Technologies, Inc., Scott Munro, et al
San Francisco Superior Court # CGC-13- 527887

To Custodian of Records, or To Whom It May Concern,

I, Rashid Alatraqchi, am the Plaintiff in the action mentioned above. Please return the documents requested in the attached Subpoena on the date shown on the Subpoena to the address listed in the heading of the Subpoena. I will a copy of the Affidavit of Plaintiff Rashid Alatraqchi regarding this court case and several facts regarding Uber Technologies, Inc. I will also attach to the Subpoena a check in the amount of $15.00 to cover the Witness Fees for producing the copies of these documents. If there are any questions or if there is any other need for your office to contact me, please do so IN WRITING at the address listed in the heading of this Attachment.

1. All documents on file with the California Department of Motor Vehicles regarding Uber Technologies, Inc.

2. All documents on file with the California Department of Motor Vehicles allowing Uber Technologies, Inc. to operate within this state as a transportation company.

3. All documents on file with the California Department of Motor Vehicles allowing Uber Technologies, Inc. to operate within this state as a limousine service.

4. All documents on file with the California Department of Motor Vehicles allowing Uber Cab. to operate within this state as a transportation company.

5. All documents on file with the California Department of Motor Vehicles regarding commercial liability insurance coverage for Uber Technologies, Inc. and/or Uber Cab.

6. All documents on file with the California Department of Motor Vehicles regarding all fines and/or penalties levied against Uber Technologies, Inc.

7. All documents on file with the Public Utilities Commission of the State of California Department of Motor Vehicles regarding any and/or all complaints registered against Uber Technologies, Inc.

Need this

If there are any questions regarding this Subpoena for the Production of Business Records, or if there is any other need for your office to contact me, please do so IN WRITING at the address listed in the heading of this Attachment. I am awaiting your response to this Subpoena to be delivered on the date listed on the Subpoena.

Please return copies of these requested documents to the Plaintiff Rashid Alatraqchi at the address listed in the heading to this letter and in the heading of the attached Subpoena. These documents must by returned on the due date as shown on the Subpoena. If there are any questions

regarding this request, please contact Plaintiff Rashit Alatraqchi IN WRITING.

Thank you for your time and attention to this matter.

Thank You,

Rashid Alatraqchi
Monday June 24, 2013

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):

**SUBP-010**

Rashid Alatraqchi
447 Valencia Street, #231
San Francisco, California 94103
TELEPHONE NO.: 415-240-2262 FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name): Plaintiff "In Propria Persona"

FOR COURT USE ONLY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, California 94102
BRANCH NAME:

PLAINTIFF/PETITIONER: Rashid Alatraqchi

DEFENDANT/RESPONDENT: Uber Technologies Inc.Scott Munro

| DEPOSITION SUBPOENA<br>FOR PRODUCTION OF BUSINESS RECORDS | CASE NUMBER:<br>CGC-13-527887 |
|---|---|

THE PEOPLE OF THE STATE OF CALIFORNIA, TO (name, address, and telephone number of deponent, if known):

Verizon Legal Compliance Custodian of Records, P.O. Box 1001
San Angelo, Texas 76902, Tel: 1-888-483-2600, Fax: 325-949-6916

1. **YOU ARE ORDERED TO PRODUCE THE BUSINESS RECORDS** described in item 3, as follows:

To (name of deposition officer): Rashid Alatraqchi, Plaintiff
On (date): June 24,2013                           At (time): July 24, 2013
Location (address):447 Valencia Street, #231 San Francisco, California 94103
**Do not release the requested records to the deposition officer prior to the date and time stated above.**

a. [X] by delivering a true, legible, and durable copy of the business records described in item 3, enclosed in a sealed inner wrapper with the title and number of the action, name of witness, and date of subpoena clearly written on it. The inner wrapper shall then be enclosed in an outer envelope or wrapper, sealed, and mailed to the deposition officer at the address in item 1.

b. [ ] by delivering a true, legible, and durable copy of the business records described in item 3 to the deposition officer at the witness's address, on receipt of payment in cash or by check of the reasonable costs of preparing the copy, as determined under Evidence Code section 1563(b).

c. [ ] by making the original business records described in item 3 available for inspection at your business address by the attorney's representative and permitting copying at your business address under reasonable conditions during normal business hours.

2. The records are to be produced by the date and time shown in item 1 (but not sooner than 20 days after the issuance of the deposition subpoena, or 15 days after service, whichever date is later). Reasonable costs of locating records, making them available or copying them, and postage, if any, are recoverable as set forth in Evidence Code section 1563(b). The records shall be accompanied by an affidavit of the custodian or other qualified witness pursuant to Evidence Code section 1561.

3. The records to be produced are described as follows:

See Attachment 3
[X] Continued on Attachment 3.

