United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RASHID ALATRAQCHI,

        Plaintiff,

    v.

UBER TECHNOLOGIES,INC., et al.,

        Defendants.

Case No.: C-13-03156 JSC

**ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS (Dkt. No. 8);
DENYING PLAINTIFF'S MOTION
TO REMAND (Dkt. No. 14)**

Pro se Plaintiff Rashid Alatraqchi, a livery car and taxi driver, brings this action alleging violation of civil rights and other claims against Defendants Uber Technologies, Inc. ("Uber") and Scott Munro.   Now pending before the Court are Defendants' motion to dismiss, (Dkt. No. 8), to which Plaintiff filed an untimely opposition, (Dkt. No. 22), and Plaintiff's motion to remand (Dkt. No. 14).  After carefully considering the parties' pleadings, and having had the benefit of oral argument on August 22, 2013, the Court GRANTS Defendants' motion and DENIES Plaintiff's motion.

**BACKGROUND**

Plaintiff is a naturalized United States citizen born in Iraq.  (Dkt. No. 1 at 17.)  He is a Shiia Muslim, who came to the United States in 1992 under the "United Nations Refugee Relocation and

United States District Court
Northern District of California

1    Asylum Program." (*Id.*)  Plaintiff has lived in San Francisco since coming to the United States. (*Id.*

2    at 18.)

3          Plaintiff, a limousine and taxi driver since the mid-to-late 1990s, was the sole proprietor of

4    Charming City Limousine Company from January 2010 to summer 2012, during which time

5    Plaintiff's relationship with Defendants began and ended.  (*Id.*)  Plaintiff was "employed by" and

6    "entered into [a] business arrangement" with Uber in late 2011, whereby Plaintiff was allowed access

7    to Uber's mobile application that connects drivers to fares seeking car service.[1]  (*Id.* at 18, 28.)

8    Plaintiff paid a $300 deposit for the use of an iPhone to obtain "calls" from Uber.  (*Id.* at 19.)

9    Plaintiff owned the vehicle he drove while "working for" Uber, and had purchased the vehicle's

10   insurance coverage and filed "all of the necessary documentation with the State and local agencies

11   governing this industry."  (*Id.*)  Defendant Munro, an Uber employee, "personally interviewed"

12   Plaintiff and inspected Plaintiff's limousine.  (*Id.* at 18.)

13         Plaintiff's time with Uber was short—from December 29, 2011 to January 12, 2012.  (*Id.*)

14   During this time, which spanned part of the holiday season, Plaintiff received a "customer friendly"

15   ranking of 4.2 out of 5 stars.  (*Id.* at 22.)  No one processed a claim against Plaintiff, he did not have a

16   bad reputation, he was involved in no traffic accidents, received no traffic citations,  even a parking

17   ticket.  (*Id.* at 24.)  He neither missed nor was late for any assigned pick up, and his vehicle was in

18   perfect working order every shift.  (*Id.*)  Each and every client that he carried exited the limo in

19   "cheerful good spirits."  (*Id.*)

20         Nonetheless, Plaintiff's relationship with Uber was terminated.  On January 12, 2012, Plaintiff

21   called Uber regarding the iPhone that belonged to Uber.  (*Id.*)  Plaintiff was concerned about "minor

22   mishaps" with the phone, such as its failure to receive any phone calls.  (*Id.*)  Uber told Plaintiff to

23   bring it to its office to have it examined.[2]  (*Id.*)  When Plaintiff arrived at the office, Defendant Munro

---

24   [1]  A full explanation of Uber's business model and its legal status—which Plaintiff asserts is at best

25   dubious—is not necessary for purposes of this motion.

26   [2]  A slightly different account is offered elsewhere in the Complaint, which appears to be a composite
     of several documents, including an email or letter exchange with Munro.  Specifically, Plaintiff claims
     that Munro sent Plaintiff a text message on January 8, 2012, stating that Uber was going to

27   "deactivate" his account for "several reasons."  (*Id.* at 35.)  The message said that Munro would be
     back in town at the end of the week and would be available to discuss those matters then.  (*Id.*)  That

28   meeting took place on January 12, 2013.