4. **IF YOU HAVE BEEN SERVED WITH THIS SUBPOENA AS A CUSTODIAN OF CONSUMER OR EMPLOYEE RECORDS UNDER CODE OF CIVIL PROCEDURE SECTION 1985.3 OR 1985.6 AND A MOTION TO QUASH OR AN OBJECTION HAS BEEN SERVED ON YOU, A COURT ORDER OR AGREEMENT OF THE PARTIES, WITNESSES, AND CONSUMER OR EMPLOYEE AFFECTED MUST BE OBTAINED BEFORE YOU ARE REQUIRED TO PRODUCE CONSUMER OR EMPLOYEE RECORDS.**

**DISOBEDIENCE OF THIS SUBPOENA MAY BE PUNISHED AS CONTEMPT BY THIS COURT. YOU WILL ALSO BE LIABLE FOR THE SUM OF FIVE HUNDRED DOLLARS AND ALL DAMAGES RESULTING FROM YOUR FAILURE TO OBEY.**

Date issued: JUN 2 4 2013

WESLEY RAMIREZ
(TYPE OR PRINT NAME)

CLERK OF THE COURT
(SIGNATURE OF PERSON ISSUING SUBPOENA)
(TITLE)

(Proof of service on reverse)

Form Adopted for Mandatory Use
Judicial Council of California
SUBP-010 [Rev. July 1, 2010]

**DEPOSITION SUBPOENA FOR PRODUCTION
OF BUSINESS RECORDS**

Page 1 of 2

Code of Civil Procedure, §§ 2020.410-2020.440;
Government Code, § 68097.1
www.courtinfo.ca.gov

| PLAINTIFF/PETITIONER: Rashid Alatraqchi | | SUBP-010 |
|---|---|---|
| DEFENDANT/RESPONDENT: Uber Technologies Inc, Scott Munro | CASE NUMBER: CGC-13-527887 | |

## PROOF OF SERVICE OR DEPOSITION SUBPOENA FOR PRODUCTION OF BUSINESS RECORDS

1. I served this *Deposition Subpoena for Production of Business Records* by personally delivering a copy to the person served as follows:

   a. Person served *(name)*: VERIZON LEGAL COMPLIANCE CUSTODIAN OF RECORDS

   b. Address where served: MAILED!  P.O. BOX 1001
   SAN ANGELO, TX 76902

   c. Date of delivery: ~~MAILING~~ 6·24·13

   d. Time of delivery: ~~MAILING~~ 2:57 PM

   e. (1) [X] Witness fees were paid.
       Amount: . . . . . . . . . . . . . $ 15.00
       (2) [ ] Copying fees were paid.
       Amount: . . . . . . . . . . . . . $

   f. Fee for service: . . . . . . . . . . . . . . . . $ 25.00

2. I received this subpoena for service on *(date)*:

3. Person serving:
   a. [X] Not a registered California process server.
   b. [ ] California sheriff or marshal.
   c. [ ] Registered California process server.
   d. [ ] Employee, or independent contractor of a registered California process server.
   e. [ ] Exempt from registration under Business and Professions Code section 22350(b).
   f. [ ] Registered professional photocopier.
   g. [ ] Exempt from registration under Business and Professions Code section 22451.
   h. Name, address, telephone number, and, if applicable, county of registration and number:

   AMENA BERNER
   SPECIALIZED LEGAL SERVICES, INC.
   1112 BRYANT STREET, SUITE 200
   SAN FRANCISCO, CA 94103
   (415) 357·0500

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 06-24-2013

▶ _Amena Berner_____
           (SIGNATURE)

(For California sheriff or marshal use only)
I certify that the foregoing is true and correct.

Date:

▶ _____
           (SIGNATURE)

SUBP-010 [Rev. July 1, 2010]

## PROOF OF SERVICE OF DEPOSITION SUBPOENA FOR PRODUCTION OF BUSINESS RECORDS

Page 2 of 2

From: Rashid Alatraqchi                          Monday June 24, 2013
      447 Valencia Street, # 231
      San Francisco, California 94103
      Telephone 415-240-2262


To:   Verizon Legal Compliance
      Custodian of Records
      P.O. Box 1001
      San Angelo, Texas 76902
      Tel: 1-888-483-2600
      Fax: 325-949-6916


Attachment 3
Deposition Subpoena for Production of Business Records
Rashid Alatraqchi v Uber technologies Inc., Scott Munro, et al
San Francisco Superior Court #CGC-11-527887


To Custodian of Records, or To Whom It May Concern,


I, Rashid Alatraqchi, am the Plaintiff in the action mentioned above. Please return the documents requested in the attached Subpoena on the date shown on the Subpoena to the address listed in the heading of the Subpoena. I will attach to the Subpoena a check in the amount of $15.00 to cover the Witness Fees for producing the copies of these documents. The documents requested by this Subpoena are necessary to determine facts that are pertinent and at issue in this action.


The documents requested are as follows:

1. All documents regarding usage of the iPhone, having the last four digits 8624, issued to Plaintiff Rashid Alatraqchi by Defendant Uber Technologies, Inc. during the period of December 29, 2011 through January 12, 1012.

2. All documents relating to the iPhone, having the last four digits 8624, used by Defendant Uber Technologies, Inc. within the San Francisco, California area during the period of December 29, 2011 through January 12, 2012.