2

1    took the phone "right there on the spot" and told Plaintiff that "they don't need me anymore" and

2    asked Plaintiff to leave.  (*Id.*)  Plaintiff asked why, and Munro responded that Plaintiff was an

3    "aggressive driver."  (*Id.* (internal quotation marks omitted).)  He also stated that there was not

4    enough business at the time.  (*Id.*)  Regarding Plaintiff's driving, Plaintiff asked Munro to show him

5    any documentation, such as customer complaints, that could verify Plaintiff's poor driving.  (*Id.* at

6    25.)  Munro declined to say anything or show Plaintiff any documents.  (*Id.*)  Munro claimed that

7    Plaintiff "lost stars," but wouldn't specify.  (*Id.*)

8         After his relationship with Uber ended, Plaintiff and Uber continued to interact regarding

9    monies Plaintiff believed remained owing to him.  Although Uber has presented Plaintiff invoices it

10   claims shows that he has been fully paid, Plaintiff maintains that he was underpaid.

11        Plaintiff claims that Uber "stole" his money because he is "foreign."  (*Id.* at 23.)  Plaintiff also

12   claims that he called Defendant Munro on many occasions regarding his "wrongful termination," but

13   he did not respond because Plaintiff is "foreign from Iraq, and Shiia Moslem and Arab.  He felt that

14   [Plaintiff] [did not] have popular support because the WAR in Iraq."  (*Id.*)  Plaintiff claims that "[i]t

15   seemed like Mr. Scott Munro had hatred towards Iraqis or Shiite Muslims.  [Plaintiff] heard from

16   other drivers that Mr. Munro is a JEW."  (*Id.* at 22.)  Plaintiff alleges that his dismissal was based on

17   "Anti-Iraqi, Anti-Shiia" discrimination.  (*Id.* at 71.)

18        Plaintiff filed suit against Defendants in San Francisco Superior Court on January 10, 2013,

19   and Defendants removed the case to federal court seven months later.  Plaintiff's form complaint and

20   attached declaration allege the following five purported causes of action: 1) civil rights

21   discrimination; 2) wrongful termination; 3) fraud; 4) maintaining a hostile work environment; and 5)

22   work-related stress.

23                                       **DISCUSSION**

24   **I.    Plaintiff's Motion to Remand**

25        Defendants, as the party seeking removal to this federal court, bear the burden of establishing

26   that subject matter jurisdiction exists, and courts strictly construe the removal statute against removal

27   jurisdiction.  *Gaus v. Miles, Inc.,* 980 F.2d 564, 566-67 (9th Cir. 1992).  Removal jurisdiction may

28   be based on diversity of citizenship or on the existence of a federal question.  28 U.S.C. § 1441.  The

3

1    Court has reviewed the Notice of Removal and has determined that federal question jurisdiction does

2    exist.

3          "Federal question jurisdiction exists only when a federal question exists on the face of a well-

4    pleaded complaint." *ING Bank, FSB v. Pineda*, 2012 WL 2077311 *1 (N.D. Cal. June 8, 2012).  In

5    Plaintiff's first cause of action for civil rights discrimination Plaintiff states that "I[n] the United

6    States constitution . . . it is illegal to discriminate."  (*See* Dkt. No. 1 at 21.)  This statement constitutes

7    a federal question on the face of Plaintiff's well-pled Complaint, and Defendants' removal was

8    therefore proper.

9          Although Plaintiff's motion to remand does not address the Court's federal question

10   jurisdiction—it focuses on diversity jurisdiction, which was not Defendants' basis for removal—

11   Plaintiff argued at the hearing that he did not intend for the Complaint to contain federal claims.  As

12   explained above, the Court disagrees.  Because the Court is dismissing Plaintiff's Complaint with

13   leave to amend, he, as the master of his complaint, may amend his Complaint to allege whatever

14   claims he wishes.  If Plaintiff seeks to allege only state-law claims, he should clearly do so in any

15   amended complaint.

16         Plaintiff's motion to remand is accordingly DENIED.  If Plaintiff files an amended complaint,

17   the parties shall meet and confer regarding whether the Court has jurisdiction over this action in light

18   of the claims in the amended complaint.  If Defendants agree there is no longer any basis for federal

19   jurisdiction, the Court encourages the parties to stipulate to a remand of this action to state court.