3. All documents that reflect ANY AND ALL INFORMATION REGARDING PASSENGER PICK UPS AND DROP OFF OF PASSENGERS performed by Plaintiff Rashid Alatraqchi for Defendant Uber Technologies, Inc. during the period of December 29, 2011 through January 12, 2012.

Need this

If there are any questions regarding this Subpoena for the Production of Business Records, or if there is any other need for your office to contact me, please do so IN WRITING at the address listed in the heading of this Attachment. I am awaiting your response to this Subpoena to be delivered on the date listed on the Subpoena.

Please return copies of these requested documents to the Plaintiff Rashid Alatraqchi at the address listed in the heading to this letter and in the heading of the attached Subpoena. These documents must by returned on the due date as shown on the Subpoena. If there are any questions regarding this request, please contact Plaintiff Rashit Alatraqchi IN WRITING.

Thank you for your time and attention to this matter.

Thank you,

Rashid Alatraqchi
Monday June 24, 2013

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:

**SUBP-010**

Rashid Alatraqchi
447 Valencia Street, #231
San Francisco, California 94103
TELEPHONE NO.: 415-240-2262 FAX NO. *(Optional)*:
E-MAIL ADDRESS *(Optional)*:
ATTORNEY FOR *(Name)*: Plaintiff "In Propria Persona"

FOR COURT USE ONLY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, California 94102
BRANCH NAME:

PLAINTIFF/PETITIONER: Rashid Alatraqchi
DEFENDANT/RESPONDENT: Uber Technologies Inc.Scott Munro

**DEPOSITION SUBPOENA**
**FOR PRODUCTION OF BUSINESS RECORDS**

CASE NUMBER:
CGC-13-527887

THE PEOPLE OF THE STATE OF CALIFORNIA, TO *(name, address, and telephone number of deponent, if known)*:

San Francisco Municipal Transportation Agency,1 South Van Ness Avenue
,7th floor ,San Francisco, CA 94103-5417 ,Tel: (415) 701-4400 (415) 701-
2311 ,Fax: (415) 701-5337

1. YOU ARE ORDERED TO PRODUCE THE BUSINESS RECORDS described in item 3, as follows:

To *(name of deposition officer)*: Rashid Alatraqchi, Plaintiff
On *(date)*: June 24,2013.                    At *(time)*: July 24,2013
Location *(address)*:447 Valencia Street, #231 San Francisco, California 94103

Do not release the requested records to the deposition officer prior to the date and time stated above.

a. ☒ by delivering a true, legible, and durable copy of the business records described in item 3, enclosed in a sealed inner wrapper with the title and number of the action, name of witness, and date of subpoena clearly written on it. The inner wrapper shall then be enclosed in an outer envelope or wrapper, sealed, and mailed to the deposition officer at the address in item 1.

b. ☐ by delivering a true, legible, and durable copy of the business records described in item 3 to the deposition officer at the witness's address, on receipt of payment in cash or by check of the reasonable costs of preparing the copy, as determined under Evidence Code section 1563(b).

c. ☐ by making the original business records described in item 3 available for inspection at your business address by the attorney's representative and permitting copying at your business address under reasonable conditions during normal business hours.

2. The records are to be produced by the date and time shown in item 1 (but not sooner than 20 days after the issuance of the deposition subpoena, or 15 days after service, whichever date is later). Reasonable costs of locating records, making them available or copying them, and postage, if any, are recoverable as set forth in Evidence Code section 1563(b). The records shall be accompanied by an affidavit of the custodian or other qualified witness pursuant to Evidence Code section 1561.

3. The records to be produced are described as follows:

    See Attachment 3
    ☒ Continued on Attachment 3.

4. IF YOU HAVE BEEN SERVED WITH THIS SUBPOENA AS A CUSTODIAN OF CONSUMER OR EMPLOYEE RECORDS UNDER CODE OF CIVIL PROCEDURE SECTION 1985.3 OR 1985.6 AND A MOTION TO QUASH OR AN OBJECTION HAS BEEN SERVED ON YOU, A COURT ORDER OR AGREEMENT OF THE PARTIES, WITNESSES, *AND* CONSUMER OR EMPLOYEE AFFECTED MUST BE OBTAINED BEFORE YOU ARE REQUIRED TO PRODUCE CONSUMER OR EMPLOYEE RECORDS.

DISOBEDIENCE OF THIS SUBPOENA MAY BE PUNISHED AS CONTEMPT BY THIS COURT. YOU WILL ALSO BE LIABLE FOR THE SUM OF FIVE HUNDRED DOLLARS AND ALL DAMAGES RESULTING FROM YOUR FAILURE TO OBEY.