20   **II.      Defendants' Motion to Dismiss**

21         **A.      Legal Standard**

22         Pursuant to Rule 12(b)(1),[3] a district court must dismiss an action if it lacks jurisdiction over

23   the subject matter of the suit.  *See* Fed. R. Civ. P. 12(b)(1).  "Subject matter jurisdiction can never be

24   forfeited or waived and federal courts have a continuing independent obligation to determine whether

25   subject-matter jurisdiction exists."  *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969,

26   976 (9th Cir. 2012) (internal quotation marks and citation omitted).  A party challenging the court's

27   ─────────────────────

28   [3]  Although Defendants style their motion as arising only under Rule 12(b)(6), Defendants argue that
     Plaintiff has failed to exhaust his administrative remedies with respect to any Title VII claim, which
     invokes Rule 12(b)(1).

United States District Court
Northern District of California

subject matter jurisdiction under Rule 12(b)(1) may bring a facial challenge or a factual challenge. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A facial attack is one where "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In evaluating such a challenge, the court accepts the factual allegations in the complaint as true. *See Miranda v. Reno*, 238 F.3d 1156, 1157 n.1 (9th Cir. 2001). In contrast, where the defendant challenges the factual basis underlying the allegations, the court need not accept the allegations as true and may instead make factual determinations. *White*, 227 F.3d at 1242. "In ruling on a challenge to subject matter jurisdiction, the district court is ordinarily free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) (internal citation omitted). When making such a ruling, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (citing *White*, 227 F.3d at 1242). The burden of proof on a Rule 12(b)(1) motion is on a party asserting jurisdiction. *Sopcak v. Northern Mountain Helicopter Serv.*, 52 F.3d 817, 818 (9th Cir. 1995).

A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1031 (9th Cir. 2008). "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted); *see also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.").

United States District Court
Northern District of California

Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), under which a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555.) "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively"), *cert. denied*, 132 S. Ct. 2101 (2012). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Determining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663-64.

Pro se pleadings are generally liberally construed and held to a less stringent standard. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In *Hebbe v. Pliler*, 627 F.3d 338 (9th Cir. 2010), the Ninth Circuit held that courts must still liberally construe pro se filings post-*Iqbal* noting that "[w]hile the standard is higher, our obligation remains, where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Id.* at 342 (internal quotations and citations omitted). Nevertheless, the Court may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citations omitted).

//

//

**B.     Plaintiff's State-Law Employment-Based Claims**

Defendants move to dismiss Plaintiff's first and fourth claims to the extent they are based on California employment statutes because Plaintiff has failed to allege that he exhausted his administrative remedies.  Defendants also move to dismiss Plaintiff's first, second, and fourth claims because Plaintiff was an independent contractor—not an Uber employee—and even if Plaintiff was an employee, Plaintiff's Complaint still fails to state a claim.

**1.     Exhaustion of administrative remedies**

Defendants argue that to the extent Plaintiff's first and fourth claims are based on California's Fair Employment and Housing Act ("FEHA"), those claims fail because Plaintiff has not alleged that he exhausted his administrative remedies.  Defendants are correct.

A plaintiff asserting claims of discrimination pursuant to FEHA must exhaust the statute's administrative remedies before filing a lawsuit.  *Rojo v. Kliger*, 52 Cal. 3d 65, 83 (1990) ("[E]xhaustion of the FEHA administrative remedy is a precondition to bringing a civil suit on a statutory cause of action.") (emphasis omitted); *see also Harris v. County of Orange*, 682 F.3d 1126, 1135 (9th Cir. 2012).  For purposes of FEHA, administrative remedies are exhausted by the filing of an administrative complaint with the Department of Fair Employment and Housing ("DFEH") and obtaining from the DFEH a notice of right to sue.  *Okoli v. Lockheed Technical Operations Co.*, 36 Cal. App. 4th 1607, 1613 (1995).  "Although an unexhausted FEHA claim is subject to dismissal, such dismissal is not for lack of subject matter jurisdiction."  *De Los Santos v. Panda Exp., Inc.*, 2010 WL 4971761, at *4 n.4 (N.D. Cal. Dec. 3, 2010); *see also Rodriguez v. Airborne Exp.*, 265 F.3d 890, 900 (9th Cir. 2001) ("Although California courts describe exhaustion as a jurisdictional prerequisite to suit under FEHA, this label does not implicate the trial court's fundamental subject matter jurisdiction.").