Date issued: JUN 24 2013

WESLEY RAMIREZ
(TYPE OR PRINT NAME)

(SIGNATURE OF PERSON ISSUING SUBPOENA)

CLERK OF THE COURT
(TITLE)

Form Adopted for Mandatory Use
Judicial Council of California
SUBP-010 [Rev. July 1, 2010]

**DEPOSITION SUBPOENA FOR PRODUCTION**
**OF BUSINESS RECORDS**

Page 1 of 2

Code of Civil Procedure, §§ 2020.410-2020.440;
Government Code, § 68097.1
www.courtinfo.ca.gov

| PLAINTIFF/PETITIONER: Rashid Alatraqchi | | SUBP-010 |
|---|---|---|
| DEFENDANT/RESPONDENT: Uber Technologies Inc, Scott Munro | CASE NUMBER: CGC-13-527887 | |

## PROOF OF SERVICE OF DEPOSITION SUBPOENA FOR PRODUCTION OF BUSINESS RECORDS

1. I served this *Deposition Subpoena for Production of Business Records* by personally delivering a copy to the person served as follows:

   a. Person served (name): **San Francisco Municipal Transportation Agency**

   b. Address where served: **1 South Van Ness Avenue, 7th floor, San Francisco, CA 94103-5417 Tel: (415) 701-4400 (415) 701-2311, Fax: (415) 701-5337**

   c. Date of delivery: **06, 24, 2013**

   d. Time of delivery: **2.30pm.**

   e. (1) [X] Witness fees were paid.
   Amount: . . . . . . . . . . . . . $
   (2) [ ] Copying fees were paid.
   Amount: . . . . . . . . . . . . . $

   f. Fee for service: . . . . . . . . . . . . . . . $

2. I received this subpoena for service on *(date)*:

3. Person serving:
   a. [X] Not a registered California process server.
   b. [ ] California sheriff or marshal.
   c. [ ] Registered California process server.
   d. [ ] Employee or independent contractor of a registered California process server.
   e. [ ] Exempt from registration under Business and Professions Code section 22350(b).
   f. [ ] Registered professional photocopier.
   g. [ ] Exempt from registration under Business and Professions Code section 22451.
   h. Name, address, telephone number, and, if applicable, county of registration and number:

   From: Rashid Alatraqchi
   447 Valencia Street, # 231
   San Francisco, California 94103
   Telephone 415-240-2262
   Sent by U.S. Certified Mail
   # 7011 1570 0001 6017 5040

   Monday June 24, 2013

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 06-24-2013

▶ _____
(SIGNATURE)

(For California sheriff or marshal use only)
I certify that the foregoing is true and correct.

Date:

▶ _____
(SIGNATURE)

## PROOF OF SERVICE OF DEPOSITION SUBPOENA FOR PRODUCTION OF BUSINESS RECORDS

From: Rashid Alatraqchi                         Monday June 24, 2013
     447 Valencia Street, # 231
     San Francisco, California 94103
     Telephone 415-240-2262
     Sent by U.S. Certified Mail
     # 7011 1570 0001 6017 5040

To:  San Francisco Municipal Transportation Agency
     1 South Van Ness Avenue ,7th floor
     San Francisco, CA 94103-5417
     Tel: (415) 701-4400 (415) 701-2311
     Fax: (415) 701-5337

Attachment 3
Deposition Subpoena for Production of Business Records
Rashid Alatraqchi v Uber technologies Inc., Scott Munro, et al
San Francisco Superior Court #CGC-11-527887

To Custodian of Records, or To Whom It May Concern,

I, Rashid Alatraqchi, am the Plaintiff in the action mentioned above. Please return the documents requested in the attached Subpoena on the date shown on the Subpoena to the address listed in the heading of the Subpoena. I will a copy of the Affidavit of Plaintiff Rashid Alatraqchi regarding this court case and several facts regarding Uber Technologies, Inc. I will also attach to the Subpoena a check in the amount of $15.00 to cover the Witness Fees for producing the copies of these documents. If there are any questions or if there is any other need for your office to contact me, please do so IN WRITING at the address listed in the heading of this Attachment.

1. All documents on file with the San Francisco Municipal Transportation Agency regarding Uber Cab.
2. All documents on file with the San Francisco Municipal Transportation Agency regarding Uber Technologies, Inc.

2. All documents on file with the San Francisco Municipal Transportation Agency regarding all licenses for transportation issued by the SFMTA and/or any other authority to Uber Technologies, Inc.

3. All documents on file with the San Francisco Municipal Transportation Agency regarding all Taxi Cab numbers issued by the SFMTA and/or any other authority to Uber Technologies, Inc.

4. All documents on file with the San Francisco Municipal Transportation Agency regarding any and/or all transportation services within the city and/or county of San Francisco, California by Uber Technologies, Inc.

5. All documents on file with the San Francisco Municipal Transportation Agency regarding commercial liability insurance coverage for Uber Technologies, Inc.

6. All documents on file with the San Francisco Municipal Transportation agency regarding Uber X.

7. All documents on file with the San Francisco Municipal Transportation Agency regarding all fines and/or penalties levied against Uber Technologies, Inc.

8. All documents on file with the San Francisco Municipal Transportation Agency regarding all taxi meters, including any and/or all licenses to operate such meters, issued by the SFMTA, used by Uber Technologies, Inc.

9. All documents on file with the San Francisco Municipal transportation Agency regarding and and/or all Color Scheme that is registered with the SFMTA by Uber Technologies, Inc.