Nowhere in Plaintiff's Complaint does he allege that he has exhausted his administrative remedies with respect to his FEHA-based claims.  The Court accordingly GRANTS Defendants' motion to dismiss Plaintiff's first and fourth claims on this basis.  In any amended complaint, Plaintiff shall clearly state whether he has properly exhausted his administrative remedies as explained above.
//

### 2.    Independent contractor v. employee

Even if Plaintiff exhausted his administrative remedies for all of his employment-based claims, Plaintiff would still need to adequately allege an employment relationship with Uber. Plaintiff has failed to do so.

In California, "the principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired." *S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341, 350 (1989) (alterations and internal quotation marks omitted). The *Borello* court, however, also noted that "strong evidence in support of an employment relationship is the right to discharge at will, without cause," *id.* (alterations and internal quotation marks omitted), and endorsed a number of other factors that may indicate an employment relationship:

> (a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee.

48 Cal. 3d at 351.

The Court grants Defendants' motion because Plaintiff's Complaint is contradictory in regards to the basic allegation of whether Plaintiff was an Uber employee. Specifically, Plaintiff's Complaint makes several references to his "business arrangement," "business relationship," and/or "partnership" with Uber. (*See, e.g.*, Dkt. No. 1 at 28 ("Plaintiff entered into the business arrangement with the Defendant believing this would be along [sic] term, mutually beneficial deal."), 36 ("I no longer have the job that I was working before starting with Uber, and declined several other offers believing that Uber was serious about a long term business relationship."), 47 ("I say again that I was used by Uber during the most busy night of the year while under the impression that this would be an ongoing business relationship."), 36 ("I was invited to become an Uber partner at the busiest time of the year. . . . I accepted this Uber partnership . . . ."), 40 ("I lost money

1    believing that I had enough security in my future income through this partnership to make the
2    investment in this new vehicle."), 47 ("I drove as a partner of Uber . . . .").)  Further, in recounting
3    an interaction with a "customer" who inquired as to why Plaintiff went to "work with Uber,"
4    Plaintiff alleges that he told the customer that "no I [sic] independent with myself, different
5    company."  (*Id.* at 49.)  Plaintiff also states in his Complaint that "I am not an employee of Uber,"
6    although it is not clear if Plaintiff is referring to his status during his relationship with Uber, or
7    simply after Uber ended the relationship.  (*Id.* at 48.)  At the same time, Plaintiff alleges that he
8    "accept[ed] Uber's offer of employment," (*id.* at 29), and that "Plaintiff has not received payment for
9    all of the work performed during the period of employment," (*id.* at 27).  Given Plaintiff's
10   inconsistent allegations, the Court GRANTS Defendants' motion to dismiss with leave to amend so
11   that Plaintiff may clearly—and concisely—allege the nature of his relationship with Uber.

12          Defendants' arguments go further than the Court's conclusion.  Defendants apply the *Borello*
13   factors to Plaintiff's allegations and argue that the facts alleged in the Complaint conclusively
14   establish that Plaintiff was an independent contractor.  The Court disagrees.  At this early stage in
15   the proceedings—and on an essentially unopposed motion to dismiss—the Court cannot say that, as
16   a matter of law, Plaintiff's relationship to Uber was that of an independent contractor and not an
17   employee.  Indeed, "under California law, once a plaintiff comes forward with evidence that he
18   provided services for an employer, the employee has established a prima facie case that the
19   relationship was one of employer/employee."  *Narayan v. EGL, Inc.*, 616 F.3d 895, 900 (9th Cir.
20   2010).  Defendants do not explain why Plaintiff's allegation that he provided services for Uber—and
21   thus his prima facie case that he had an employment relationship with Uber—may be overcome on a
22   Rule 12(b)(6) motion by application of the *Borello* factors.