10. All documents on file with the San Francisco Municipal Transportation agency regarding any and/or all Taxi Cab Medallions issued by the SFMTA to Uber Technologies, Inc.

11. All documents on file with the San Francisco Municipal Transportation Agency regarding any and/or all complaints registered against Uber Technologies, Inc.


Need this


If there are any questions regarding this Subpoena for the Production of Business Records, or if there is any other need for your office to contact me, please do so IN WRITING at the address listed in the heading of this Attachment. I am awaiting your response to this Subpoena to be delivered on the date listed on the Subpoena.

Please return copies of these requested documents to the Plaintiff Rashid Alatraqchi at the address listed in the heading to this letter and in the heading of the attached Subpoena. These documents must by returned on the due date as shown on the Subpoena. If there are any questions regarding this request, please contact Plaintiff Rashit Alatraqchi IN WRITING.

Thank you for your time and attention to this matter.

Thank You,

Rashid Alatraqchi
Monday June 24, 2013

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):<br>Rashid Alatraqchi<br>447 Valencia Street, #231<br>San Francisco, California 94103<br>TELEPHONE NO.: 415-240-2262 FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): Plaintiff "In Propria Persona" | SUBP-010<br>FOR COURT USE ONLY |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, California 94102
BRANCH NAME:

PLAINTIFF/PETITIONER: Rashid Alatraqchi

DEFENDANT/RESPONDENT: Uber Technologies Inc.Scott Munro

| | |
|---|---|
| **DEPOSITION SUBPOENA**<br>**FOR PRODUCTION OF BUSINESS RECORDS** | CASE NUMBER:<br>CGC-13-527887 |

THE PEOPLE OF THE STATE OF CALIFORNIA, TO (name, address, and telephone number of deponent, if known):

Public Utilities Commission State of California, 505 Van Ness Avenue
San Francisco, California 94102, Insurance Unit 415-703-1244
Accounting Unit 415-703-1751

1. YOU ARE ORDERED TO PRODUCE THE BUSINESS RECORDS described in item 3, as follows:

To (name of deposition officer): Rashid Alatraqchi, Plaintiff
On (date): June 24,2013                                    At (time): July 24,2013
Location (address): 447 Valencia Street, #231 San Francisco, California 94103
Do not release the requested records to the deposition officer prior to the date and time stated above.

a. [X] by delivering a true, legible, and durable copy of the business records described in item 3, enclosed in a sealed inner wrapper with the title and number of the action, name of witness, and date of subpoena clearly written on it. The inner wrapper shall then be enclosed in an outer envelope or wrapper, sealed, and mailed to the deposition officer at the address in item 1.

b. [ ] by delivering a true, legible, and durable copy of the business records described in item 3 to the deposition officer at the witness's address, on receipt of payment in cash or by check of the reasonable costs of preparing the copy, as determined under Evidence Code section 1563(b).

c. [ ] by making the original business records described in item 3 available for inspection at your business address by the attorney's representative and permitting copying at your business address under reasonable conditions during normal business hours.

2. The records are to be produced by the date and time shown in item 1 (but not sooner than 20 days after the issuance of the deposition subpoena, or 15 days after service, whichever date is later). Reasonable costs of locating records, making them available or copying them, and postage, if any, are recoverable as set forth in Evidence Code section 1563(b). The records shall be accompanied by an affidavit of the custodian or other qualified witness pursuant to Evidence Code section 1561.

3. The records to be produced are described as follows:

    See Attachment 3
    [X] Continued on Attachment 3.

4. IF YOU HAVE BEEN SERVED WITH THIS SUBPOENA AS A CUSTODIAN OF CONSUMER OR EMPLOYEE RECORDS UNDER CODE OF CIVIL PROCEDURE SECTION 1985.3 OR 1985.6 AND A MOTION TO QUASH OR AN OBJECTION HAS BEEN SERVED ON YOU, A COURT ORDER OR AGREEMENT OF THE PARTIES, WITNESSES, AND CONSUMER OR EMPLOYEE AFFECTED MUST BE OBTAINED BEFORE YOU ARE REQUIRED TO PRODUCE CONSUMER OR EMPLOYEE RECORDS.

DISOBEDIENCE OF THIS SUBPOENA MAY BE PUNISHED AS CONTEMPT BY THIS COURT. YOU WILL ALSO BE LIABLE FOR THE SUM OF FIVE HUNDRED DOLLARS AND ALL DAMAGES RESULTING FROM YOUR FAILURE TO OBEY.