23                 **3.      Sufficiency of Plaintiff's allegations**
24                       **a.      First claim: discrimination**
25          To state a claim for employment discrimination under FEHA, Plaintiff must show that: (1) he
26   is a member of a protected class; (2) he was performing his job in a satisfactory manner; (3) he
27   suffered an adverse employment decision; and (4) he was treated differently than similarly situated
28   persons outside his protected class.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802

United States District Court
Northern District of California

1   (1973); *Schechner v. KPIX–TV*, 686 F.3d 1018, 1023 (9th Cir. 2012) (utilizing the McDonnell

2   Douglas burden-shifting framework and other federal employment law principles when analyzing

3   disparate-treatment claims under FEHA).  Although an employer may be held liable for

4   discrimination under FEHA, non-employer individuals are not personally liable for that

5   discrimination.  *See Reno v. Baird*, 18 Cal. 4th 640, 643 (1998).

6           Defendants argue that Plaintiff's Complaint fails to allege that any of the adverse actions

7   alleged by Plaintiff was done because of Plaintiff's membership in a protected class.  Defendants also

8   argue that Defendant Munro cannot be liable for any discrimination because he undisputedly was not

9   Plaintiff's employer.  The Court agrees on both points.

10          Regarding Defendant Munro's liability, the California Supreme Court has held that a non-

11  employer individual, such as Munro, cannot be held individually liable for any discrimination Plaintiff

12  may have suffered during his employment.  *See Reno*, 18 Cal. 4th at 643. Thus, Defendants' motion to

13  dismiss Plaintiff's first cause of action against Defendant Munro is GRANTED without leave to

14  amend on this basis.  The Court dismisses the claim as to Defendant Munro without leave to amend

15  because "other facts consistent with the challenged pleading could not possibly cure the deficiency."

16  *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008).

17          Turning to the merits of Plaintiff's claim, although Plaintiff's Complaint is not entirely clear, it

18  appears that Plaintiff alleges he was discriminated against based on his national origin, ethnicity, and

19  religion.  Plaintiff appears to identify Uber's failure to pay him and his termination as adverse

20  employment decisions.  The problem for Plaintiff is that he fails to allege facts that provide a

21  plausible inference that those adverse employment decisions were made *because of* Plaintiff's

22  national origin, ethnicity, and/or religion.  Plaintiff's allegation that Uber withheld his pay because he

23  is "foreign" is conclusory and therefore insufficient to state a claim.  *See Iqbal*, 556 U.S. at 678.  The

24  same is true for Plaintiff's allegations regarding his termination, which Plaintiff alleges was based on

25  "Anti-Iraqi, Anti-Shiia" discrimination.  (*Id.* at 71.)  Plaintiff claims that "[i]t seemed like Mr. Scott

26  Munro had hatred towards Iraqis or Shiite Muslims.  [Plaintiff] heard from other drivers that Mr.

27  Munro is a JEW."  (*Id.* at 22.)  However, Plaintiff must allege more than his subjective belief that

28  Defendant Munro had hatred towards Iraqis or Shiite Muslims; Plaintiff must allege the facts that

United States District Court
Northern District of California

10

support Plaintiff's conclusions.  Further, that Plaintiff is a Muslim and Defendant Munro a Jew does not speak to whether Plaintiff "was treated differently than similarly situated persons outside his protected class."  *See McDonnell Douglas*, 411 U.S. at 802.

**b.       Second claim: wrongful termination**

In California, an "employer may not discharge an at will employee for a reason that violates fundamental public policy.  This exception is enforced through tort law by permitting the discharged employee to assert against the employer a cause of action for wrongful discharge in violation of fundamental public policy."  *Stevenson v. Superior Court*, 16 Cal. 4th 880, 887 (1997).  FEHA's prohibition against discrimination may form the basis of a wrongful discharge in violation of public policy claim.  *See City of Moorpark v. Superior Court*, 18 Cal. 4th 1143, 1159–61 (1998).  However, where a plaintiff's FEHA claim fails, a claim of wrongful discharge in violation of the public policy expressed in FEHA also fails.  *See De Horney v. Bank of America Nat'l Trust & Sav. Assoc.*, 879 F.2d 459, 465 (9th Cir. 1989).  Here, because Plaintiff's FEHA discrimination claim is dismissed, his claim for wrongful discharge in violation of public policy is also dismissed with leave to amend.