Date Issued: JUN 4 2013

WESLEY RAMIREZ
_____
(TYPE OR PRINT NAME)

_____
(SIGNATURE OF PERSON ISSUING SUBPOENA)

CLERK OF THE COURT
_____
(TITLE)

(Proof of service on reverse)

**DEPOSITION SUBPOENA FOR PRODUCTION**
**OF BUSINESS RECORDS**

SUBP-010

| | |
|---|---|
| PLAINTIFF/PETITIONER: Rashid Alatraqchi | CASE NUMBER: CGC-13-527887 |
| DEFENDANT/RESPONDENT: Uber Technologies Inc, Scott Munro | |

### PROOF OF SERVICE OF DEPOSITION SUBPOENA FOR PRODUCTION OF BUSINESS RECORDS

1. I served this *Deposition Subpoena for Production of Business Records* by personally delivering a copy to the person served as follows:

   a. Person served *(name)*: **Public Utilities Commission State of California**

   b. Address where served: **505 Van Ness Avenue, San Francisco, California 94102**
   **Insurance Unit 415-703-1244, Accounting Unit 415-703-1751**

   c. Date of delivery: **06, 24, 2013**

   d. Time of delivery: **2.30pm.**

   e. (1) [X] Witness fees were paid.
   Amount: . . . . . . . . . . . . . . $ _____

   (2) [ ] Copying fees were paid.
   Amount: . . . . . . . . . . . . . . $ _____

   f. Fee for service: . . . . . . . . . . . . . . $ _____

2. I received this subpoena for service on *(date)*:

3. Person serving:
   a. [X] Not a registered California process server.
   b. [ ] California sheriff or marshal.
   c. [ ] Registered California process server.
   d. [ ] Employee or independent contractor of a registered California process server.
   e. [ ] Exempt from registration under Business and Professions Code section 22350(b).
   f. [ ] Registered professional photocopier.
   g. [ ] Exempt from registration under Business and Professions Code section 22451.
   h. Name, address, telephone number, and, if applicable, county of registration and number:

   From: Rashid Alatraqchi, Owner                    Monday June 24, 2013
   Charming City Limousine Company
   T.C.P. 026843P
   447 Valencia Street, # 231
   San Francisco, California 94103
   Telephone 415-240-2262
   Sent by U.S. Certified Mail # 7011 1570 0001 6017 5095

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 06-24-2013

▶ _____
(SIGNATURE)

(For California sheriff or marshal use only)
I certify that the foregoing is true and correct.

Date:

▶ _____
(SIGNATURE)

SUBP-010 [Rev. July 1, 2010]

### PROOF OF SERVICE OF DEPOSITION SUBPOENA FOR PRODUCTION OF BUSINESS RECORDS

Page 2 of 2

From: Rashid Alatraqchi, Owner         Monday June 24, 2013
       Charming City Limousine Company
       T.C.P. 026843P
       447 Valencia Street, # 231
       San Francisco, California 94103
       Telephone 415-240-2262
       Sent by U.S. Certified Mail # 7011 1570 0001 6017 5095

To: Public Utilities Commission State of California
     505 Van Ness Avenue
     San Francisco, California 94102
     Insurance Unit    415-703-1244
     Accounting Unit   415-703-1751

Attachment 3
Regarding: Deposition Subpoena for Production of Business Records
Rashid Alatraqchi v Uber Technologies, Inc., Scott Munro, et al
San Francisco Superior Court #CGC-13-527887

To Custodian of Records, or To Whom It May Concern,
Regarding: T.C.P. 026843P

I, Rashid Alatraqchi, am the Plaintiff in the action mentioned above. Please return the documents requested in the attached Subpoena on the date shown on the Subpoena to the address listed in the heading of the Subpoena. I will a copy of the Affidavit of Plaintiff Rashid Alatraqchi regarding this court case and several facts regarding Uber Technologies, Inc. I will also attach to the Subpoena a check in the amount of $15.00 to cover the Witness Fees for producing the copies of these documents. If there are any questions or if there is any other need for your office to contact me, please do so IN WRITING at the address listed in the heading of this Attachment.

1. All documents on file with the Public Utilities Commission of the State of California regarding Uber Technologies, Inc.

2. All documents on file with the Public Utilities Commission of the State of California regarding all licenses for transportation issued to Uber Technologies, Inc.

3. All documents on file with the Public Utilities Commission of the State of California regarding all T.C.P. numbers issued to Uber Technologies, Inc.

4. All documents on file with the Public Utilities Commission of the State of California regarding charter service for Uber Technologies, Inc.

5. All documents on file with the San Francisco Municipal Transportation Agency regarding commercial liability insurance coverage for Uber Technologies, Inc.

6. All documents on file with the Public Utilities Commission of the State of California regarding Uber X.

7. All documents on file with the Public Utilities Commission of the State of California regarding all fines and/or penalties levied against Uber Technologies, Inc.

8. All documents on file with the Public Utilities Commission of the State of California regarding any and/or all complaints registered against Uber Technologies, Inc.

9. Any document reflecting the TOTAL NUMBER of T.C.P. numbers issued by the California Public Utilities Commission during the time period beginning January 1, 2010 until the present date.


Need this


If there are any questions regarding this Subpoena for the Production of Business Records, or if there is any other need for your office to contact me, please do so IN WRITING at the address listed in the heading of this Attachment. I am awaiting your response to this Subpoena to be delivered on the date listed on the Subpoena.