In addition, as with Plaintiff's discrimination claim, non-employer Defendant Munro cannot be personally liable for Plaintiff's alleged wrongful termination.  *See Reno*, 18 Cal. 4th at 663 ("Our conclusion that individual supervisors may not be sued under the FEHA applies likewise to [a claim for wrongful discharge].").  Thus, the Court GRANTS Defendants' motion to dismiss Plaintiff's second cause of action against Defendant Munro without leave to amend on this additional basis.

**c.       Fourth claim: hostile work environment**

To state a claim for hostile work environment, Plaintiff must allege that: 1) he was subjected to verbal or physical conduct based on his membership in a protected class; 2) the conduct was unwelcome; and 3) the conduct was sufficiently severe or pervasive to alter the conditions of the Plaintiff's employment and create an abusive work environment.  *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003); *see also Rohm v. Homer*, 367 F. Supp. 2d 1278, 1285 (N.D. Cal. 2005) (applying Title VII standard to FEHA claim).

As Defendants correctly argue, it is not clear what conduct forms the basis of Plaintiff's hostile work environment claim.  The portion of Plaintiff's Complaint addressing the claim is devoid

11

United States District Court
Northern District of California

1  of any mention of Plaintiff's religion, ethnicity, or national origin.  Even if the Court were to construe

2  his claim as being based on his membership in those protected classes, the claim would fail since, as

3  discussed above, Plaintiff fails to allege non-conclusory facts that support an inference that

4  Defendants' conduct was done because of Plaintiff's protected status.  Further, to the extent the

5  complained-of conduct occurred *after* Plaintiff's termination, the Court fails to see how such conduct

6  could create a hostile work environment for Plaintiff since he was no longer working for Uber.

7      Defendants' motion to dismiss Plaintiff's fourth claim for hostile work environment is

8  accordingly GRANTED with leave to amend.

9      **C.    Title VII**

10     Although employment discrimination and harassment claims under FEHA are often brought in

11  conjunction with claims under Title VII of the Civil Rights Act, it is not clear that Plaintiff has done

12  so here.  (*See* Dkt. No. 1 at 21 ("I[n] the United States constitution . . . it is illegal to discriminate.").)

13  Defendants, however, appear to interpret Plaintiff's Complaint as alleging claims under Title VII, and

14  argue in two footnotes that such claims fail.

15     Specifically, Defendants argue that the Court lacks jurisdiction to hear claims under Title VII

16  because, as with Plaintiff's FEHA claims, Plaintiff has failed to allege that he exhausted his

17  administrative remedies.  Defendants are correct.  "To establish federal subject matter jurisdiction, a

18  plaintiff is required to exhaust his or her administrative remedies before seeking adjudication of a

19  Title VII claim." *Lyons v. England*, 307 F.3d 1092, 1103 (9th Cir. 2002).  Exhaustion of

20  administrative remedies under Title VII requires that the complainant file a charge with the EEOC,

21  prior to filing a suit in the district court.  *See* 42 U.S.C. § 2000e-5(b); *see also Sosa v. Hiraoka*, 920

22  F.2d 1451, 1456 (9th Cir. 1990).  Plaintiff has not alleged that he has filed a charge with the EEOC

23  that encompasses the conduct alleged in the Complaint.  The Court accordingly lacks subject matter

24  jurisdiction to hear any claim based on Title VII.

25     Even if the Court did have jurisdiction, Plaintiff's Title VII claims would still fail for the same

26  reasons his FEHA claims fail because the alleged facts and the legal framework are the same for both

27  sets of claims.  *See  Metoyer v. Chassman*, 504 F.3d 919, 941 (9th Cir. 2007); *see also Chimara v.*

28

*Contra Costa County Gov't*, 2013 WL 1899801, at \*2-6 (N.D. Cal. May 7, 2013) (analyzing Title VII and FEHA claims for discrimination and hostile work environment together).

Defendants' motion to dismiss Plaintiff's first and fourth claims under Title VII is accordingly GRANTED with leave to amend.