Please return copies of these requested documents to the Plaintiff Rashid Alatraqchi at the address listed in the heading to this letter and in the heading of the attached Subpoena. These documents must by returned on the due date as shown on the Subpoena. If there are any questions

regarding this request, please contact Plaintiff Rashit Alatraqchi IN WRITING.


Thank you for your time and attention to this matter.


Thank You,


Rashid Alatraqchi
Monday June 24, 2013

# Exhibit K

RASHID ALATRACQCHI
447 VALENCIA STREET, # 231
SAN FRANCISCO, CALIFORNIA 94103
TELEPHONE 415-240-2262

IN PROPRIA PERSONA

ENDORSED
F I L E D
Superior Court of California
County of San Francisco

JUL 0 8 2013

CLERK OF THE COURT
BY CAROLYN BALISTRERI
Deputy Clerk

SUPERIOR COURT FOR THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN FRANCISCO

UNLIMITED JURISDICTION

| | |
|---|---|
| RASHID ALATRAQCHI,<br><br>Plaintiff,<br><br>vs.<br><br>UBER TECHNOLOGIES, INC.,<br>SCOTT MUNRO, and<br>DOES 1 – 100<br><br><br>Defendants | Case No.: CGC - 13- 527887<br><br>COMPLAINT FILED: JANUARY 10, 2013<br><br>PLAINTIFF RASHID ALATRAQCHI'S NOTICE OF EX-PARTY MOTION<br><br>AND EX-PARTY MOTION FOR<br><br>PEREMPTORY CHALLENGE<br><br>PURSUANT TO<br><br>C.C.P. SECTION 170.6<br><br>DEPARTMENT:<br><br>DATE: 07-16-2013<br><br>TIME: 11 - am |

TO DEFENDANTS: UBER TECHNOLOGIES, INC., and/or SCOTT MUNRO

PLEASE TAKE NOTICE that on _16_, 2013, at _11-am_, or as soon thereafter as the matter may be heard in Department _206_, of the Superior Court of California, County of San Francisco, located at 400 McAllister Street,

San Francisco, California, Plaintiff, Rashid Alatraqchi will and does move this court for an ORDER granting the EX-PARTY MOTION FOR PEREMPTORY CHALLENGE.

This EX-PARTY MOTION will be and is made pursuant to California Code of Civil Procedure Sections 170, 170.1 and 170.6, upon the grounds that Plaintiff, Rashid Alatraqchi, cannot, or believes that he cannot, have a fair and impartial hearing before Judge Peter J. Busch, any judge or commissioner provided to this court by the Bar Association of San Francisco, or ANY JEW JUDGE.

California Code of Civil Procedure Section 170- Duty to Decide
        A judge has a duty to decide any proceeding in which he or she is not disqualified.

California Code of Civil Procedure Section 170.1- Grounds for Disqualification
    (a) A judge shall be disqualified if any one or more of the following is true:
    (6)For any reason (c) a person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial…

California Code of Civil Procedure Section 170.6- Prejudice Against Party…:
MOTION and AFFIDAVIT: Assignment of Another Judge, Court Commissioner, or Referee…
    (1)No judge, commissioner, or referee of any superior or municipal court of
        the State of California shall try any civil or criminal action or special
        proceeding of any kind or character nor hear any matter therein that
        involves a contested issue of law or fact when it shall be established as
        hereinafter provided that the judge or court commissioner is prejudiced
        against any party or attorney appearing in the action or proceeding.

(2) Any party to or any attorney appearing in any such action or proceeding may establish this prejudice by an oral or written motion without notice supported by affidavit or declaration under penalty of perjury or an oral statement under oath that the judge, court commissioner, or referee before whom the action or proceeding is pending or to whom it is assigned is prejudiced against any such party or attorney or the interest of the party or attorney so that the party or attorney cannot or believes that he or she cannot have a fair and impartial trial or hearing before the judge, court commissioner, or referee...

(3) If the motion is duly presented and the affidavit or declaration under penalty of perjury is duly filed or such oral statement under oath is duly made, thereupon and without any further act or proof, the judge supervising the master calendar, if any, shall assign some other judge, court commissioner, or referee to try the cause or hear the matter. In other cases, the trial of the cause or the hearing of the matter shall be assigned or transferred to another judge, court commissioner, or referee...

(6) Any oral statement under oath or declaration under penalty of perjury made pursuant to this section shall include substantially the same contents as the affidavit above.

(7) Nothing in this section shall affect or limit Section 170 or Title 4 (commencing with section 392) of Part 2, and this section shall be construed as cumulative thereto.

(8) If any provision of this section or the application to any person or circumstances is held invalid, that invalidity shall not affect other provisions or applications of the section that can be given effect without the invalid provision or application and to this end the provisions of this section are declared to be severable.

The EX-PARTY MOTION will be and is based upon this NOTICE, the AFFIDAVIT IN SUPPORT OF PEREMPTORY CHALLENGE, upon the papers and records on file in this case, and such oral and documentary evidence as may be presented at the hearing.