### D.  Remaining Civil Rights Claims

Defendants interpret Plaintiff's first cause of action for civil rights discrimination to include a claim under 42 U.S.C. § 1983, though Plaintiff never explicitly invokes that statute.  As Defendants correctly observe, Section 1983 requires state action.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981).  Because the complained-of conduct is not alleged to have involved state actors, the Court instead interprets Plaintiff's claim as being brought under a different civil rights statute that does not require state action—42 U.S.C. § 1981.

Section 1981 "protects the equal right of '[a]ll persons within the jurisdiction of the United States' to 'make and enforce contracts' without respect to race."  *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474 (2006) (quoting 42 U.S.C. § 1981(a)).  The Supreme Court has extended Section 1981's prohibitions to discrimination based on "ancestry or ethnic characteristics."  *St. Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987).  Further, "[a]lthough national origin discrimination is not within the ambit of § 1981, race has been defined broadly to cover immigrant ethnic groups." *Fonseca v. Sysco Food Services of Arizona, Inc.*, 374 F.3d 840, 850 (9th Cir. 2004).  The statute currently defines "make and enforce contracts" to "includ[e] the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  § 1981(b).  In particular, Section 1981 provides a cause of action for wrongful termination, *see Metoyer*, 504 F.3d at 938-39, and hostile work environment, *see Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1122 (9th Cir. 2008).  Further, under Section 1981, both independent contractors and employees are protected from employment discrimination.  *Jones v. Rabanco, Ltd.*, 2006 WL 2583432, at \*4 (W.D. Wash. Sept. 6, 2006).  Finally, "[a]nalysis of an employment discrimination claim under § 1981 follows the same legal principles as those applicable in a Title VII disparate treatment case."  *Fonseca*, 374 F.3d at 850.

United States District Court
Northern District of California

13

United States District Court
Northern District of California

1    Because Plaintiff's Title VII claims fail, to the extent Plaintiff alleges claims under Section

2    1981, they also fail.  *See Fonseca*, 374 F.3d at 850.  Plaintiff's Section 1981 claims, however, are not

3    dismissed on the ground that Plaintiff has failed to adequately allege an employment relationship with

4    Uber since, as noted above, Section 1981 protects independent contractors as well as employees.  If

5    Plaintiff seeks to allege a claim under Section 1981, he shall clearly allege such a claim in any

6    amended complaint.

7       **E.      Third Claim: Fraud**

8        Defendants move to dismiss Plaintiff's fraud claim, which relates to Plaintiff's belief that he

9    would enjoy a long-term business relationship with Uber and Uber's alleged failure to accurately and

10   timely pay Plaintiff.  Defendants argue that Plaintiff's claim fails to satisfy the heightened pleading

11   standards of Rule 9(b).  Defendants are correct.

12       Under Federal Rule of Civil Procedure 9(b), "in alleging fraud or mistake, a party must state

13   with particularity the circumstances constituting fraud or mistake."  In particular, the complaint must

14   include specificity regarding the charged conduct, including the "who, what, when, where, and how."

15   *Reed v. Wells Fargo Bank*, 2011 WL 4802542, at *3 (N.D. Cal. Oct. 11, 2011).  "[T]he circumstances

16   constituting the alleged fraud must be specific enough to give defendants notice of the particular

17   misconduct . . . so that they can defend against the charge and not just deny that they have done

18   anything wrong."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).  When alleging

19   that fraudulent statements were made, a plaintiff must identify the false statements and indicate why

20   they were false.  *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994).  To state a claim

21   for fraud, Plaintiffs must allege (1) misrepresentation; (2) knowledge of falsity (scienter); (3) intent to

22   defraud (*i.e.*, to induce reliance); (4) justifiable reliance; and (5) resulting damage.  *Kearns v. Ford*

23   *Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009).

24       Regarding Plaintiff's allegation that he believed his business relationship with Uber would be

25   long-term, Plaintiff does not allege the "who, what, where, when, and how" for any statement made

26   by Defendants that gave Plaintiff that belief.  Further, because Plaintiff fails to identify any statement,

27   Plaintiff also fails to allege why the statement was false.  Defendants' motion to dismiss Plaintiff's

28

United States District Court
Northern District of California

1   fraud claim based on his belief that the Uber relationship would be long-term is accordingly

2   GRANTED with leave to amend.

3           The Court reaches the same conclusion in regards to Plaintiff's allegation that Defendants

4   have fraudulently failed to pay him.  Although not entirely clear, it appears that Plaintiff alleges two