                    NOTICE OF TENTATIVE RULING- _____


PLEASE TALE NOTICE THAT pursuant to Local Rule 8.3, the court will make a tentative ruling on the merits of this matter by 3:00pm, the court day before the hearing. To receive the tentative ruling, call 415-551-4000. If you contest the tentative ruling, you must notify the opposing party. If you do not call the opposing party by 4:oo pm the COURT DAY before the hearing, NO HEARING will be held and the tentative ruling will be the ORDER of the court.


Monday July 08, 2013


                                                  By:

_____

                                        Rashid Alatraqchi, Plaintiff
                                        "IN PROPRIA PERSONA"

# Exhibit L

RASHID ALATRACQCHI
447 VALENCIA STREET, # 231
SAN FRANCISCO, CALIFORNIA 94103
TELEPHONE 415-240-2262

IN PROPRIA PERSONA

ENDORSED
F I L E D
Superior Court of California
County of San Francisco

JUL 0 8 2013

CLERK OF THE COURT
BY: ~~CAROLYN BALISTRERI~~
Deputy Clerk

SUPERIOR COURT FOR THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN FRANCISCO

UNLIMITED JURISDICTION

| | |
|---|---|
| RASHID ALATRAQCHI, | Case No.: CGC - 13- 527887 |
| Plaintiff, | COMPLAINT FILED: JANUARY 10, 2013 |
| vs. | |
| UBER TECHNOLOGIES, INC., | PLAINTIFF RASHID ALATRAQCHI'S AFFIDAVIT IN SUPPORT OF |
| SCOTT MUNRO, and | |
| DOES 1 – 100 | EX-PARTE MOTION FOR |
| | PEREMPTORY CHALLENGE |
| | PURSUANT TO C.C.P. SECTION |
| Defendants | 170.6 |

I, Rashid Alatraqchi am the Plaintiff in this action, and am representing myself. I

have personal knowledge of the facts set forth herein. If called as a Witness in this

matter, I could and would testify competently thereto.

I, Plaintiff, Rashid Alatraqchi, being duly sworn, deposes and says:

I am a Party to this action, and am representing myself as Plaintiff "In Propria Persona". I believe that Judge Peter J. Busch, any Judge or Commissioner provided to this court by the Bar Association of San Francisco, or any other JEW JUDGE, are prejudiced against me so that I cannot, or believe that I cannot, have a fair and impartial trial or hearing before these Judges and/or court Commissioners.

Subscribed and Sworn to before me this

Tuesday Day of 07-16 _____ 2013

Plaintiff Rashid Alatraqchi
"In Propria Persona"

_____

Rashid Alatraqchi

Clerk or Other Officer Administering Oath

15

.

# Exhibit M

1   JOHN C. FISH, Jr., Bar No. 160620
    ANDREW M. SPURCHISE, Bar No. 245998
2   EMILY E. O'CONNOR, Bar No. 279400
    LITTLER MENDELSON, P.C.
3   650 California Street
    20th Floor
4   San Francisco, CA  94108.2693
    Telephone:    415.433.1940
5
    Attorneys for Defendants
6   UBER TECHNOLOGIES, INC. AND SCOTT
    MUNRO
7

8                    SUPERIOR COURT OF CALIFORNIA

9                     COUNTY OF SAN FRANCISCO

10                     UNLIMITED JURISDICTION

11  RASHID ALATRAQCHI,                    Case No.  CGC-13-527887

12              Plaintiff,                **NOTICE TO PLAINTIFF AND STATE
                                          COURT OF FILING OF REMOVAL OF
13       v.                               CIVIL ACTION TO FEDERAL COURT**

14  UBER TECHNOLOGIES, INC., SCOTT
    MUNRO AND DOES 1-50,                  Date:
15                                        Time:
               Defendants.               Dept:  610
16
                                          Complaint Filed:  January 10, 2013
17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

NOTICE TO PLAINTIFF AND STATE COURT OF FILING OF REMOVAL

1    TO THE CLERK OF THE SUPERIOR COURT OF CALIFORNIA, COUNTY OF

2  SAN FRANCISCO AND PLAINTIFF RASHID ALATRAQCHI:

3    PLEASE TAKE NOTICE that on July 9, 2013, Defendants Uber Technologies, Inc.

4  and Scott Munro ("Defendants") filed in the United States District Court in and for the Northern

5  District of California, its Notice of Removal of Civil Action of the above-entitled action from the

6  Superior Court of the State of California, County of San Francisco to said United States District

7  Court.   A copy of Defendants' Notice of Removal of Civil Action from State Court and its

8  accompanying exhibits is attached hereto as Exhibit 1.

9  Dated: July 9, 2013

10

11

12  JOHN C. FISH, Jr.
    ANDREW M. SPURCHISE
13  LITTLER MENDELSON, P.C.
    Attorneys for Defendants
14  UBER TECHNOLOGIES, INC. AND SCOTT
    MUNRO

15

16  Firmwide:121425776.1 073208.1011

17

18

19

20

21

22

23

24

25

26

27

28

ITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108-2693
415.433.1940

2.

NOTICE TO PLAINTIFF AND STATE COURT OF FILING OF REMOVAL