5   instances of fraudulent conduct with respect to Defendants' failure to pay.  First, Plaintiff alleges that

6   Defendants promised to make complete and correct payments to him in a timely manner.  This

7   allegation fails to meet Rule 9(b)'s heightened pleading standard because it does not identify the

8   "who, what, where, when, and how" of the promise.  Further, Plaintiff does not allege any facts that

9   plausibly suggest that the statement was made with the knowledge of its falsity and that the statement

10  was made with the intent to induce reliance.  Rather, as currently alleged, Plaintiff's claim appears

11  better suited as a contract claim, which can provide a remedy for an unfulfilled promise and does not

12  require an allegation of fraudulent behavior.

13          Plaintiff also appears to allege that invoices he received from Uber at a July 2012 California

14  Labor Commissioner hearing provide the basis for his fraud claim.  However, as Defendants argue,

15  Plaintiff does not allege reliance on these allegedly false invoices, which were provided to Plaintiff

16  seven months after his relationship with Uber ended.

17          Defendants' motion to dismiss Plaintiff's fraud claim based on Uber's failure to pay Plaintiff

18  is accordingly GRANTED with leave to amend.

19          **F.     Fifth Claim: Work-Related Stress**

20          Plaintiff's claim for work-related stress alleges that since his experience with Uber, he has lost

21  his business and his job driving taxis and now "sits home alone picking his nose and scratching a lot."

22  (Dkt. No. 1 at 73.)  Defendants argue that Plaintiff's claim, to the extent it is based on some form of a

23  workplace injury, fails because 1) Plaintiff does not adequately allege an employment relationship,

24  and 2) the California Workers' Compensation Act ("WCA") bars Plaintiff's claim.  Defendants are

25  correct.

26          As already discussed, Plaintiff does not adequately allege an employment relationship with

27  Uber.  If Plaintiff's claim is based on the WCA, Plaintiff's claim fails since the WCA covers only

28  employees.  *See Borello*, 48 Cal. 3d at 349.  Even if Plaintiff did adequately allege an employment

1    relationship, Plaintiff's claim based on the WCA would still fail. "Labor Code section 3600,

2    subdivision (a), provides that, subject to certain particular exceptions and conditions, workers'

3    compensation liability, 'in lieu of any other liability whatsoever' will exist 'against an employer for

4    any injury sustained by his or her employees arising out of and in the course of the employment.'"

5    *Fermino v. Fedco, Inc.*, 7 Cal. 4th 701, 708 (1994). Thus, "when the employee's claim is based on

6    conduct normally occurring in the workplace, it is within the exclusive jurisdiction of the Workers'

7    Compensation Appeals Board." *Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal. 3d 148, 151 (1987).

8    To the extent Plaintiff alleges a claim under the WCA, this Court lacks jurisdiction to hear such a

9    claim; Plaintiff must pursue his claim through the workers' compensation system.

10          If Plaintiff's claim is not based on the WCA, Plaintiff's claim does not give Defendants fair

11   notice of the legal basis for this cause of action, and therefore must be dismissed. *See Twombly*, 550

12   U.S. at 555 (holding that a complaint must give each defendant "fair notice of what the claim is and

13   the grounds upon which it rests").

14          Defendants' motion to dismiss Plaintiff's fifth claim for work-related stress is accordingly

15   GRANTED with leave to amend.

16                                        **CONCLUSION**

17          For the reasons stated, Defendants' motion to dismiss is GRANTED with leave to amend,

18   except as to Plaintiff's first and second claims against Defendant Munro, which are dismissed without

19   leave to amend. In addition, Plaintiff's motion to remand is DENIED. An amended complaint, if

20   any, shall be filed no later than 30 days from the date of this Order. The amended complaint shall

21   make clear whether Plaintiff is pursuing any claims under federal law. Plaintiff is warned that failure

22   to file an amended complaint by the deadline will result in dismissal of his action with prejudice.

23

24          IT IS SO ORDERED.

25

26   Dated: August 22, 2013

27                                                _____
                                                  JACQUELINE SCOTT CORLEY
28                                                UNITED STATES MAGISTRATE JUDGE

16